# THE UNITED STATES DISTRICT COURT OF NORTHERN GEORGIA

## ATLANTA DIVISION

EMMANUEL OHAI

  Plaintiff, pro se,

    V.

Delta Community Credit Union

Park Tree Investments, LLC

Dean Engle, individually

FCI Lender Services, Inc.

Singer Law Group

Daniel I. Singer, individually

Jauregui, Lindsey, Longshore & Tingle

Microbilt Corporation

PNC Bank National Association (Inc.)

  Defendants

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 15 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Civil Action No: 1:20-CV-2220

**DEMAND FOR JURY TRIAL**

## AMENDED COMPLAINT

All appendixes previously submitted with initial complaint in this lawsuit are incorporated into this Plaintiff's amended complaint.

## PRELIMINARY STATEMENT

This action for damages is based on Defendants' false reporting on Plaintiff's consumer reports, failures to follow reasonable procedures to assure maximum possible accuracy of information, and failures to conduct reasonable investigations with respect to such information; attempting to collect on a time-barred debt, failure to validate the accuracy of the debt, threatening to sue, seeking partial payment, offering settlement on a discharged debt and engaging in misleading or deceptive conduct; attempting to foreclose on an unenforceable note; Civil contempt, for violations of 11 U.S. Code § 362 Automatic stay and Discharge Injunction 11 U.S. section 524(a)(2) of the Bankruptcy code; and FDCPA 15 USC §1692 et seq.; Defendant Delta Community Credit Union's Violation of Regulation B § 1002.9 Notifications of the Equal Credit Opportunity Act (ECOA); violations of FCRA Section 623(a) and violation of Georgia Fair Business Practices Act O.C.G.A. §10-1-390 et (FBPA).

Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system: The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

The preservation of one's good name is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

To further the primary goal of greater accuracy, the FCRA has also required CRAs, as well as "furnishers" of credit information to the CRAs, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

Defendants have engaged collectively or individually in attempts to illegitimately re-toll the Statute of Limitations on discharged debts. The persistent harassment of Plaintiff by Defendants and pursuit of discharged debts had continued in spite of Plaintiff's written and verbal pleas to stop. Such bad faith conduct, and repeated or persistent violations of the Automatic Stay and Discharge Injunction of the Bankruptcy Code warrant Civil Contempt damages under 11 U.S.C. § 105(a). Likewise, violations of the FCRA, FDCPA can warrant statutory damages, actual damages, treble damages and punitive damages under Georgia Fair Business Practices Act O.C.G.A. §10-1-390 et seq. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and state law. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f

and 1692g. Plaintiff pleads a violation of 15 U.S.C. § 1962f. Section 1962e(10) proscribes "the use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." Ramirez v. Apex Financial Management LLC, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. Crabill v. Trans Union, Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 et seq.

Defendants as alleged in this complaint invaded the privacy of Plaintiff by their malicious conduct. In addition to statutory privacy protections under Georgia criminal law, Georgia has adopted the four forms of invasion of privacy set forth in

Restatement (Second) of Torts § 652A (1977). There is also a right to privacy in the Georgia Constitution, under Chapter 1, Article 1, which states "no person shall be deprived of life, liberty, or property except by due process of law.

## PARTIES

1. Plaintiff, Emmanuel Ohai, is natural person who resides in Gwinnett County, Georgia.

2. Plaintiff is an individual and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Plaintiff is allegedly obligated to pay a debt and is therefore a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

4. Defendant, Delta Community Credit Union (hereinafter "Delta") does business in Georgia.

5. Defendant Delta regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about Plaintiff's transactions and is therefore a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

6. Defendant Delta uses the mails, the internet and telephone system in conducting such business.

7. Defendant Park Tree Investments, LLC is a limited liability company organized under California law with offices at 425 Divisadero St., Ste. 207, San Francisco,

CA 94117. It does business in Georgia. Its registered agent and office is C T

Corporation System, 1201 Peachtree St., NE, Atlanta, GA, 30361, USA

8. The business of Park Tree Investments, LLC consists of acquiring and

    liquidating defaulted mortgage loans and debts throughout the United States.

    The debts are acquired at substantially under face value.

9. Park Tree Investments has a website on which it describes its business as

    follows:

NOTE SELLERS

What We Offer Efficient, professional evaluation, acquisition and funding of your

delinquent mortgage assets. We can turn around indicative bids within 24 hours,

and complete full due-diligence within 5-7 days.

We are proud of our proprietary software and systems that are cutting-edge, and

that utilize the best available technology in today's marketplace.

Park Tree Investments has set up a comprehensive loan evaluation and tracking

system and a loan management infrastructure that gives us the ability to purchase,

administer and service loans in an efficient and secure manner.

If you are looking for liquidity for individual non-performing loans or for your

loan portfolios, Park Tree is a trusted third party with experience and a track

record. Our strengths involve a range of programs promoting homeownership

retention – we take a humane approach to default and work as much as we can to

retain the original borrower in the home. As a result, we end up promoting loan modifications, payment agreements and refinances whenever and wherever feasible. (http://www.parktreeinvestments.com/park-tree-investments-note-sellers)

10.On information and belief, Park Tree Investments, LLC does not hold any mortgages or loans itself, but arranges or arranged for title or claimed title to the mortgage loans to be placed in a series of asset holding entities, the names and status of which are as follows:

Status Name State of organization

CANCELED PARK TREE FUNDING, LLC CA

CANCELED PARK TREE INVESTMENTS 1, LLC CA

CANCELED PARK TREE INVESTMENTS 9, LLC CA

ACTIVE PARK TREE INVESTMENTS 10, LLC CA

ACTIVE PARK TREE INVESTMENTS 11 LLC DE

ACTIVE PARK TREE INVESTMENTS 12, LLC DE

ACTIVE PARK TREE INVESTMENTS 14, LLC DE

ACTIVE PARK TREE INVESTMENTS 15, LLC DE

ACTIVE PARK TREE INVESTMENTS 16, LLC DE

ACTIVE PARK TREE INVESTMENTS 17, LLC DE

ACTIVE PARK TREE INVESTMENTS 18, LLC DE

ACTIVE PARK TREE INVESTMENTS 19, LLC DE

ACTIVE PARK TREE INVESTMENTS 20, LLC DE

ACTIVE PARK TREE INVESTMENTS 21 LLC DE

PARK TREE INVESTMENTS 22, LLC DE

CANCELED PARK TREE INVESTMENTS III LLC CA

CANCELED PARK TREE INVESTMENTS IV LLC CA

PARK TREE INVESTMENTS V LLC DE

CANCELED PARK TREE INVESTMENTS VI, LLC CA

CANCELED PARK TREE INVESTMENTS VII LLC CA

ACTIVE PARK TREE INVESTMENTS VIII LLC DE

ACTIVE PARK TREE PROPERTIES, LLC CA

ACTIVE PARK TREE PROPERTIES 10, LLC DE

ACTIVE PARK TREE PROPERTIES 11, LLC DE

ACTIVE PARK TREE PROPERTIES 12, LLC DE

ACTIVE PARK TREE PROPERTIES 14, LLC DE

ACTIVE PARK TREE PROPERTIES 15, LLC DE

CANCELED PARK TREE PROPERTIES 16, LLC DE

ACTIVE PARK TREE PROPERTIES 17 LLC DE

ACTIVE PARK TREE PROPERTIES 18, LLC DE

ACTIVE PARK TREE PROPERTIES 19, LLC DE

CANCELED PARK TREE PROPERTIES IV LLC CA

PARK TREE PROPERTIES V LLC DE

CANCELED PARK TREE PROPERTIES VI, LLC CA

CANCELED PARK TREE PROPERTIES VII LLC DE

ACTIVE PARK TREE PROPERTIES VIII LLC CA

ACTIVE PARK TREE VENTURES LLC CA

PARK TREE INVESTMENTS C, LLC DE

PARK TREE PROPERTIES 21, LLC DE

ACTIVE PARK TREE INVESTMENTS, LLC GA

11. On information and belief, all of the active entities are operated from 425 Divisadero St., Ste. 207, San Francisco, CA 94117.

12. On information and belief, the principal business of the active entities is the liquidation of mortgage debts of consumers and the collection of debt.

13. On information and belief, the principal business of Park Tree Investments, LLC consists of collection of debt, including supervision of the liquidation of the loans on behalf of the entities in which they are held.

14. Park Tree Investments 20, LLC was the entity in which a mortgage loan allegedly secured by plaintiffs' property was placed. (It is not named as a defendant herein.)

15. Park Tree Investments, LLC uses the mails, internet and telephone system in conducting business.

16. Park Tree Investments, LLC is a debt collector as defined in the FDCPA.

17. Defendant Dean Engle is a California businessman and owner of Park Tree Investments, LCC. He conducts business using the name Park Tree Investments, LLC, with offices at 425 Divisadero St., Ste. 207, San Francisco, CA 94117.

18. Defendant Dean Engle is in the principal business of collecting debts, buying debts and enforcing security interests on behalf of others.

19. Defendant Dean Engle has published over 23 articles, including "How to Buy Notes- Know Your Note Buying Enemies- Published April 16, 2009; How to Buy Cash Flow Notes- What If the Banker Says We Don't Sell Notes? - Published April 10, 2009; How to Do Short Sales Vs Buying Bank Notes- A Short Comparison- Published: March 26, 2009; Buying Mortgage Notes- What Motivates a Lender or Bank Rep to Sell? - Published March 5, 2009; Loan Modifications- Who Took My Non-Performing Mortgage? -Published February 23, 2009 amongst others.

20. Defendant Daniel I. Singer is a California attorney with offices at 2192 Martin, Ste. 150 Irvine, CA 92612-1483 He conducts business using the name Singer Law Group, LLP. A search of the California Secretary of State's website reveals no such entity. There was a Singer Law Group, LLC, with registration

date of: 03/26/2009 but it is no longer in good standing and has a status of FTB suspended.

21. Daniel I. Singer is in the principal business of collecting debts and enforcing security interests on behalf of others, including the various Park Tree entities. He describes himself on Facebook (https://www.facebook.com/singerlawgroup/) as a "distressed debt advisory firm".

22. In a Notes Seller Seminar/podcast posted of Defendant Daniel I. Singer's an online blog: (https://weclosenotes.com/ep-172-the-daniel-singer-law-group/) Daniel I. Singer promotes himself as a busy guy who takes time out of his busy schedule "working with real estate investors and funds all across the country with their non-performing note stuff."

23. When asked by a participant at the seminar the following question:

"How many loans or foreclosures do you think you've been responsible for over the years?" Defendant Daniel I. Singer responded by saying: "I sadly think that I've probably foreclosed on north of 10,000 houses over my thirteen years representing clients. I've probably represented clients in at least that many motion before bankruptcy stuff. It's quite a bit. I had a client one time that's doing about 1,000 a month. It was a lot."

24. In the same seminar posted on that online blog, Defendant Daniel I. Singer was asked the following: "Should somebody be scared of a bankruptcy loan, a loan that's in bankruptcy?" and Defendant Daniel I. Singer responded thus: "I'm a huge fan about buying loans that are in bankruptcy. Out of bankruptcy, you get so much information about a borrower, whether they file a 13, a 7or 11, that you would never get from a loan data tape or NPL report or a BPO. We went through one of your seminars. For pennies, for under $3, I'll know more about that borrower than that borrower probably knows about the borrower."

25. Daniel I. Singer uses the mails, the internet and telephone system in conducting such business.

26. Daniel I. Singer is a debt collector as defined in the FDCPA.

27. Defendant FCI Lender Services, Inc. ("FCI") is a California corporation with its principal place of business at 8180 E. Kaiser Blvd., Anaheim, CA 92808. It does business in Georgia. Its registered agent and office is Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076, USA

28. FCI is a "special servicer," holding itself out as engaging in "Non-Performing Loan Workouts." (https://www.trustfci.com/SpecialtyLoanServicing.html)

29. FCI regularly attempts to collect loans owned by others which are in default at the time FCI first becomes involved with them.

30. FCI uses the mails and telephone system in conducting business.

31. FCI is a debt collector as defined in the FDCPA.

32. Defendant Jauregui, Lindsey, Longshore & Tingle is a law firm organized as an Alabama law firm with offices at 244 Inverness Center Drive, Suite 200, Birmingham, AL 35242

33. Jauregui, Lindsey, Longshore & Tingle is engaged in the collection of debts, including residential mortgage debts.

34. Jauregui, Lindsey, Longshore & Tingle has a web site (http://www.jandllawfirm.com/) on which it describes its business as follows: "Jauregui & Lindsey is an Alabama & Mississippi law firm-We make it our goal to provide a timely and lucrative transition for our clients, from foreclosure to REO re-sale of bank owned residential real estate." closings."

35. Jauregui, Lindsey, Longshore & Tingle uses the internet, mails and telephone system in conducting such business.

36. Jauregui, Lindsey, Longshore & Tingle are debt collectors as defined in the FDCPA.

37. Defendant MicroBilt Corporation. (hereinafter "MicroBilt") is a credit reporting company and leading alternative credit data provider doing business in Georgia with offices at 100 Canal Pointe Blvd., Suite 208, Princeton, NJ, 08540, USA. Its registered agent and office is Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092

38. Defendant MicroBilt regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports, and accordingly, is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

39. MicroBilt uses the internet, mails and telephone system in conducting such business.

40. On its website (https://www.microbilt.com/category/credit-decisioning)
MicroBilt describes its business as follows:

" Powerful tools for smarter credit scoring and decisions. If your business extends credit to customers, consumer data is critical to your revenue and profitability. But offering credit also carries risks. Smart businesses choose MicroBilt to provide the high-quality, cost-efficient consumer credit data they need to help ensure the best loan decisions are being made for their business. As a consumer credit reporting agency, Microbilt's data and products meet the highest standards of quality and security."

41. Defendant The PNC Bank, National Association, Inc. is a Pennsylvania corporation licensed to do business in Georgia State. It is a private corporation with its national headquarters in Pittsburgh, Pennsylvania.

42. Defendant PNC Bank is a "debt collector" as defined by FDCPA.

43. Plaintiff initially had his bank account and mortgage note for the property commonly known as 3012 Stone Mountain Street, Lithonia, GA 30058 with RBC Bank USA before RBC Bank U.S.A. was acquired by PNC Bank.

44. Plaintiff's account with RBC Bank U.S.A. was acquired when the closing of acquisition of RBC Bank (Georgia) by PNC Bank was announced on June 19, 2011.

45. At all times material herein, Defendant PNC Bank, National Association, Inc. has had a principal office and place of business located at 249 Fifth Avenue, Pittsburgh, PA 15222, and has been actively conducting business in Georgia, as well as nationwide. Its registered agent and office is Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092. 38. Defendant PNC Bank N.A, is the sixth largest commercial bank in the United States with $250 billion in assets, $180 billion in deposits, and over 2,500 branches, including branches in the States of Georgia and most States in the United States of America. Defendant, at all times material hereto, is an enterprise engaged in interstate commerce and has had annual gross sales volume in excess of $500,000.

## JURISDICTION AND VENUE

46. Because this case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., jurisdiction of this Court arises under 28 U.S.C. § 1331. Additionally,

jurisdiction and authority to enforce a Bankruptcy Court Order arises under 28 U.S.C. § 1334, and supplemental jurisdiction for state law claims arises under 28 U.S.C. § 1367.

47. Venue is proper in this Court because a substantial part of the claim arose in Georgia;

48. Defendants' collection activities and violations of the law impacted plaintiff within this District;

49. Defendants attempted to unlawfully seize or foreclose Plaintiff's real estate within this District;

50. Defendant Delta Community Credit Union is located within this District.

(A)    **FACTUAL ALLEGATIONS AGAINST DEFENDANT DELTA**

51. On March 6, 2008 Plaintiff and his ex-wife closed on a Home Equity Loan (HELOC) hereinafter referred to as "second mortgage note" for $46,000 with Defendant Delta Community Credit Union; giving security interest in their primary residence and said property commonly known as 2715 Tradd Court Snellville, GA 30039 to Delta.

Appendix "A1" is a true and correct copy of the second mortgage note.

52. Defendant Delta Community Credit Union also holds the 1st mortgage note for Plaintiff and ex-wife's primary residence and said property commonly known as 2715 Tradd Court, Snellville, GA 30039.

53. The said property commonly known as 2715 Tradd Court, Snellville, GA 30039 was purchased in April 2006 with an 80/20 loan from Defendant Delta Community Credit Union.

54. Around 2010 Plaintiff and his ex-wife hit the hard times and experienced financial hardship due to the economic recession, bad business decisions and the ensuing mortgage melt down; as a result, Plaintiff and ex-wife defaulted on their 2nd Mortgage but kept the 1st mortgage up to date till this very moment.

55. Around September 2011, after being contacted by Delta Community Credit Union Loss Mitigation staff, Plaintiff sought to modify his second mortgage with Defendant Delta Community Credit Union who held both 1st and 2nd mortgages on their residential property commonly known as 2715 Tradd Court, GA 30039. A redacted copy of relevant email thread between Plaintiff and Defendant Delta staff during the loan modification process is attached as Appendix "A2"

56. While working on mortgage loan modification with Delta Community Credit Union Loss Mitigation Coordinator, Ms. LaRita Pettiway, Plaintiff was requested by Defendant Delta to prove financial hardship as one of the requirements for obtaining loan modification.

57. Plaintiff provided several documents, in addition to a lot of back and forth emails between Plaintiff and Defendant Delta's staff- Ms. Pettiway; two months

of recent paystubs from each borrower; copy of most recent filed federal tax return with all schedules; two recent bank statements for Plaintiff's non Delta account; a letter summarizing Plaintiff's financial situation and the reason why Plaintiff is requesting payment assistance; details of plan to recover from the current situation and the most recent tax bill and current homeowners insurance, in order to be considered for mortgage loan modification.

58. Plaintiff satisfactorily provided Delta all requested documents, including completing the Financial Statement and the 4506T, Dodd Frank certification; reached a modification trial period agreement with Defendant Delta, which stated that Defendant Delta will agree to modification of Plaintiff's mortgage, if Plaintiff makes 4 consecutive monthly payments in the amount of $260.00 starting this November 2011 to February 2012.

59. Plaintiff made payments as requested; however, when it was time for Plaintiff to make the last payment of the trial period, in February 2012, Defendant Delta, made it difficult for Plaintiff to make the final trial period payment, by disabling the second mortgage menu options in his online banking profile, then subsequently breached the loan modification agreement both parties agreed on. A true and correct copy of the Modification Trial Period Plan Agreement between Plaintiff and Defendant Delta Community Credit Union is attached as Appendix "A3"

60. Plaintiff alleges that the breach of the Mortgage Modification Trial Period agreement by Defendant Delta Community Credit Union in January 2012 was in bad faith.

61. On or about February 15, 2012 Plaintiff received a phone call from Defendant Delta's employee Ms. LaRita Pettiway, asking him to make his 2nd mortgage future payments to Companion Casualty and Property Insurance Company, Defendant Delta's representative subsequently provided a phone number- (336)514-7854 of someone named Rick Hughes, that she stated would contact Plaintiff with details of where to send 2nd mortgage payments to going forward.

62. Upon information and believe, Defendant Delta breached the trial modification plan agreement with Plaintiff, so it can sell the Home Equity Loan (HELOC) hereinafter referred to as "second mortgage note" identified by the partial account number 1114684XXXX to Companion Property and Casualty Insurance in January 2012.

63. Plaintiff asserts that by Defendant Delta's bad faith conduct, with the breach of the modification trial period agreement, it has jeopardized or destroyed any opportunity to reap the expected benefit of the second mortgage (HELOC).

64. Thereafter, both obligors of the Home Equity Loan (HELOC) hereinafter referred to as "second mortgage note" identified by the partial account number 1114684XXXX jointly filed Chapter 7 Bankruptcy in June 2012.

65. After Plaintiff filed Bankruptcy, Defendant Delta still had the opportunity to re-affirm Plaintiff's second mortgage note but chose not to.

66. The filing of bankruptcy by both obligors coupled with the cessation of payments on the second mortgage identified by the partial account number 1114684XXXX in January 2012 during the modification trial period, due to Defendant Delta's breach of the Modification Trial Period Plan, amounted to a repudiation of the contract, as it was no longer capable of being performed as written and was not in fact performed.

67. Plaintiff never received any notification from Defendant Delta documenting reason(s) for the denial of his loan modification application.

68. Plaintiff placed several calls to "Rick Hughes" at the number given to Plaintiff by Defendant Delta and there was no answer or call back.

69. Plaintiff never heard back from Rick Hughes or anyone associated with him until several days later, when Plaintiff received a letter dated February 28, 2012 on a FARA HEALTHCARE MANAGEMENT letterhead, with its company address listed as 9140 WEST DODGE ROAD, SUITE 418, OMAHA, NE 68114, and company website listed as (WWW.FARA.COM) .

Appendix "A4" is a true copy of the collection letter Plaintiff received in the mail from Fara Healthcare Management.

70. A business search of the Nebraska Secretary of State website for Fara Healthcare Management returned 0 (zero) result.

71. Plaintiff asserts that the first paragraph of the letter which stated: "This letter is in response to your phone conversation with Mr. Rick Hughes" is false or misleading, as Plaintiff never spoke to anyone named "Rick Hughes as claimed in the letter from Fara Healthcare Management.

72. At no time did Plaintiff have any phone conversation with Rick Hughes; as calls placed to the number Defendant Delta gave Plaintiff as Rick Hughes' phone number were not answered and calls never returned.

73. Plaintiff never forwarded any payments to FARA HEALTHCARE MANAGEMENT as instructed by the letter (Appendix A4) signed by a Claims Adjuster with FARA HEALTHCARE MANAGEMENT.

74. Neither Defendant Delta Community Credit Union, nor Companion Casualty and Property Insurance Company at any time provide Plaintiff with any documentation showing assignment of Mortgage Loan Number 111468434-43 to FARA HEALTHCARE MANAGEMENT.

75. Every time Plaintiff tried to visit WWW.FARA.COM to get more information about the company, he gets redirected to: https://www.yorkrisk.com/ website.

76. On June 20, 2012, Plaintiff filed a joint bankruptcy petition with ex-wife under Chapter 7 of the Bankruptcy Code, in the Northern District Court of Georgia, case number 12:65475-wlh.

77. Plaintiff received a discharge of his debts by Order of that Court dated October 5, 2012.

78. While the automatic stay was in effect during Plaintiff's bankruptcy, Defendant Delta sent Plaintiff a letter dated September 14, 2012 which stated *inter alia:*

"We are suspending your services due to: Loan Loss due to Bankruptcy"

79. Defendant Delta Community Credit Union's letter during the automatic stay and pendency of Plaintiff's Bankruptcy proceedings further stated *inter alia:* Suspension of services may include, but is not limited to, closing checking accounts, cancellation of online banking, direct deposit check, check cashing (including Delta Air Lines paychecks), service center transactions, lines of credit including overdraft protection, convenience loans, home equity and visa (to include any reward points), as well as being removed as joint owner from other Credit Union accounts"

A true copy of the adverse action notification letter during the pendency of Plaintiff's Chapter 7 Bankruptcy from Defendant Delta is attached hereto as Appendix "A5"

80. Plaintiff alleges that Defendant Delta's letter to Plaintiff (Appendix A5) was an attempt to assert a deficiency and collect a debt during the pendency of a bankruptcy proceeding.

81. Defendant Delta did not, during the pendency of Plaintiff's bankruptcy case, obtain relief from the automatic stay for the purpose of continuing collection efforts by reporting post-filing derogatory collection information.

82. Plaintiff alleges that it was unlawful for Defendant Delta to send Plaintiff a letter asserting a deficiency, due to loan loss to Bankruptcy and suspending Plaintiff's banking and credit services with Defendant Delta, while the automatic stay was in effect during Plaintiff's bankruptcy.

83. Defendant Delta's alleged conduct in the preceding paragraph, violated 11 U.S. Code § 362 Automatic Stay.

84. On August 8, 2019 Plaintiff applied to Georgia United Credit Union (GUCU) for a mortgage refinance loan.

85. Plaintiff had completed most of the requirements for obtaining a mortgage loan refinance from Georgia United Credit Union, including the appraisal of his property by an appraisal company designated by Georgia United Credit Union.

86. As part of the final loan approval process, Plaintiff was informed by Georgia United Credit Union that they would need additional information such as loan pay-off amount from my current note holder (Defendant Delta) since the payment history had not been reported to the credit bureaus since 2012 when Plaintiff filed for bankruptcy.

87. GUCU stated that they had contracted Equifax Mortgage Services (Equifax) to help them obtain the additional information such as loan pay-off amount and that they would be contacting Plaintiff in due course.

88. Around 2 PM on August 30, 2019, Plaintiff received a phone call from an Equifax Mortgage Services customer service agent who verified Plaintiff's identity and asked for his permission to place a 3-way conference call to obtain information on behalf of Georgia United Credit Union, regarding his mortgage refinance loan application?

89. Plaintiff gave his consent and the call was placed to Delta Community Credit Union, after several prompts and call transfers, a Delta Community Credit Union Loss Mitigation staff named Ms. Maxine came online and after she obtained permission from Plaintiff to divulge his account information to Equifax, the first question she was asked by Equifax was "How many people are on this loan account?"

90. Ms. Maxine of Delta of Delta Community Credit Union responded by saying "Mr. Ohai is the only one on the account"

91. Plaintiff alleges that because both Plaintiff and his ex-wife were on the mortgage note and the security deed on the property commonly known as 2715 Tradd Court, Snellville, GA 30039, the information Defendant Delta's agent Ms. Maxine gave Equifax on August 30, 2019 during the call to verify Plaintiff's account information was both willfully false and misleading; in violation of FCRA 15 U.S.C. § 1681 et seq.

92. At that point during the call, Plaintiff disputed the accuracy of that information given by Ms. Maxine with Equifax, then openly confronted Maxine and accused her of providing false information to a credit bureau.

93. As a result of this confrontation, Maxine stated that she was unable to proceed with the phone call, she then read out a fax number and requested Equifax to send their request by fax and that it would take up to 72 hours for a response to be given by Defendant Delta.

94. Thereafter Plaintiff requested to speak with a Supervisor at Delta Community Credit Union Loss Mitigation Dept. while Equifax was still on the conference call.

95. After a few minutes, an individual introducing himself as Mr. John Boren and a Manager at Delta came online and repeated what Maxine stated that a request had to be submitted via fax by Equifax.

96. Equifax customer service agent later asked for Plaintiff's consent to submit a written request by fax, to which Plaintiff gave his consent.

97. During the call, Plaintiff became aware that his personal credit information that Delta would be sending to Equifax will be sent to a general mailbox that the Equifax customer service agent provided.

98. On Saturday August 31, 2019 Plaintiff emailed Delta Community Credit Union Recovery Services Manager, John P. Boren to find out if he had sent the requested account verification to Equifax or not?

99. Plaintiff in an E-mail to Defendant Delta Manager John Boren on September 3, 2019 had requested the following *inter alia*:

100. "John, please go ahead and provide Equifax Mortgage Services the information that they requested if you have it…"

101. In response to Plaintiff's email, Delta Community Credit Union's Manager John Boren on September 4, 2019 wrote:

102. "Mr. Ohai, I seem to be getting conflicting information each time you respond concerning the release of your information. This is not something that is usually decided on a whim. That being said I would check with each party

involved and determine if what I sent on Friday will satisfy everyone. If we respond to this particular request from Equifax sent on Friday we will have to respond that it is discharged debt and I don't believe that will benefit you. I think what I provided on Friday at 4:46 p.m. will have the most benefit for you. Please let me know if that will work and if so we can disregard this request." Email thread between Plaintiff and Delta Community Credit Union Recovery Services Manager Mr. John P. Boren is proof of Defendant Delta's violations of the FCRA and State of Georgia libel is attached hereto as Appendix "A6"

103. Plaintiff alleges that the information that Delta Manager Mr. John Boren provided Equifax on Friday August 30, 2019 regarding Plaintiff's account information was false, misleading and libelous in violation of O.C.G.A. §10-1-390 et seq Defendant Delta acted with malice or fraud.

104. Plaintiff also alleges that information that Ms. Maxine gave Equifax on August 30, 2019 that Plaintiff is the only one on the mortgage account is false and misleading.

105. Defendant Delta Community Credit Union is liable to Plaintiff as the FCRA Section 623(a) strictly prohibits Creditors from giving reporting agencies inaccurate or false financial information about consumers.

106.   Plaintiff disputed both Ms. Maxine and Mr. John Boren's inaccurate reporting on Plaintiff's account information to Equifax Customer Service agent who called to verify account information over the phone.

107.   As a result of this oral dispute to Equifax by Plaintiff over the phone, Defendant agents Ms. Maxine and Mr. Boren both made an usual request for Equifax to submit their request via fax and allow 72 hours for a response, a request that the Equifax agent admitted was an extraordinary request considering that in over 5 years he had worked with Equifax verifying loan account history with creditors, he had never encountered such request from any bank or furnisher of information.

108.   Due to Defendant Delta's failure to follow reasonable procedures to assure maximum possible accuracy of information regarding Plaintiff's account with Delta Community Credit Union, Defendant Delta conveyed to Equifax both false and misleading information, that Plaintiff owed a balance to Delta that was not discharged in Bankruptcy.

109.   Plaintiff avers that he had previously been a victim of Delta Community Credit Union's reckless and willful furnishing of inaccurate and false information.

110.   Around December 2016, Plaintiff had applied to Quickens Loans for a mortgage refinance loan.

111. Prior to applying to Quickens loan, Plaintiff had signed up a Credit Repair Company named Continental Credit LLC, based out of Colorado around October 2016, to help Plaintiff improve his credit score.

112. As it turned out for Plaintiff, it was not a good decision to hire a credit repair company as they did more damage than good.

113. However, during the duration of the contract with Continental Credit, Plaintiff became aware that Continental Credit had submitted disputes to the 3 major credit unions concerning the tradelines of his unsecured debts including his Chapter 7 Bankruptcy.

114. Upon information and belief, Continental Credit submitted disputes for all tradelines and credit information to the Credit Reporting Agencies on behalf of Plaintiff.

115. Upon information and belief flurry of these disputes set a red flag on Plaintiff's Credit file. So when Plaintiff later submitted a refinance loan application with Quickens Loan. It became an issue.

116. Upon information and belief, rogue debt collectors such as Park Tree Investments used Continental Credit LLCs activity as note buying leads as they approached Creditors listed on Plaintiff's files for purchase of perceived non-performing mortgage or loan.

117. In spite of that snag, Plaintiff was still pre-approved for the loan and an appraisal of the property was done.

118. As condition for pre-approving loan, Quickens Loan made Plaintiff sign a statement that he had actually contracted a credit repair company to submit the flurry of disputes to the CRAs.

119. Finally when Quickens Loan contacted Delta Community Credit Union around December 2016 to get the final pay-off amount of the mortgage as the final step before the loan is closed. Ms. Maxine was the Delta Community Credit Union Loss Mitigation agent who took the call. At that time, she answered correctly that both Plaintiff and his wife were on the account.

120. However, when she was asked by Equifax Mortgage Services Customer Service Agent who placed the 3-way call in December 2016 how many times in the last 12 months had Plaintiff being more than 30 days late on his mortgage Payment, Ms. Maxine had lied and said twice.

121.

122. On October 31, 2019 Plaintiff applied for Mortgage Finance refinance loan on Defendant Delta's website www.deltacommunitycu.com.

123. Defendant Delta had another opportunity to mitigate the emotional stress and financial harm its prior willful conduct had caused Plaintiff.

124.  Defendant yet failed in its duties to Plaintiff to provide the required adverse
action notification as required by ECOA Regulation B.

125.  Plaintiff asserts that the allegations against Defendant Delta described in the
preceding paragraphs were willful and intended to cause financial and
emotional harm to Plaintiff.

126.  Plaintiff at the time of applying for the mortgage loan refinance with
Georgia United Credit Union had made them aware that he and his ex-wife had
jointly filed for Chapter 7 Bankruptcy in June 2012 and that his debts including
both mortgage debts held by Delta had been discharged in October 2012.

127.  Plaintiff further asserts that the willful conduct by Defendant Delta as
alleged by Plaintiff in preceding paragraphs of this complaint were not only
unlawful but in bad faith.


128.   Defendant Delta's willful conduct as alleged is the proximate cause of
Plaintiff's Mortgage Refinance application denial by Georgia United Credit
Union in October 2019. Georgia United Statement of Credit Denial attached
hereto as Appendix "A7"

129.  This denial of credit by Georgia United Credit Union was solely due to
Defendant Delta's intentional violation of FCRA when it provided false and
misleading information to Equifax.

130.   Plaintiff alleges that the Defendant Delta's misconduct has caused Plaintiff financial harm, as Plaintiff has to continued to pay a high interest rate of 6.25% interest he currently pays with Delta instead of 4% interest rate he had locked in with Georgia United Credit Union.

131.   Plaintiff asserts that spread over 15 years, the 2% interest rate difference becomes substantial.

132.   On October 31, 2019 Plaintiff applied for Home Mortgage refinance loan on Defendant Delta's website www.deltacommunitycu.com

133.   Later in the day of October 31, 2019, Defendant Delta Community Credit Union's employee, Specialist Loss Mitigation & Recovery Ms. Cindy Morrow called Plaintiff to say *inter alia*:

"We reviewed your account with our Mortgage Lending and unfortunately due to the loss in the Bankruptcy, we will not be able to offer you a new loan or mortgage…"

134.   30 days went by after Plaintiff submitted his mortgage refinance loan application, and Plaintiff never received from Defendant Delta any notification of an adverse action or action otherwise taken regarding Plaintiff's application for Mortgage Refinance loan that he submitted on Defendant Delta's web site on October 31, 2019

135.   Defendant Delta's willful conduct violates ECOA's Regulation B § 1002.9 Notifications (a)(1)(i) which stipulates that A creditor shall notify an applicant in writing of action taken within: 30 days after receiving a completed application concerning the creditor's approval of, counter offer to, or adverse action on the application.

136.   Defendant Delta Community Credit Union breached their duties as described above.

137.   Plaintiff asserts that Defendant Delta's conduct described in preceding paragraphs of this complaint was not only egregious but was willful and intended to damage Plaintiff and cause him financial and emotional harm.

138.   Plaintiff asserts that Delta staff Ms. Cindy Morrow's phone call on October 31, 2019 to Plaintiff as alleged in Paragraph 121 was not an honest mistake but a willful conduct intended to damage Plaintiff, because it expressed same set of facts as the letter dated September 14, 2012 (Appendix "A5") that Defendant Delta sent Plaintiff during the pendency of Plaintiff's Chapter 7 Bankruptcy.

139.   Plaintiff asserts that the conduct alleged in paragraph 121, was intended and designed by Defendant Delta to mount undue pressure on Plaintiff, so that Plaintiff would have no choice but to give-in to the illegal collection activities of Defendant Park Tree Investments, LLC, Defendant Singer Law Group and the other collaborator Defendants.

140.   Plaintiff alleges that in March 2019 or thereabout, Plaintiff got a phone call

from Ms. Cindy Morrow who wanted to know why Plaintiff had not made his

mortgage payment. Plaintiff explained to Ms. Morrow that he had mailed the

payment over 2 weeks ago and that they should have received it. Ms. Morrow

then stated that she will check again and let Plaintiff know the following day if

the payment had been located or not.

The following day Ms. Cindy called and in a telephone conversation with Plaintiff,

Defendant Delta's Loss Mitigation Coordinator Ms. Cindy Morrow stated that they

had not received Plaintiff's mortgage for the current month and that they couldn't

find the missing check, then she asked if Plaintiff wanted to make the payment

over the phone to which Plaintiff initially agreed to, then once Plaintiff gave Ms.

Cindy Morrow his debit card number, she promptly asked Plaintiff: "Mr. Ohai, is

it okay if I charge your debit card for a payment of $426.96, then it dawned on

Plaintiff's that Defendant Delta Community Credit Union agent Ms. Cindy

Morrow, was trying to re-toll the discharged debt of loan with partial account

number 1114684XXXX, so Plaintiff said "No, thank you"

Ms. Cindy Morrow then asked the rhetorical question "Mr. Ohai, why don't you

want to make your 2nd mortgage payments?

Plaintiff responded to responded to Ms. Cindy Morrow of Delta Community Credit

Union Loss Mitigation Department's question by asking her to contact his

Bankruptcy Attorney. Then Ms. Cindy Morrow then asked, "who is your lawyer?" When Plaintiff responded that Mr. Kevin Pratt was his lawyer, Ms. Cindy Morrow, then asked Plaintiff if his lawyer Kevin Pratt asked him not to make payments on his 2nd mortgage? And Plaintiff's response was that his lawyer never told him to make or not make payments on the discharged 2nd mortgage debt but she should contact him to get any information about Plaintiff's discharged Chapter 7 Bankruptcy.

141.   Plaintiff re-asserts that allegations in the preceding paragraph were willful and intended to cause Plaintiff financial and emotional harm.

142.   Defendant Delta Community Credit Union breached their duties to Plaintiff as described in preceding paragraphs by violating the Automatic Stay and Discharge Injunction of the Bankruptcy Code.

143.   Ultimately, Plaintiff has desired to take advantage of credit opportunities, most notably, the refinance of his mortgage loan or buy a new car, but has been unable to do so because of Delta Community Credit Union's failure to report only accurate information about Plaintiff.

144.   As a result, Plaintiff has been forced to continue paying higher monthly amounts on his mortgage than he would otherwise have to upon his approval for refinancing. The attempt to collect this time-barred debt by Defendant Delta Community Credit Union from Plaintiff has continued till date as Defendant

Delta had plotted with third party debt collector Defendants Park Tree

Investments, LLC; Singer Law Group; Jauregui, Lindsey, Longshore & Tingle;

and FCI Lenders Inc., to front as debt collector agents for the discharged and

time-barred mortgage debt, identified by the partial account number

1114684XXXX, in violation of the automatic stay and the discharge Injunction

of the Bankruptcy Court of the Northern District Court of Georgia.

**(B) <u>FACTUAL ALLEGATIONS AGAINST DEBT COLLECTOR</u>**

**<u>DEFENDANTS PARK TREE INVESTMENTS, SINGER LAW GROUP,</u>**

**<u>FCI LENDERS AND JAUREGUI, LINDSEY, LOGSHORE & TINGLE</u>**

145.    All Defendants in this action have been attempting to enforce against

Plaintiff Emmanuel Ohai a discharged and time-barred mortgage debt securing

Plaintiff's primary residence commonly known as 2715 Tradd Court, Snellville,

GA 30039

146.    Among the debts discharged by the Bankruptcy Court of the Northern

District Court of Georgia in October 2012, were two mortgage debts owing to

Defendant Delta by Plaintiff, one of which is identified by the partial account

number 313000XXXX and the other 1114684XXXX

147.    At the time of filing chapter 7 bankruptcy in June 2012, Plaintiff and ex-

wife were owing  to Delta Credit Union $98, 352.20 as 1st Mortgage and

$39,615.00 as 2nd Mortgage with the property commonly known as 2715 Tradd Court, Snellville, GA 30039 as collateral.

148.    At the time of filing chapter 7 bankruptcy, the Gwinnett Tax Assessor's Office had assessed a value of $81,100 on Plaintiff's residential property commonly known as 2715 Tradd Court, Snellville, GA 30039

149.    At the time of filing for chapter 7 bankruptcy, Plaintiff's residential property Plaintiff's mortgage note for property commonly known as 2715 Tradd Court was in layman's term "underwater" as it was valued for $81,100

150.    Around May 23, 2017 Plaintiff received a letter titled: Re: NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS from Defendant Park Tree Investments, LLC addressed to both Plaintiff and his ex-wife, the letter stated *inter alia*:

Sussex Insurance Company (f/k/a Companion Property & Casualty Insurance Company) is now collecting your payments. Sussex Insurance Company (f/k/a) Companion Property & Casualty Insurance Company) will stop accepting payments received from you on June 7, 2017. Park Tree Investments 20, LLC will collect your payments going forward. Your new servicer will start accepting payments received from you on June 7, 2017

True copy of letter Defendant Park Tree's NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS is attached hereto as Appendix "B1"

151. Subsequently, on or about May 27, 2017 Plaintiff received another letter from Defendant Park Tree Investments, LLC titled: "New Investor- Truth In Lending Act Disclosure." This letter stated *inter alia*:

"Please let this serve as your notification and our disclosure as to the identity of the new owner of your mortgage loan."

A true copy of the New Investor- Truth In Lending Act Disclosure letter is attached hereto as Appendix "B2"

152. Around June 28, 2017, Plaintiff received another letter from Defendant Park tree Investments, LLC titled "BORROWER WELCOME LETTER" and dated June 22, 2017 from Defendant Park Tree Investment, LLC. The said "BORROWER WELCOME LETTER" is attached hereto as Appendix "B3"

153. On July 3, 2017 Plaintiff sent a USPS Certified Mail Return Receipt letter to Defendant Park Tree Investment, LLC to demand that they do not contact him any longer, asking that they contact his lawyer instead. The letter stated *inter alia*:

"Please contact my lawyer about this debt, and do not contact me directly again."

154. Plaintiff provided the name, address and phone number of his lawyer Mr. Kevin Pratt to Defendant Park Tree Investments, LLC in the letter described in the preceding paragraph. Plaintiff's Cease and Desist Letter to Defendant Park tree Investment, LLC and Park Tree's response is attached hereto as Appendix "B4"

155. Around July 13, 2017 Plaintiff received a letter sent via FEDEX Express Mail from Defendant Park Tree Investments, LLC. Attached to the letter was a business card belonging to one Jennifer Zartman- Park Tree Investments, LLC Asset Manager. The said letter stated *inter alia*:

"Park Tree Investments 20, LLC is in receipt of your Cease and Desist request. Your file has been noted and you will not receive collection communications." See true copy of Defendant Park Tree Investments, LLC's response dated July 12, 2017 attached hereto as Appendix "B4"

156. In spite of assurances from Defendant Park Tree Investment in its letter dated July 12, 2017, that Plaintiff "will not receive communications", Park Tree Investments, LLC sent a bill dated July 31, 2017 for a payment amount due of $29,850.10, enclosed payment coupon, return addressed envelope with instructions to Plaintiff, for him to "make check payable to Park Tree Investments 20" True copy of the bill is attached hereto as Appendix "B5"

157.   Plaintiff has continued to receive collection letters and bills in form of loan account statements, payment coupons and self-addressed return envelope every month starting July 31, 2017 till date from Park Tree Investments, LLC and its collaborators and Co-defendants FCI Lenders, Inc., Singer Law Group.

158.   On or about April 26, 2018 Plaintiff received a letter from Defendant Park Tree Investments, LLC addressed to Plaintiff, titled: Re: NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS. The letter stated *inter alia*:

"The servicing of your mortgage loan is being transferred, effective May 11, 2018. This means that after this date, a new Servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. Park Tree Investments 20, LLC will stop accepting payments received from you on May 11, 2018. FCI Lender Services, Inc. will collect your payments going forward. Your new Servicer will start accepting payments received from you on May 11, 2018"

True copy of "NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS" is attached hereto as Appendix "B6"

159.   No payments were made on the mortgage debt after January 2012.

160.  On or about July 11, 2018 Plaintiff received from Defendant FCI Lender

Services, Inc. a Loan Reinstatement and pay off demand letter; true copy

attached hereto as Appendix "B7 "

161.  On or about June 8, 2018, Plaintiff sent a letter to Defendant FCI Lender

Services, Inc. demanding validation and verification of the alleged debt that was

being transferred to them pursuant to 15 U.S.C. Section 1692(f)

162.  On or about July 11, 2018 Defendant Singer sent a letter in response to

Plaintiff's request for verification and validation which stated *inter alia*:

"Reinstatement quote and payoff quote evidence the balances owed under your

owed and a description of how our client's servicer arrived at the current payoff

and reinstatement amounts."

163.  On or about July 16, 2018, Defendant Singer sent plaintiff another letter that

stated *inter alia*: "You may have the right to cure the default after the

acceleration of the mortgage payments and prior to the sale of your property.

You also have the right, in any lawsuit for foreclosure and sale, to argue that

you did keep your promises and agreements under the Promissory Note and

Mortgage or Deed of Trust and to present any other defenses you may have."

Both letters of July 11, 2018 and July 16, 2018 from Defender Singer are

attached hereto as Appendix "B8"

164. An unsophisticated consumer such as Plaintiff would understand Appendix "B8" as stating that failure to make arrangements to satisfy the mortgage debt will result in a lawsuit to seize his or her property.

165. In Georgia no such seizure is permitted.

166. On information and belief, no such seizure was intended.

167. Defendant Singer sent the letters in appendix "B8 "on behalf of Park Tree Investments, LLC, although that company is not clearly identified as the owner of the debt. FCI Lender Services was acting as the agent of Park Tree Investments, LLC at its direction.

168. Appendix "B8" threatens to accelerate the contract and mortgage, even though they had been accelerated in 2011 and were barred by limitations.

169. On July 16, 2018, when Defendant Singer sent Plaintiff letter referenced in preceding paragraph, on behalf of Park Tree Investments, LLC, both the note and mortgage were barred by the Georgia 6-year statute of limitations.

170. Defendant Singer July 16, 2018 letter stated, "If the default is not cured on or before August 17, 2018 the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure will be initiated at that time. The failure to cure the default may result in the foreclosure and sale of your property.

171. Defendant Singer July 16, 2018 letter further stated: "You may have the right to cure the default after the acceleration of the mortgage payments and prior to the sale of your property. You also have the right, in any lawsuit for foreclosure and sale, to argue that you did keep your promises and agreements under the Promissory Note and Mortgage or Deed of Trust and to present any defenses you may have."

172. On or about January 28, 2019 Plaintiff received an alert from Experian Credit Monitoring Services that a Credit Reporting Agency named Microbilt had obtained Plaintiff's Consumer Credit File.

173. On or about January 29, 2019, Plaintiff contacted Experian via phone to dispute whether Microbilt had a permissible purpose to obtain his consumer report.

174. Experian instructed Plaintiff to contact Microbilt directly to have them investigate the unauthorized credit file pull.

175. Plaintiff called Microbilt on or about January 29, 2019 and spoke to one, Ms. Ivy, who after verifying Plaintiff's personal identity notified Plaintiff that Microbilt placed the hard inquiry on Plaintiff's consumer credit file with the Credit Reporting Agencies on behalf of Plaintiff that Park Tree Investment.

176. Ms. Ivy then asked if Plaintiff had applied for a mortgage loan with Park Tree Investments, LLC which Plaintiff vehemently denied.

177.  Plaintiff clearly disputed the hard inquiry and asked Ms. Ivy to investigate the unauthorized hard inquiry by Park Tree Investments, LLC.

178.  On or about July 11, 2018 FCI Lender Services sent Plaintiff via US Post a Loan Reinstatement and Report and demand payoff statement. True copy attached hereto as Appendix 'B9"

179.  On or about July 17, 2019, Plaintiff received a letter addressed to him and his ex-wife from Defendant Jauregui, Lindsey, Longshore and Tingle, LLC (JLLT) which stated *inter alia*: "This letter is to advise you that we have been retained to collect the loan secured by the above referenced property, which may involve foreclosure proceedings against said property. The total amount of debt owed to the creditor consists of the unpaid principal balance, any unpaid accrued interest; escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges. As of the date of this letter you owe $65,809.55 Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid" True copy of letter is attached as Appendix "B10"

180.  On or about July 29, 2019, Defendant JLLT not waiting for the 30 notice it stated in its July 12, 2018 letter that Plaintiff had to dispute validity of debt to expire, sent Plaintiff a "NOTICE OF SALE UNDER POWER" via USPS Certified Mail- Return Receipt, which stated *inter alia*: "Enclosed is a copy of

the Notice of Sale submitted for publication in the legal newspaper. Note that the sale is scheduled for the first Tuesday in September, 2019, and will be held within the legal hours of sale at the Gwinnett County Courthouse." "NOTICE OF SALE UNDER POWER letter from JLLT. True copy of JLLT letter and NOTICE OF SALE UNDER POWER is attached hereto as Appendix "B11"

181.   Upon information and belief both Appendix' "B10 and B11" were mailed to Plaintiff from San Diego, California.

182.   Defendant Park Tree Investments, LLC caused mortgage foreclosure sale of Plaintiff's said property known as 2715 Tradd Court, Snellville, GA 30039 to be scheduled for September 3, 2019.

183.   Subsequently, representative of Park Tree Investments, Ltd., called plaintiff directly and offered to settle the lien on property in exchange for $20,000

184.   Plaintiff in good faith engaged in pre-foreclosure settlement discussions as an attempt to stop the illegal seizure of his property.

185.   Defendants on numerous occasions have failed on multiple occasions to present for scrutiny an enforceable security deed with lawful assignment chain and allonges.

186.   Plaintiff was forced to incur the expenses of hiring a real estate attorney to review the security deed documents that Defendants claimed they had, which turned out to be laced with fraud and irregularities.

187.  Plaintiff asserts that Defendants Park Tree Investments, FCI Lender Services, Singer and JLLT's attempt to seize Plaintiff's property was unlawful.

188.  The security deed that Defendants relied on, was defective with unlawful chain of assignments and allonges.

189.  Defendants documents failed to demonstrate standing to foreclose where the undated blank endorsement on the original note.

190.  Defendants Park Tree, FCI Lender Services, Singer and JLLT failed to establish that they had standing to foreclose on Plaintiff's property before the illegal seizure of Plaintiff's property commenced at Gwinnett County.

191.  No such seizure is permitted.

192.  On information and belief, no such seizure was intended.

193.  Until Plaintiff made the additional expense of hiring a top notch real estate Attorney, Defendants thought they had gotten away with it as they continued to harass and torment Plaintiff with all kinds of notices and phone calls and sms text messages from spoofed numbers offering to buy Plaintiff's property in a short sale.

194.  Between Plaintiff and his ex-wife over 100 text messages were received since August of last year till when this lawsuit was filed from individuals claiming to be real estate investors looking to buy Plaintiff's property in a short sale.

195.   Since this lawsuit was filed, the sms text messages to Plaintiff and his ex-wife from Defendants spoofed numbers had stopped.

196.   Even after hiring Attorney Van Gelderen, Plaintiffs were unable to produce security deed documents that entitled them to the lien they claim to hold on Plaintiff's property.

197.   Plaintiff alleges that Defendants deceptive and misleading conduct violates the Discharge Injunction as well as the Georgia FBPA

198.   Defendant Dean Engle drafted and sent Plaintiff a proposed Settlement Agreement. A true copy of Settlement Agreement is attached hereto as Exhibit "B12"

199.   Plaintiff asserts that he felt extremely pressured to sign the unconscionable Settlement Agreement; as it did not give Plaintiff any opportunity to have other choices.

200.   Plaintiff avers that the pressure was unwarranted as the debts were already discharged by the Bankruptcy court.

201.   Plaintiff alleges Defendants Delta, Dean Engle, Park Tree Investments, Daniel I. Singer, Singer Law Group, and Jauregui, Lindsey, Longshore and Tinsley engaged in concerted action for the purpose of attempting to obtain money from plaintiff on a discharged and time barred debt.

202. There are questions of law and fact raised by Defendants, Park tree, Singer and JLLT letters to Plaintiff annexed hereto as Appendixes B8, B9, B10, B11 an B12. The predominant questions are:

a. Whether the letters threaten unlawful dispossession of property

b. Whether the letters violate FDCPA

c. Whether the unauthorized hard inquiry by Defendants of Plaintiff's Consumer Credit File violates the FCRA

d. Whether the letters and Defendant Park Tree's Settlement Offer violate the Discharge Injunction of the Bankruptcy Code

203. Plaintiff re-alleges a violation of 15 U.S.C. § 1962f. Section 1962e(10) which proscribes "the use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692f

204. Plaintiff further pleads a violation of the Discharge Injunction 11 U.S. section 524(a)(2) of the Bankruptcy code by the Defendants Park tree, Singer, FCI and JLLT.

205. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. Crabill v. Trans Union, LLC, 259 F.3d 662, 666 (7th Cir. 2001).

206. Plaintiff seek to enforce those policies and civil rights which are expressed

through the FDCPA, 15 U.S.C. §1692 et seq. and 11 U.S. section 524(a)(2) of

the Bankruptcy code

207. Weeks before the scheduled foreclosure sale date, Plaintiff and ex-wife's

phones were bombarded by harassing solicitation phone calls, sometimes at odd

times of the day from different characters offering a quick sale or assistance for

Plaintiff to avoid foreclosure of his property. In addition, over 50 letters from

several entities addressed to Plaintiff's at his home address, each asking to buy

Plaintiff's property in a quick sale or offering to help Plaintiff avoid foreclosure

of his property.

208. Around August 2019 Plaintiff became aware through an acquaintance that

Defendant Park Tree had published online (www.foreclosurebidslist.com) that

said primary residence known as 2715 Tradd Court, Snellville owned by

Emmanuel and his ex-wife with a mortgage note in default of $37k that was as

a result scheduled to be sold at Gwinnett County Court House on September 3,

2019. A true copy of defamatory online publication by Defendant Park Tree is

attached hereto as Appendix "B15 "

209. Defendant Dean Engle, Park Tree Investments willfully and maliciously

published on the world wide web false and misleading information about

Plaintiff.

210. The amount of $37k that Defendant Park tree Investments claimed in the said publication that Plaintiff was in default of, was intended to paint Plaintiff in false light as a scammer.

211. Plaintiff asserts that the alleged note and security deed that Defendant Park Tree relied on, in their libelous publication against Plaintiff is unenforceable under Georgia law.

212. For the past 15 years or so, as Founder and Convener of the Movement for the Creation of Anioma State, Plaintiff has dedicated his life work and indeed his time and money to lead a Movement in his native Nigeria that is seeking for the contiguous geographical area he is from; Anioma to be the created as the 37th State in Nigeria.

213. This life work by Plaintiff is only possible because of Plaintiff's impeccable character and moral authority as a mentor of many Anioma youth and adults who look up to him for inspiration and determination.

214. Plaintiff pleads that there is no reasonable basis for Defendant Park Tree Investments to paint Plaintiff in such false light other than to maliciously defame Plaintiff and harm his hard-earned reputation.

215. Plaintiff pleads that Georgia recognizes the tort of "false light." Plaintiffs can sue for false light when false information is spread about them that depicts them in an untruthful and highly offensive manner.

216. Defendant Park Tree and its agent co-defenders have sent Plaintiff numerous collection letters alleging debts of various amounts of which none amounted to $37k

217. Plaintiff avers that the publication by Defendants Park Tree and its agents is not funny because of the alleged debt context if not for the foreclosure of the offensive publication, as no reasonable individual would have understood it as part of a satire or fiction. Although the fictional or humorous nature of a publication will not necessarily insulate a Defendant from a libel claim under Georgia law.

218. Plaintiff asserts that the malicious and reckless conduct alleged by Defendant Park tree and its agents in preceding ten paragraphs will be highly offensive to a reasonable person.

219. Georgia courts readily acknowledge that "[t]he interests protected [by the tort of false light] is clearly that of reputation, with the same overtones of mental distress as in defamation." Association Servs. v. Smith, 549 S.E.2d 454, 459 (Ga. Ct. App. 2001).

220. Due to Defendants willful and persistent violations of the law, Plaintiff suffered many sleepless nights fearing that he would lose his house and become homeless and a laughingstock to millions of Anioma indigenes who held him in high esteem.

221.  Overwhelmed by the pressure of harassing phone calls and unwarranted solicitations from people claiming to be investors and as a last ditch effort to prevent the unlawful seizure of Plaintiff's property that is all he has to show for all these years of work as an adult, Plaintiff was forced to enter into settlement talks with Defendant Dean Engle of Park Tree Investments, LLC

222.  Defendant Dean Engle offered to stop the unlawful seizure of Plaintiff's property only if Plaintiff agreed to the terms in the settlement agreement annexed as Appendix "B12 "

223.  Plaintiff re-asserts that the said settlement agreement is unconscionable and unenforceable thereby null and void, as it is unjust; does not give Plaintiff any choices and does not extinguish the said lien on the property, even if the proposed settlement payment amount of $20,000 is made by Plaintiff.

224.  The Georgia Fair Business Practices Act (FBPA) forbids individuals or debt collection agencies from using intrusive or deceptive practices when collecting debts.

225.  Defendants Dean Engle, Park Tree Investments, Daniel I. Singer, Singer Law Group, FCI Lender Services, JLLT individually or collectively are liable to Plaintiff for violations of FDCPA and Georgia FBPA for his intrusive or deceptive practices.

226. Defendants Dean Engle, Park Tree Investments, Daniel I. Singer, Singer Law Group, FCI Lender Services, JLLT willfully sent several communications to Plaintiff related to the collection of a debt that had been discharged on October 5, 2012 in the Bankruptcy Court.

227. Defendants were fully aware that the alleged debt had been discharged before mailing harassing communications and tormenting phone calls to Plaintiff.

228. Plaintiff asserts that there is no "reasonable basis" for the Defendants to belief that their actions were not in violation of the discharge injunction of the Bankruptcy Code.

229. On or about December 23, 2019, Plaintiff hired Law Offices of Leon Van Gelderen, P.C. to help review the communication and documents received from Defendants and to help stop unlawful attempt to seize Plaintiff's property by Defendants.

230. The costly expense of hiring a top-notch Real Estate Attorney to review the documents submitted for the illegal seizure of Plaintiff's property would not have been necessary had Defendants not violate Georgia and Federal laws.

231. On January 7, 2020, Attorney Mr. Leon Van Gelderen sent a letter to Defendants Park Tree Investments, LLC, FCI Lender Services and Singer which stated *inter alia*: "I represent Mr. Ohai who made a demand for

verification of debt owed on his second mortgage in 2018. The information

supplied by your firm is inadequate to establish Park Tree's Rights in the note

and security deed. Please provide documentation showing transfer and

assignment of the security deed by the grantor, Delta Community Credit Union,

and allonges to the promissory note showing your client as transferee." True

copy of Plaintiff's Attorney Mr. Leon Van Gelderen's letter dated January 7,

2020 and1 month late email response to Mr. Van Gelderen's letter by Mr.

Daniel Singer is attached hereto as Appendix "B13 "

232.   In spite of Mr. Van Gelderen's communication to Park Tree Attorney Daniel

Singer on February 6, 2019 in which Attorney Van Gelderen stated *inter alia*:

"Mr. Ohai filed a personal bankruptcy on the note and was discharged. Your

client is in violation o [sic] the bankruptcy stay and the FDCPA and FCRA or

[sic] calling and harassing Mr. Ohai and reporting adverse credit information

annually. Do I have to file a lawsuit?"

233.   On January 16, 2020 Plaintiff got a phone call from Defendant Park Tree

Investment Asset Manager Ms. Jennifer Zartman. Ms. Zartman initially

pretended as if she was not aware of Plaintiff's lawyer, Mr. Van Gelderen's

letter to Park Tree Investment lawyer Mr. Singer. She kept asking questions

about their $20,000 settlement offer. It did not matter what question she asked,

Plaintiff responded to her in the manner he had been instructed by his Attorney

Mr. Van Gelderen. As Plaintiff continued to ask Ms. Zartman to please contact his attorney, the more Ms. Zartman became belligerent and irate to the extent of vowing to bankrupt Plaintiff again, and then she hung up the phone. A true copy of screenshot Plaintiff's phone call log showing date and time stamp and duration of the call attached hereto as Appendix "B14"

234.   On February 5, 2020 almost one month after Plaintiff's attorney Mr. Leon Van Gelderen wrote Defendant Daniel I. Singer, instead of addressing fully issue raised, Mr. Singer replied as follows:

235.   "Lean, [sic] I write in response to your correspondence dated January 7, 2020, which only just now found its way to me.  As requested, please find the complete chain of assignments and allonges.  If you require any additional documentation, please let me know. With respect to the intangible tax, are you saying that the original note holder failed to pay the tangible tax at the time of execution of the instrument?"

236.   Plaintiff alleges that Defendants Singer, FCI Lenders and JLLT continued to communicate with Plaintiff directly instead of with is Bankruptcy lawyer in spite of being aware of Defendant's filing of Chapter 7 Bankruptcy and especially after receiving letter from Plaintiff which identified to debtor collector debt buyer, the name, address and phone number of Plaintiff's lawyer

and a request that Plaintiff does not wish to receive any further communication from Park Tree or any of its associates or agents.

237.    Defendants Park Tree's continued communication starting in September 2017 in form of a monthly statement and several notices harassing Plaintiff and seeking payment from Plaintiff for a discharged debt, violates the discharge injunction authorized by 524(a)(2) which operates as an injunction against an act, to collect, recover or offset any such debt as a personal liability of the debtor.

238.    Plaintiff alleges that Defendants Delta, Park Tree, Singer, FCI Lender Services, Dean Engle's conduct as described in the preceding paragraphs violated the FDCPA U.S. 15 Section 1692c(a)  which provides that  a debt collector may not communicate with a consumer in connection with the collection of any debt, if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

239.    In Appendix B4 Plaintiff clearly stated that he did not wish to be contacted by Defendants and its agents concerning the discharged note.

240. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

241. Plaintiff pleads a violation of 15 U.S.C. § 1962f. Section 1962e(10) proscribes "the use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

242. Plaintiff pleads that Defendant Park tree Investments had no permissible purpose to obtain Plaintiff's consumer credit file. 15 U.S.C. § 1681s-2

243. Defendants did not, during or after the pendency of Plaintiff's bankruptcy case, obtain relief from the discharge injunction for the purpose of continuing collection of the discharged debt.

244. Plaintiff pleads that there is no fair ground of doubt as to the wrongfulness of the defendants' conduct as alleged in this complaint.

245. Plaintiff pleads that civil contempt sanctions under the Discharge Injunction of the Bankruptcy Code, on all Defendants may be warranted when a party acts in bad faith, malice and reckless wanton as alleged by Plaintiff pursuant to Section 105(a) of the Bankruptcy Code.

246. Plaintiff re-asserts that the actions of Defendants individually and/or collectively as alleged in preceding paragraphs are clearly in violation of the discharge injunction as there is no "reasonable basis" for the Defendants' to belief that their actions were not in violation of the discharge injunction.

247. As a result of Defendants' conduct, Plaintiff has sustained actual damages, including, but not limited to injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, emotional and mental pain and anguish, embarrassment, humiliation, damage to reputation and pecuniary loss and will continue to suffer same for an indefinite time in the future, all to their great detriment and loss.

## FACTUAL ALLEGATIONS AGAINST DEFENDANT MICROBILT

248. On or about January 28, 2019, Plaintiff received an alert from the credit monitoring service he had with Experian that Defendant Microbilt Corporation had placed an authorized hard inquiry tagged 'mortgage loan" on Plaintiff's credit report.

249. Plaintiff contacted Experian on or about January 29, 2019 to dispute the hard inquiry placed on his credit report by Microbilt. Experian stated that Plaintiff needed to contact your Microbilt directly to request an investigation.

250. On or about January 29, 2019, Plaintiff called Microbilt on 770-218-4400 and spoke with someone who identified herself as Ivy. Plaintiff inquired from

Ms. Ivy what the hard inquiry was that was placed on his credit report was about?

251.   After asking Plaintiff some Identifying personal questions to verify Plaintiff's identity, Microbilt agent Ms. Ivy then informed Plaintiff that the hard inquiry was ordered by Park Tree Investments, LLC.

252.   Plaintiff was further asked by Ms. Ivy of Microbilt, if Plaintiff had ever applied for a mortgage loan with Park Tree Investments?

253.   Plaintiff notified Ms. Ivy that he was certain that he had never applied for any mortgage loan with Park Tree Investments.

254.   When Plaintiff disputed the hard inquiry on his credit report, Plaintiff promptly requested for an investigation and removal of derogatory information from his credit report.

255.   Ms. Ivy was very uncooperative and combative as she refused to initiate an investigation as required by the FCRA, insisting that Plaintiff must go to their company website to submit a request before any investigation could begin. In the alternative, Ms. Ivy stated that she would send Plaintiff an investigation request from by mail.

256.   A few days passed after Plaintiff disputed the hard inquiry on his Consumer Credit file, Plaintiff was surprised to receive in the mail, privacy intrusive consumer dispute form, that was seeking amongst other things from Plaintiff

copies of Personal Identification Information such as U.S. Passport photo page,

Driver's license, Social Security card before an investigation can be conducted.

True copy of consumer dispute form Microbilt sent Plaintiff via U.S. Post is

enclosed. As Appendix "C1"

257.   Plaintiff alleges that these kinds of documents showing personal information

sought by the Microbilt Consumer Dispute form, are information Defendant

Microbilt readily sells to rogue Debt collectors such as Defendant Park Tree

and their agents for a fee.

258.   Approximately one year after, precisely on February 3, 2020, Plaintiff

received alert from Experian about another hard inquiry placed on Plaintiff's

consumer credit file by Microbilt on behalf of Park Tree Investments, LLC in

spite of Plaintiff not having sought any mortgage loan transactions with Park

Tree Investments. True copy of screenshot of credit alert of Microbilt's

unauthorized hard inquiry of Plaintiff's consumer credit file attached hereto as

Appendix 'C2"

259.   On or about February 24, 2020, Plaintiff sent Defendant Microbilt via USPS

Certified Return Receipt a letter of intent to file a lawsuit which stated *inter*

*alia*: "On February 3, 2020, another hard inquiry on behalf of Park Tree

Investments was placed on my credit by Microbilt. Your yearly placement of

unauthorized hard inquiries on my credit file and your refusal to investigate and

remove offensive hard inquiry was willful. Your intentional violation of the

FCRA and Georgia FBPA has damaged me. If you wish to resolve this matter,

this will be your last opportunity to do so. You can resolve this matter by

removing all hard inquiries placed on my credit file on behalf of Park Tree

Investments"

260.   On or about March 25, 2020, Plaintiff received a response to his letter of

intent to sue dated February 24, 2020 from Microbilt. In the response, Microbilt

stated *inter alia*: "We have determined that your Experian file was accessed by

Microbilt's customer, Park Tree Investments, LLC, located at 425 Divisadero,

Ste. 207, San Francisco, CA 94117, phone 415-252-0990, on January 28, 2019

and February 3, 2020 (not by Microbilt). True copy of Microbilt response letter

is attached hereto as Appendix "C3"

Upon determining the customer that made the inquiry on your consumer file,

we contacted the company to conduct an audit of their records and review the

subject of your dispute. They were requested to provide us with a written

response and as applicable, documentation supporting their authorization and

permissible purpose under FCRA for requesting your consumer file. If they fail

to do so, and as necessary thereafter, we will inform Experian of any change

that should be made to the information on your consumer file; negative

information that is accurate will stay on your consumer file as long as

governing laws allow. Once we have completed our investigation, we will send you a resolution letter reflecting the results of the investigation, usually 30 days of receiving your written dispute (note mail delivery typically takes 3-5 business days)."

261. As at the time of filing this lawsuit, Plaintiff has not received any resolution letter from Microbilt regarding the derogatory information it placed on Plaintiff's consumer file. The yearly derogatory information since as far back as 2016 by Park Tree Investments remain on Plaintiff's consumer file until time of filing this action.

262. Plaintiff alleges that Defendant Microbilt willfully and/or negligently violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Plaintiff and contained in Plaintiff's consumer reports.

263. Defendant Microbilt willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation, failure to conduct a reasonable investigation of Plaintiff's disputes when Plaintiff disputed the hard inquiry in January 2019 and by failing thereafter to appropriately delete derogatory information in Plaintiff's file.

264. As a result of Defendant Microbilt's willful and negligent conduct, Plaintiff has suffered loss of credit and low credit score(s) and emotional distress.

265. As a result of Defendant Microbilt's violations of §§ 1681e(b) and 1681i, Plaintiff has suffered actual damages, including without limitation, mail expense, mileage expense, lost time from work incurred after his dispute and attempt to obtain correction failed, frustration and aggravation, emotional Case distress and humiliation, suppression of his credit score, and detriment to his credit rating. Plaintiff is therefore entitled to recover actual damages from Defendant Microbilt pursuant to 15 U.S.C. §§ 1681n and 1681o.

266. Defendant Microbilt's actions and omissions were willful, rendering Defendant Microbilt liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

267. Plaintiff avers that Defendant MicroBilt's sale of Plaintiff's consumer credit file to Defendant Park Tree Investments, LLC is outrageous and harmful.

268. Plaintiff has been willfully harmed by MicroBilt's failure to ensure that Park Tree obtained Plaintiff's consumer credit file for permissible purpose only.

269. Plaintiff was emotionally distressed by the discovery that his consumer credit file was sold to Defendant Park Tree Investments and additional third parties such as FCI Lender Services, JLLT, Singer Law Group by Defendant Microbilt without a permissible purpose and his consent.

270. Not only has Plaintiff's consumer credit file been disclosed to Defendant Park Tree Investments and other unauthorized parties—Plaintiff is also at

substantial risk of additional, imminent future harm. Specifically, Plaintiff is at substantial risk of: (i) further disclosure of his personal information to Defendant Park Tree Investments and other additional third parties by Defendant Microbilt, (ii) disclosure of personal information in his consumer credit file via a data breach, and (iii) disclosure of personal data already obtained by Defendant Park Tree and/or additional third parties.

271. The FCRA has recognized, the unauthorized access of a consumer's credit file for impermissible purposes by any method invades the privacy of unsuspecting consumers and increases the risk of identity theft, harassment, stalking, and other threats to personal safety of the consumer.

272. The FCRA has recognized, the unauthorized access of a consumer's credit file for impermissible purposes by any method invades the privacy of unsuspecting consumers and increases the risk of identity theft, harassment, stalking, and other threats to personal safety of the consumer.

273. Plaintiff avers that Defendant Park Tree Investments was unlawfully given access to Plaintiff's consumer credit file by Defendant Microbilt, as their trusted user of information with on demand access to consumer's credit file without any input or consent from Plaintiff.

274. Conduct described in preceding paragraphs by Defendants Microbilt and Park Tree Investments, LCC violate the Georgia FBPA. Defendants Microbilt

and Park Tree are liable to plaintiff for statutory, actual damages, attorney fees, punitive damages and treble damages pursuant to Georgia FBPA.

275.   Absent litigation, Plaintiff believes he will forever be harmed by the lack of procedures Microbilt have in place to assure the maximum possible accuracy of Plaintiff's credit report.

## FACTUAL ALLEGATIONS AGAINST DEFENDANT PNC BANK

276.   Plaintiff had an unsecured mortgage debt owing to Defendant PNC Bank, opened 04/25/2008; last active on 05/26/2010.

277.   Property foreclosed in or about May 2010 by Defendant PNC Bank, identified by the partial account number XXXXXX6319.

278.   Plaintiff owned this investment property commonly known as 3012 Stone Mountain Street, Lithonia, Dekalb County, Georgia 30058 from May 16, 2008 till when Defendant PNC Bank foreclosed property in May 2010

279.   On April 25, 2008, Plaintiff executed and delivered to PNC Bank formerly RBC Bank U.S.A. a Security Deed in the original principal amount of $25,000 for the said property commonly known as 3012 Stone Mountain Street, Lithonia, Dekalb County, Georgia 30058.

280.   Said April, 2008 Security deed was duly recorded on May 16, 2008 at Deed Book 20824, page 1, Dekalb County, Georgia records.

281. Plaintiff subsequently defaulted under the terms of the Security Deed and RBC Bank U.S.A. hereinafter referred to as PNC Bank conducted a non-judicial foreclosure sale on the property on May 4, 2010 at which sale RBC/PNC was the highest and best bidder at and for the sum of $23,520.00 for the property, and the said property known as 3012 Sone Mountain Street, Lithonia, GA 30058 was there and then knocked-down to Defendant RBC Bank USA/PNC Bank.

282. Said foreclosure sale was memorialized by that certain Deed Under Power recorded at Deed Book 21974, Page 170, Dekalb County records. A true and correct copy of the Deed Under Power is attached hereto as Appendix "D1".

283. Defendant PNC Bank filed a Civil Action No: 11-cv-4048-4 in the Superior Court of Dekalb County, State of Georgia against Plaintiff (Emmanuel Ohai), in which it alleged that subsequent to the foreclosure sale and recording of the Deed Under Power, it discovered that Plaintiff's inadequate maintenance and neglect of the subject property had rendered it valueless.

284. Defendant PNC further asserted in its lawsuit pleading that it would never have foreclosed on the subject property had it known the actual condition of the property.

285. Defendant PNC therefore alleged that it was entitled to rescind the foreclosure sale and restore the parties to their prior interests.

286. Defendant PNC asked the Superior Court of Dekalb County to issue a decree rescinding, annulling, and canceling the Deed Under Power "mistakenly" recorded at Deed Book 21974, Page 170, Dekalb County records.

287. On April 28, 2011, Plaintiff hired the Law Offices of Kevin Pratt to help defend the lawsuit. True copy of Law Offices Kevin J. Pratt, PC retainer-ship agreement attached hereto as Appendix "D2"

288. Law Offices of Kevin Pratt filed a timely answer to Defendant PNC Bank's complaint praying for the Court to enter a Judgment for the Defendant Emmanuel Ohai in that lawsuit and casting all costs including attorney fees on PNC Bank.

289. On May 11, 2011 Defendant PNC filed with the Dekalb Superior Court Case Dismissal without prejudice.

290. The foreclosure sale of property commonly known as 3012 Stone Mountain Street, Lithonia, by Defendant PNC; the filing of Chapter 7 Bankruptcy by both obligors coupled with the cessation of payments amounted to a repudiation of the contract, as it was no longer capable of being performed as written in the security deed securing said property and was not in fact performed. See true and correct copy of security deed attached hereto as Appendix "D3"

291. On or about May 25, 2018 Plaintiff started receiving from Defendant PNC Bank a Home Equity Installment Loan Account Statement for payment amount

of $22,087.61 with Account Number 7500843531, accompanied by a return

addressed envelope with instruction at the back which states: "Don't forget to

please write your loan number on your check or money order" See true copy of

statement and envelope attached hereto as Appendix "D4"

292.   On or about July 25, 2018 Plaintiff received a letter from Defendant PNC

Bank titled "Home Equity Account- Correction to Your Billing Statement. True

copy of letter is attached hereto as Appendix "D5 "

293.   On or about September 5, 2018 Plaintiff wrote a cease and desist letter to

Defendant PNC via USPS Return Receipt Requested, demanding verification

and validation of alleged Home Equity Installment Loan with Account Number

7500843531 pursuant to FDCPA.

294.   On or about September 10, 2018 Defendant PNC Bank first responded with

an acknowledgment in which it stated *inter alia*: "We are currently reviewing

your inquiry and will respond to you in a timely fashion. We value the

opportunity to investigate this matter" See true copy of initial response by

Defendant PNC attached hereto as Appendix "D6"

295.   On or about September 19, 2018 Plaintiff received a second response from

PNC regarding his dispute pursuant to FDCPA, in which Defendant PNC Bank

stated *inter alia*: "On September 10, 2018, PNC Bank N.A. received your

September 5, 2018, correspondence concerning a validation of debt, owner

information and a cease and desist for the above referenced loan. Upon review of the correspondence you submitted regarding your loan, we have determined that your dispute does not provide sufficient information necessary for an investigation. The request for a validation of debt is untimely as PNC Bank has charged off your loan as of November 29, 2010. PNC Bank's lien against your Property will remain and you remain obligated to pay PNC Bank the full outstanding balance of your account. If you wish to make a payment or obtain a payoff quote, please contact us by mail or phone as follows: PNC Bank, N.A. P.O. Box 5570 Cleveland, OH 44101-0570 Locator: Payment Processing BR-YB58-01-5 Toll Free:866-622-2657. See true copy of letter attached hereto as Appendix "D7 "

296. Plaintiff alleges that after filing a dispute with the Defendant PNC Bank on or about September 5, 2018, Defendant PNC Bank failed in its duties it owed to Plaintiff, to perform a reasonable examination of Plaintiff's dispute as required by 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b)).

297. Defendant PNC Bank is liable to Plaintiff for Statutory Damages, Actual Damages, Attorney Fees and Punitive Damages for its willful conduct that has harmed Plaintiff as Plaintiff suffered emotional distress.

298. While PNC Bank acknowledged that it in fact received a 'cease and desist" request from Plaintiff, it continued to send Plaintiff monthly collection letters as

well as other notices concerning the alleged Home Equity loan debt secured by said property known as 3012 Stone Mountain Street, Lithonia continued until February 2020

299.   The original lender, RBC Bank USA, accelerated the contract in 2010 when it purchased the said property in a foreclosure sale for the entire principal balance of the security deed.

300.   Appendix "D7" Re: Loan No: 7500843531 Borrower: Emmanuel Ohai Property Address: 3012 Stone Mountain St., Lithonia, GA 30058 stated *inter alia*: "The request for validation of a debt is untimely as PNC Bank has charged off your loan as of November 29, 2010. PNC Bank's lien against your property will remain and you remain obligated to pay PNC Bank the full outstanding balance of your account"

301.   A reasonable consumer would understand Appendix "D7" as stating that failure to make arrangements to satisfy the lien against the said property will result in nonjudicial seizure of his or her property.

302.   No such seizure is permitted.

303.   On information and belief, no such seizure was intended.

304.   Plaintiff alleges that Defendant PNC Bank had "no reasonable basis" to believe that it could foreclose the real property situated in County of Dekalb and State of Georgia, described as follows:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 153 OF THE 16TH DISTRCIT OF DEKALB COUNTY, GEORGIA, AND BEING DESCRIBED ACCORDING TO THE PLAT OF THE PROPERTY OF W.T. DANIEL BY E.L. CHAPMAN, G.E., DATED MARCH 31, 1961, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN FOUND ON THE EAST SIDE OF STONE MOUNTAIN STREET A DISTANCE OF 1110.9 FEET NORTH FROM THE NORTHEAST INTERSECTION OF EAST CHURCH STREET AND STONE MOUNTAIN STREET A DISTANCE OF 174.9 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTHERLY A DISTANCE OF 178.4 FEET TO AN IRON PIN FOUND; EXTENDING THENCE WESTERLY A DISTANCE OF 46.2 FEET TO THE EASTSIDE OF STONE MOUNTAIN STREET AND IRON OIN WHICH MARKS THE POINT OF BEGINNING.

PARCEL ID: 16 153 01 001

PROPERTY ADRESS: STONE MOUNTAIN STREET

Yet Defendant continued to harass Plaintiff.

305.   Upon information and believe, Plaintiff avers that since PNC Bank foreclosed the said property, at least 4 other individuals have owned property and liens executed on property appropriately by others.

306. Around November 2016 Continental Credit initiated dispute with the 3 CRAs requesting that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading and highly damaging to him, namely, references to his security deed note with RBC USA Bank which was showing up twice on Plaintiff's credit report within the PNC trade line.

307. Plaintiff asserts that the tradeline concerning said foreclosed property known as 3012 Stone Mountain Street, Lithonia might have been showing up multiple times on his credit file, he only had one note with RBC USA which PNC later acquired.

308. Attempts now by PNC Bank to misrepresent the note for a property PNC Bank repossessed from Plaintiff and disposed of, as a property with an enforceable lien, that Plaintiff is obligated to pay is false and misleading.

309. Upon information and belief, PNC Bank has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

310. Plaintiff was at a loss at how this could possibly be happening to, given that

311. PNC Bank knew that such information was obviously wrong, and that it would seem to be very easy to correct such a blatant error after it was disputed by Plaintiff.

312. Defendants PNC Bank's continued communication starting around May 2018 in form of monthly statements and several notices harassing Plaintiff and seeking payment from Plaintiff for a discharged debt and unenforceable lien, violates the discharge injunction authorized by 524(a)(2) which operates as an injunction against an act, to collect, recover or offset any such debt as a personal liability of the debtor.

313. At the time PNC Bank foreclosed property in 2010, Plaintiff was in the process of getting property rezoned by the City of Lithonia.

314. At the time property was foreclosed by Defendant PNC Bank, Plaintiff was in the middle of a major renovation of property for which Plaintiff hired an Architectural firm and builder.

315. Plaintiff alleges that Defendant PNC Bank's claims in Appendix "D8" of Plaintiff being obligated to pay the full and outstanding balance secured by the purported lien on the said property is false, misleading and deceptive in violation of Georgia FBPA.

316. Plaintiff alleges that Defendant PNC Bank deceptive action for the purpose of attempting to obtain money from Plaintiff on a discharged, time-barred and unenforceable lien are violations of the FDCPA and Georgia FBPA.

317. The same set of facts alleged in the preceding paragraphs makes Defendant PNC Bank liable to Plaintiff for statutory and punitive damages pursuant to Georgia FBPA for treble damages.

318. Plaintiff seeks a statutory award of $1,000 for each violation and damages for economic, emotional and mental anguish.

319. Plaintiff avers that Defendant PNC Bank's actions alleged in preceding paragraphs are in violation of the discharge injunction that civil contempt sanctions may be warranted when a party acts in bad faith pursuant to Section 105(a) of the Bankruptcy Code and Georgia FBPA

320. On or about February 24, 2020, Plaintiff sent a letter of intent to sue Defendant PNC Bank as well as all other Defendants in this suit via USPS Certified Mail return Receipt.

321. In Plaintiff's letter of intent to sue dated February 24, 2020 and addressed to Defendant PNC Bank, Plaintiff asserted as follows:
"Please accept this Notice of Intent to File a Lawsuit as my final attempt to amicably resolve your continued violation of the Fair Credit Reporting Act (FCRA); the Fair Debt Collection Practices Act (FDCPA), the Automatic Stay and Discharge Injunction of the Bankruptcy code and the Georgia Fair Business Practices Act (FBPA).

The willful and intentional violations of the law by your bank has caused me unimaginable harm and damage, which has deprived me of enjoying the fresh start, that Congress, intended citizens who file Bankruptcy to enjoy.

The Fair Credit Reporting Act (FCRA) is to ensure that each person has a fair reporting of his or her credit details to interested parties when they research the person in question.

I received a letter dated August 22, 2018 with the subject RE: Loan No. 7500843531 that I owed your bank. Your letter threatened foreclosure; lawsuit then offered several possible options for me to pay the alleged debt. In a letter dated September 5, 2018 On September 5, 2018, I wrote a letter in dispute and to seek validation of the alleged debt. On September 10, I received a letter from your bank stating "We are currently reviewing your inquiry and will respond to you in a timely fashion. We value the opportunity to investigate this matter." Subsequently, you sent me a letter dated September 19, 2018 that contradicted your previous letter in which stated *inter alia* "Upon review of the correspondence you submitted regarding your loan, we have determined that your dispute does not provide sufficient information necessary for an investigation. Your failure to investigate the dispute of an alleged debt is a willful violation of the FDCPA, FCRA, FBPA; and the Bankruptcy Automatic Stay and Discharge Injunction.

The Georgia's Fair Business Practices Act (GFBPA) prohibits unfair and deceptive acts or practices in the marketplace. This law applies to consumer transactions such as debt collection and credit reporting.

Some of the consequences of your bank's willful violations of Federal and Georgia law are listed below:

a) Procedures in case of disputed accuracy, 15 U.S.C. §1681i. Treatment of inaccurate or unverifiable information;

b) Procedures as required by 15 U.S.C. §1681 (a)(4)

c) Procedures to assure maximum possible accuracy of the information in the consumer report, as required by 15 U.S.C. §e();

d) Procedures according to 15 U.S.C. §1681g

e) Fair Business Practices Act (O.C.G.A. Sections 10-1-390 et seq

f) Violation of the Automatic Stay and Discharge Injunction of the Bankruptcy Code.

g) For failing to cease communication after receiving written notice that the consumer wishes no further communication

h) Continuing to try to collect on a debt after the debt collector receives a consumer's written request to verify the existence and amount of the debt and before providing the verification (the consumer must make the request within a 30-day validation period)

i) Seeking unjustified amounts, which includes demanding any amounts not authorized by the agreement creating the debt or permitted by law and;

j) Reporting false information on a consumer's credit report.

322. Despite Plaintiff receiving the requested signed Certified Return Receipt proof of delivery by Defendant PNC, PNC Bank did not offer an answer or a response to allegations asserted in Plaintiff's letter of intent to file a lawsuit, Defendant PNC Bank ignored Plaintiff's letter and never responded till time of filing this action. See true copy of Plaintiff's intent to sue letter against PNC Bank and signed USPS Certified Return Receipt proof of delivery attached hereto as Appendix "D8"

323. Defendant PNC Bank's persistent harassment of Plaintiff when it sent monthly collection letters since May 2018 till February 2020 was willful and harmful to Plaintiff. As a result of Defendant PNC Bank's intentional conduct Plaintiff suffered emotional distress and economic hardship.

324. Plaintiff received a discharge of his debts by Order of the Bankruptcy Court of the Northern District of Georgia Court dated October 5, 2012.

325. Defendant PNC Bank's mailings of Home Equity Loan Account statement with addressed return envelopes were attempts to collect time-barred debts that were not owed it by Plaintiff.

326. Because Plaintiff's debts to Defendant PNC Bank were discharged in Plaintiff's bankruptcy, the conduct described above was unlawful as it violated the Automatic Stay and Discharge Injunction of the Bankruptcy Code and FDCPA.

327. Defendant PNC Bank did not, during or after the pendency of Plaintiff's bankruptcy case, obtain relief from the discharge injunction for the purpose of continuing collection efforts by reporting post-discharge derogatory collection information.

328. Notwithstanding the effect of the automatic stay and discharge injunction, after Plaintiff's bankruptcy filing and subsequent discharge Defendant PNC Bank reported to the Credit reporting Bureaus that the PNC Bank Home Loan Account in Plaintiff's name had a balance of $22,087 due and owing, and that the $22,087 was past due.

329. Defendant PNC Bank's threat to pursue a deficiency judgment against Plaintiff for the difference between the sale price and the borrower's total debt violates the Automatic Stay and Discharge Injunction of the Bankruptcy Code.

330. Defendant PNC reported a duplicate trade line for same account with number with varying last active dates of 6/09/11 and 5/26/11, also with different Creditor names of RBC and PNC on Plaintiff's Consumer Credit report prior to Plaintiff filing Chapter 7. See true copy of Plaintiff's Schedule F

Chapter 7 Bankruptcy filing showing how Attorney Pratt had to account for the intentional duplicate trade line attached hereto as Appendix "E2"

331. Plaintiff's attempt to get inaccurate trade line from his Consumer Credit Report through Continental Credit Repair Company did not help but made matters worse.

332. Rogue staff of Creditors such as PNC Bank automatically put consumers who use credit repair companies in a bracket as dummies who can be preyed on.

333. Instead of deleting the duplicate time line as requested, Defendant PNC changed the original amount of loan from $25,000 to $24,880 and trade line was also changed to show the debt was sold to it by RBC Bank instead of it being showed as assumed/inherited loan.

334. Plaintiff asserts that this conduct alleged in the preceding 4 paragraphs were intentional as it was designed to set Plaintiff up for unlawful collection activities as we see from PNC Bank.

335. The alleged debt secured by a security note was already litigated in Dekalb Court and dismissed, yet Plaintiff resurrects it

336. Plaintiff asserts that Defendant PNC efforts to report inaccurate

337. Plaintiff avers that the duplicate trade line of same loan account in RBC Bank and PNC name was a willful attempt by Defendant PNC bank to later

down the pipeline harass Plaintiff for debt that it had sued Plaintiff for in the Dekalb County Superior Court and dismissed.

338.   This same duplicate trade line debt was detected at the time of filing Plaintiff's Chapter 7 Bankruptcy

339.   The Defendant PNC Bank's conduct as alleged in preceding paragraphs violate the FDCPA, FCRA, Bankruptcy Code Automatic Stay and Discharge Injunction, and the Defendant is liable to Plaintiff for his reasonable attorney fees pursuant to  O.C.G.A. § 13-6-11

340.   As a result of Defendant PNC Bank's violations of  15 U.S.C. §1681i, Plaintiff has suffered actual damages not limited to out-of-pocket expenses in challenging the Defendants unlawful debt collection activities, detriment to Plaintiff's credit rating and emotional distress. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. §1681i including without limitation mail expense, mileage expense, lost time from work incurred after his dispute and attempt to obtain correction failed, frustration and aggravation, emotional distress and humiliation, suppression of his credit score, and detriment to his credit rating.

341.   Defendant PNC Bank's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to Georgia Fair Business Practices Act O.C.G.A. §10-1-390 et (FBPA)

# E. **VIOLATIONS AND DISCHARGE INJUNCTION OF THE BANKKRUPTCY CODE**

342.  Plaintiff asserts that a discharge injunction is a powerful incentive for consumers plagued by debt to enter into bankruptcy. For some former debtors such as Plaintiff, however, the promise of a fresh start that Congress wanted for Bankruptcy filers is illusive, as creditors and debt collectors such as Defendants in this lawsuit continue to pursue discharged debts in violation of § 524

343.  Plaintiff alleges that all Defendants are liable to him under 11 U.S. Code § 524 for compensatory and possibly punitive damages for sending account statements and other notices to him for alleged debts that were discharged in Chapter 7 Bankruptcy.

344.  Defendant Delta employee Mr. John Boren inaccurate and misleading reporting on Plaintiff's account information to Equifax Customer Service agent who called on August 31, 2019 to verify account information over the phone violated the discharge injunction of the Bankruptcy Code.

345.  Defendant Delta conveyed to Equifax both false and misleading financial information, that Plaintiff was late making payments several times on an amount it alleged Plaintiff to Delta that was not discharged in Bankruptcy.

346. Prior to Plaintiff filing Chapter 7 Bankruptcy, Defendant Delta Defendant Delta breached a loan modification contract it entered into with Plaintiff. See Appendix "A3"

347. The HAMP regulations gives homeowners contractual rights to sue their bank when they fail to establish permanent loan modifications for eligible borrowers. See Wigod v Wells Fargo Bank, N.A. 673 F.3d 547 (7th Cir. 2012), Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9thCir. 2013), Young v. Wells Fargo Bank N.A., 717 F.3d 224 (1st Cir 2013)., N.A. 673 F.3d 547 (7th Cir. 2012), Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9thCir. 2013), Young v. Wells Fargo Bank N.A., 717 F.3d 224 (1st Cir 2013).

348. In spite of Defendant Delta's breach of the loan modification contract with Plaintiff, it has setup a scheme with other actors to harass and torment Plaintiff in order to collect on a discharged debt.

349. During the pendency of Plaintiff's bankruptcy filing, Defendant Delta sent Plaintiff an adverse communication in violation of Automatic Stay of the Bankruptcy Code. See Appendix "A5"

350. Following Plaintiff's discharge, Plaintiff received numerous notices, including account statements, account notices, demand letters with addressed envelopes with payment instructions from Defendant Delta and from others

such as Defendant Park Tree Investments, PNC Bank, FCI Lenders, Singer, JLLT some acting on Delta's behest.

351.  Defendant Park Tree Investments caused 33 account statements, demand letters and notices to be sent to Plaintiff in relation to the discharged debt owed Delta Credit Union after Debt was discharged in October 2012 in violation of the Discharge Injunction.

352.  Defendant FCI Lender Services caused 22 account statements, demand letters and notices to be sent to Plaintiff in relation to the discharged debt owed Delta Credit Union after Debt was discharged in October 2012 in violation of the Discharge Injunction.

353.  Defendant PNC Bank caused 22 account statements, demand letters and notices to be sent to Plaintiff in relation to the discharged debt owed Delta Credit Union after Debt was discharged in October 2012 in violation of the Discharge Injunction.

354.  Defendant PNC Bank waited many years after they intentionally posted a duplicate and inaccurate trade line on Plaintiff's consumer credit file before sending a letter to Plaintiff claiming "We have transitioned our Home Equity accounts to a new servicing system. During the transition, we identified an internal system error. Your previous billing statement(s) erroneously displayed fees that are currently internal costs to PNC" See true copy of PNC Home

Equity Account- Correction to Your Billing Statement(s) attached hereto as Appendix "D5"

355. Plaintiff alleges that Defendant PNC's assertions in Appendix "D5' were false and misleading in violation of the FDCPA, FCRA and the discharge Injunction of the Bankruptcy Code.

356. The letter was designed to defraud Plaintiff into thinking the debt amount of $22,087.61PNC was demanding payment for was legit.

357. PNC Trade line on Plaintiff's consumer credit file showing credit limit amount of $24,880 is false and inaccurate. See a true copy of Plaintiff's Experian Report Number 2043-1817-67 dated March 08, 2017 attached hereto as Appendix "E5"

358. On September 5, 2018, Plaintiff sent a letter to PNC demanding that a validation and verification of the alleged debt. See true copy of letter attached hereto as Appendix "E3"

359. Defendant JLLT caused 2 account demand letters and notices to be sent to Plaintiff in relation to the discharged debt owed Delta Credit Union after Debt was discharged in October 2012 in violation of the Discharge Injunction.

360. Defendant Singer caused 3 account statements, demand letters and notices to be sent to Plaintiff in relation to the discharged debt owed Delta Credit Union

after Debt was discharged in October 2012 in violation of the Discharge Injunction.

361. Defendant Microbilt caused 2 notices to be sent to Plaintiff and a phone call in relation to the discharged debt owed Delta Credit Union after Debt was discharged in October 2012 in violation of the Discharge Injunction.

362. Some of these notices requested payments from the borrowers. However, most of the notices contained the following disclaimer at the end:

"If you have filed for bankruptcy and your case is still active and/or if you received a discharge, please be advised that this notice is for information purposes only and is not an attempt to collect a pre-petition or discharged debt."

363. Plaintiff asserts that sending of periodic statements and/or demand letters by Defendants to Plaintiff who had filed Chapter 7 bankruptcy and was discharged of alleged debts, constitute an attempt to collect a debt in violation of a bankruptcy discharge order even when standard disclaimer language is included.

364. Plaintiff avers that he felt humiliated, tormented, harassed and distressed by the Defendants Park Tree, FCI Lenders, Singer and JLLT constant letters and phone calls.

365. In a settlement offer letter Plaintiff was pressured into as a last resort to save his property from illegal seizure by Defendants, Defendant Dean Engle hinted

of a possible lawsuit against Plaintiff when he wrote: "Upon the completion of this short payoff transaction and payment of entire Settlement Amount on or before the Settlement Date, Park Tree Investments 20, LLC will not pursue a deficiency judgment against the borrower or against any guarantor for the amount due under the Note. The Settlement Amount will first be applied to loan Charges, then Interest Due, and then to the Principal Balance."

366.   Plaintiff alleges that the Settlement Agreement/Offer by Plaintiff described in the paragraph is evidence of Defendant Park Tree Investments, LLC bad faith.

367.   Park Tree Investments, LLC in the eyes of the law is a separate entity from Park Tree Investments 20, LLC yet Defendants Engle, Singer, JLLT use both entities interchangeably to confuse the unsophisticated borrower, in this case Plaintiff in a scheme to defraud Plaintiff.

368.   Plaintiff averts that the Settlement Agreement as presented by Defendant Engle to Plaintiff is akin to one eating their cake and having it as there is nowhere in the agreement that it states that the lien is extinguished after payment of settlement amount.


369.   Plaintiff alleges that the constant communications took a toll on his marriage.

370. Defendants Park Tree Investments, Dean Engle, Singer, FCI Lenders, JLLT acting in concert have posted and shared with third parties several amounts of money as alleged debt Plaintiff owes it that were false or misleading.

371. Plaintiff asserts that loan reinstatement letter with due date of 07/11/2018 Defendant FCI Lender Services sent to Plaintiff, had on the first page the following: "To Reinstate as of 07/11/2018, Please Pay: $35,864.80 See true copy of Reinstatement letter attached hereto as Appendix "B9"

372. Approximately 1 month after letter in Appendix "B9" was sent, Defendant Singer sent to Plaintiff a mortgage default notice in which it claimed "Account status as of August 17, 2018: The total amount needed to reinstate or bring the account current is $36,740.07. Please note this amount is subject to change. Please call us for the most current amount"

373. In Plaintiff's Schedule D- Bankruptcy filing, $39,615.00 is listed as the debt Plaintiff was owing Delta Community Credit Union. See true copy of relevant page of Plaintiff's SCHEDULE D filing attached hereto as Exhibit "E4"

374. Plaintiff asserts that the mortgage default notice Defendant Singer sent to Plaintiff with the amount for reinstatement of $36,740.07 was in bad faith.

375.   Plaintiff alleges that the amount that went up from $35,864.80 to $36,

740.07 within one month was a willful attempt in bad faith by Defendants Park

Tree Investments, Singer and FCI Lender Services to put maximum pressure on

Plaintiff to force Plaintiff to re-toll the time-barred debt.

376.   Defendants Park Tree, Singer, FCI Lender Services and JLLT caused false

and misleading amount as mortgage loan default amount on a Foreclosure

notice they posted on the Worldwide Web.

377.   Plaintiff pleads that there was no reasonable basis other than to maliciously

harm and ridicule Plaintiff for the publication of the untruth.

378.   All Defendants were fully aware of the Plaintiff's' bankruptcy and discharge

but still continued sending the collection notices with arbitrary amounts. True

copy of Plaintiff's Chapter 7 Bankruptcy Discharge attached hereto as

Appendix "E1"

379.   Defendants well pled violations of the FDCPA and FCRA relating to

Defendants reporting and collection activities of alleged debts owed Delta

Credit Union that was discharged on October 2012, also violated the Discharge

Injunction of the Bankruptcy Code as none of the Defendants got leave from the

Bankruptcy Court to pursue collection of debt.

380. Plaintiff avers that the disclaimers in Defendants collection notices and statements were preceded by demands for payment by a certain date with conspicuous language stating "you must pay." The disclaimers only spoke of a hypothetical possibility regarding bankruptcy and discharge (i.e. "if you filed for bankruptcy" or "if you received an order of discharge.") The court indicated the notices were often contradictory -- stating in the body of the letter that the debtors must pay the debt, but then disclaiming the need to pay the debt at the very end of the letter.

381. Plaintiff asserts that the generic disclaimers were not enough to protect the Defendants from violating the discharge injunction.

382. Defendants failed to prepare notices that are consistent with the known legal status of debts it claimed Plaintiff owed them.

383. Defendants' improper and persistent demand for payment of a discharged debt from Plaintiff, is a violation of the discharge injunction of October 5, 2012.

384. Plaintiff avers there is no fair ground of doubt as to whether the order barred the creditor's conduct violated the discharge order.

385. Plaintiff alleges that defendants bad faith conduct, and repeated or persistent violations warrant civil contempt making Defendants liable to Plaintiff for compensatory and punitive damages. Taggart v. Lorenzen, 139 S. Ct. 1795, 1799 (2019)

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF EQUAL CREDIT OPPORTUNITY ACT
### 15 U.S.C. 1691 et seq. Regulation B- 1002.9(a)(1)
### (Delta Community Credit Union)

386.  Plaintiff incorporates by reference all preceding paragraphs as though fully

stated herein.

387.  Defendant Delta willfully and/or negligently violated 15 U.S.C. 1691 et seq.

Regulation B- 1002.9(a)(1) for failing to provide Plaintiff the required

notification in writing, stating the reason for adverse action taken on the

Plaintiff's application for mortgage loan that he submitted on Defendant Delta

Community Union's website (www.deltacommunitycu.com) on October 31,

2019

388.  As a result of Defendant Delta Community Credit Union's violations of 15

U.S.C. 1691 et seq. Regulation B- 1002.9(a)(1), Plaintiff has suffered actual

damages not limited to out-of-pocket expenses in challenging the Defendants'

wrongful representations, detriment to his credit rating and emotional distress.

Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. 1691 et

seq.

389. Defendant Delta Community Credit Union's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. 1691 et seq.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT,
### 15 U.S.C. §623(a)
### (Delta Community Credit Union)

390. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

391. Defendant Delta Community Credit Union willfully and/or negligently violated Section 623(A) of the FCRA when it furnished inaccurate consumer information about Plaintiff to Equifax on Friday August 30, 2019

392. Defendant Delta Community Credit Union willfully and/or negligently violated Section 623(A) of the FCRA when it failed in its duty to Correct and Update Information. A furnisher that regularly furnishes information to CRAs is also required to notify a Credit Reporting Agency, if it has determined that previously furnished information is not complete or accurate and to correct that information.

393. Delta Community Credit Union Loss Mitigation Manager Mr. John Boren wrote in an email to Plaintiff on September 4, 2019 *"I seem to be getting conflicting information each time you respond concerning the release of your*

*information. This is not something that is usually decided on a whim. That being said I would check with each party involved and determine if what I sent on Friday will satisfy everyone. If we respond to this particular request from Equifax sent on Friday we will have to respond that it is discharged debt and I don't believe that will benefit you. I think what I provided on Friday at 4:46 p.m. will have the most benefit for you."*

Based on the preceding statement, Mr. John Boren had reasonable cause to believe that the information he provided to Equifax was is inaccurate, but he never took any action to correct or update the information.

394. As of today, Plaintiff remains unable to obtain mortgage refinancing because of the inaccurate credit data being reported by Defendant Delta Community Credit Union.

395. Defendant Delta Community Credit Union did not have adequate policies and procedures in place to ensure that they are complying with these requirements by FCRA Section 623(a)

396. Defendant Delta Community Credit Union's violation of Section 623(a) of the FCRA has damaged Plaintiff, in that the above referenced false written statements by Mr. John Boren interfered with Plaintiff's ability to complete a refinance loan transaction with Georgia United Credit Union and other lending institutions.

397. Defendant Delta Community Credit Union's agents Ms. Maxine and Mr. John Boren are liable to Plaintiff for false information they furnished Equifax on August 30, 2019 with malice or willfully intended to injure Plaintiff pursuant to 15 U.S.C. § 1681h(e)

398. Defendant Delta Community Credit Union acted in bad faith and has financially harmed Plaintiff by lowering his credit score(s) and interfered with Plaintiff's ability to complete a refinance loan transaction.

399. Defendant Delta Community Credit Union's actions and omissions were willful, rendering them liable for punitive damages and/or statutory damages pursuant to FCRA Section 623(a) for detriment to Plaintiff's credit rating and emotional stress.

## COUNT III

### DEFAMATION-LIBEL
### Georgia O.C.G.A § 51-5-1
### (Delta Community Credit Union)

400. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

401. On August 30, 2019, Defendant Delta Community Credit Union published false written statements about Plaintiff to Equifax consumer reporting agency: that Plaintiff is liable to defendants for an alleged discharged debt; that has

financially harmed Plaintiff by lowering his credit score(s) and caused Plaintiff to feel hopeless and worthless in violation of Georgia O.C.G.A § 51-5-1.

402. Defendant Delta Community Credit Union was negligent in making the statement and caused harm to the plaintiff in that the above referenced false written statements interfered with Plaintiff's ability to complete a refinance loan transaction.

403. Defendant Delta Community Credit Union has acted in bad faith; was willful, without substantial justification, and in a stubbornly litigious manner, causing Plaintiff unnecessary expense, and pursuant to O.C.G.A. § 13-6-11, Defendants are liable to Plaintiff for his reasonable attorney fees.

404. Defendant Delta Community Credit Union being fully aware, of it being bound by the non-disparagement clause in a Consent Judgment in an unrelated case involving Plaintiff and a sister company of Defendant Delta Community Credit Union, however acted in a reckless manner without any consideration to its obligation to Plaintiff.

405. This public reporting of false or misleading information about Plaintiff to a consumer-reporting agency constitutes defamation, as Defendant Delta has publicized false information about the alleged money owed it by Plaintiff, which is false or misleading.

406. Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiffs as set forth in this complaint.

## COUNT IV

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 USC §1692c
**(Dean Engle, Park Tree, Daniel I. Singer, Singer Law Group, FCI Lender Services and JLLT)**

407. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

408. The important facts, for the trier of facts to decide is when the plaintiff's mortgage went into default and when the assignments of the mortgage to the defendants occurred. See, 15 U.S.C. § 1692a:

409. The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008) (citing 15 U.S.C.

410. On or around July 3, 2017 Plaintiff sent a "Cease and Desist" letter to Defendant Park Tree Investments, notifying Defendants that he wishes that Defendants cease further communication with Plaintiff in which the name and phone number of the attorney was provided.

411. On or around July 13, 2017 Defendants replied Plaintiff stating inter alia:

"Park Tree Investments 20, LLC is in receipt of your Cease and Desist request.

Your file has been noted and you will not receive collection communications."

See Appendix "B4"

412. In spite of assurance by Defendant to cease communication with Plaintiff,

Defendants ignored Plaintiff and continued to send Plaintiff collection

communications including harassing phone calls.

413. It is a practice of Defendants to maliciously, willfully, recklessly, wantonly

and/or negligently ignore and refuse to follow the requirements of the FDCPA,

and Georgia State law.

414. All actions taken by employees, agents, servants, or representatives of any

type for Defendant Park Tree Investments were taken in the line and scope of

such individuals' (or entities') employment, agency, or representation.

415. All actions taken by Defendant were done with malice, were done willfully,

and were done with either the desire to harm Plaintiff and/or with the

knowledge that their actions would very likely harm Plaintiff and/or that their

actions were taken in violation of the FDCPA, and state law and/or that they

knew or should has known that their actions were in reckless disregard of the

FDCPA, and state law.

416. Defendants have engaged in a pattern and practice of wrongful and unlawful

behavior with respect to collection activities and the handling of the account as

set forth in this Complaint and as such Defendants are subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

417. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

418. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

419. The above contacts between Defendant and Plaintiff were "communications" relating to a "debt" as defined by 15 U.S.C. § 1692a(2) and 1692a(5) of the FDCPA.

420. Defendant violated the FDCPA through its pattern and practice in attempting to collect the alleged debts from Plaintiff. Defendant's pattern and practice of conduct includes , but is not limited to, violations of 15 U.S.C. §§ 1692c(c) (communicating with Plaintiff after Plaintiff had notified Defendant in writing to cease contacting him), 1692d (harassing Plaintiff), 1692e (using false, deceptive, or misleading representation to collect), 1692e(2)(A) (falsely representing the character, amount or legal status), and 1692f (using unfair or unconscionable means to collect), as evidenced by the following conduct:

(a)      Communicating with a consumer after notifying Defendant in writing that the consumer disputes the debt without providing verification of the debt to the consumer.

(b)     Contacting consumers after they had notified Defendant in writing to cease contacting them.

(c)     Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(d)     Misrepresenting the character, amount, or legal status of the debt.

(e)     Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt; and

(f)     Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff.

421.   Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay the alleged debt.

422.   As a result of the above violations of the FDCPA, Defendant is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages, punitive damages, attorneys' fees and costs.

423.   The conduct of Defendant has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit

worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT V

## VIOLATIONS OF SECTION 807 OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (PNC Bank)

424. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

425. Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. Section 807(2)(A), 15 U.S.C. § 1692e(2)(A), specifically prohibits the false representation of the character, amount, or legal status of any debt.

426. Defendant PNC Bank's conduct, including but not limited to continuing to attempt to collect the debt from Plaintiff without providing Plaintiff with verification of the debt which Plaintiff had requested on multiple occasions, constitutes an invasion of privacy.

427. Defendant's violations of the FDCPA and Georgia FBPA include, but are not limited to, violations of O.C.G.A. §10-1-390 et seq. as evidenced by the following conduct:

(a)    Communicating with a consumer after notifying Defendant in writing that the consumer disputes the debt without providing verification of the debt to the consumer.

(b)   Contacting consumers after they had notified Defendant in writing to cease contacting them.

(c)   Misrepresenting the character, amount, or legal status of the debt.

(d)    Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt; and

(e)    Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff.

428.   Defendant PNC Bank's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay the alleged debt.

429.   As a result of the above violations of the FDCPA and O.C.G.A. §10-1-390 et seq., Plaintiff has suffered ascertainable losses entitling Plaintiff to an award of actual, statutory, punitive and treble damages and attorneys' fees and costs.

## COUNT VI

## INVASION OF PRIVACY
## (All Defendants)

430. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

431. Defendant's conduct, including but not limited to continuing to attempt to collect the debt from Plaintiff without providing Plaintiff with verification of the debt which Plaintiff had requested on multiple occasions, constitutes an invasion of privacy.

432. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

433.                              **COUNT VII**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e (b), 15 U.S.C. § 1681i (a)(1) and 15 U.S.C. § 1681s-2(b)**
**(PNC Bank)**

434. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

435. Around November 2016 Continental Credit initiated dispute with the 3 CRAs on behalf of Plaintiff concerning a mortgage note in his consumer credit file showing twice on the tradeline associated with Defendant PNC Bank.

436.   Plaintiff asserts that Defendant PNC Bank's failure to conduct reasonable

reinvestigations caused it to be harassing Plaintiff with attempts to collect a

discharged and time barred debt alleged to be secured by an unenforceable lien.

437.   Furnishers of credit information have a duty under the FCRA to investigate

disputes from consumers as to the accuracy of information reported about them,

to wit:

After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with

regard to the completeness or accuracy of any information provided by a person

to a consumer reporting agency, the person shall:

(A) conduct an investigation with respect to the disputed information.

(B) review all relevant information provided by the consumer reporting agency

pursuant to section 611(a)(2) [§ 1681i].

(C) report the results of the investigation to the consumer reporting agency.

(D) if the investigation finds that the information is incomplete or inaccurate,

report those results to all other consumer reporting agencies to which the person

furnished the information and that compile and maintain files on consumers on

a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate   .

or incomplete or cannot be verified after any reinvestigation under paragraph

(1), for purposes of reporting to a consumer reporting agency only, as

appropriate, based on the results of the reinvestigation promptly –

(i) modify that item of information; (ii) delete that item of information; or (iii)

permanently block the reporting of that item of information.

See 15 U.S.C. § 1681s-2(b)(1).

438.   Defendant PNC Bank's complete and utter indifference as to its obligations

under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the

injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and

willful and wanton misconduct, calling for an assessment of punitive damages

against PNC Bank, pursuant to 15 U.S.C. § 1681n(a)(2).

**COUNT VIII**

**VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681et seq.**
**(Microbilt)**

439.   Plaintiff incorporates the foregoing paragraphs as though the same were set

forth at length herein.

440.   A "consumer reporting agency" is defined by the FCRA as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit

basis, regularly engages in whole or in part in the practice of assembling or

evaluating consumer credit information or other information on consumers for

the purpose of furnishing consumer reports to third parties, and which uses any

means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

441. Microbilt is a "consumer reporting agency" as defined by the FCRA.

442. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. Id. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

443. CRAs must observe reasonable procedures to limit the issuance of consumer reports to permissible purposes. These procedures can include:

444. Requiring that a party requesting a consumer report certify the purposes for which it is seeking the information.

445. Making a reasonable effort to verify the user's identity and certified purposes.

446. Declining to provide a consumer report if the CRA has reasonable grounds to believe the report will not be used for a permissible purpose.

447. (15 U.S.C. § 1681e(a).)

448. On two occasions in 2019 and 2020, Plaintiff initiated disputes with Microbilt. Plaintiff specifically disputed whether Defendant Park Tree Investments' access to his consumer credit file was for permissible purposes.

449. Defendant Microbilt willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation, failure to conduct a reasonable investigation of Plaintiff's disputes when Plaintiff disputed the hard inquiry in January 2019 and in 2020 by failing thereafter to appropriately delete derogatory information in Plaintiff's file.

450. Defendant Microbilt is liable to Plaintiff for willfully and/or negligently failing to reinvestigate the impermissible access of Plaintiff's consumer credit file by Defendant Park Tree Investments.

451. Defendant Microbilt is liable to Plaintiff for willfully/negligently failing to follow reasonable procedures to assure maximum possible accuracy when preparing Plaintiff's consumer report (15 U.S.C. § 1681e(b)

452. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Microbilt willfully and/or negligently violated 15 U.S.C. § 1681i(a)(1) with respect to each dispute lodged by Plaintiff.

453. Upon information and belief, Microbilt has exhibited a pattern of refusing to

correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

454.   Upon information and belief, Microbilt has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

455.   Defendant Microbilt's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Microbilt, pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT IX

### DEFAMATION-FALSE LIGHT AND INVASION OF PRIVACY
### Georgia O.C.G.A § 51-5-1
### (Dean Engle, Park Tree Investments, Daniel I. Singer, Singer Law Group and JLLT)

456.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

457.   Defendants depicted the Plaintiff as defaulting on an amount that was false.

458.   Plaintiff pleads that there was no reasonable basis other than to maliciously harm and ridicule Plaintiff for the publication of the untruth.

459. Defendants conduct set forth in this complaint, showed malice, fraud, and the entire want of care that would show a conscious indifference to the consequences.

460. Defendants had no basis other than to subject Plaintiff Emmanuel Ohai to public hatred, contempt, and ridicule, especially when there was no enforceable lien to support the alleged default amount of $37k

461. The published default amount of $37k is not supported by any factual allegation.

462. Accordingly, Plaintiff is entitled to actual damages, presumed damages and punitive Damages.

## COUNT X

463. **VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT O.C.G.A. §10-1-390 et (All Defendants)**

464. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

465. Around February 23, 2020 Plaintiff sent via U.S. Certified Return Receipt Mail Intent to Sue Letter to all Defendants as his final attempt to amicably resolve Defendants continued violations of Federal and State Law.

466.   The Defendants acted in a false, deceptive, misleading and unfair manner by

continuing to communicate directly with Plaintiff with regards to the debt after

Plaintiff had notified Defendant in writing to cease further communications.

467.   Defendants acted in a false, deceptive, misleading and unfair manner by

misrepresenting the character, amount, or legal status of the debt.

468.   Defendant acted in a false, deceptive, misleading and unfair manner by using

unfair or unconscionable means to collect or attempt to collect any debt.

469.   Defendants repeatedly called Plaintiff in a harassing manner and sent

Plaintiff collection letters in an attempt to collect a discharged debt. Plaintiff

informed Defendants not to harass him, but his requests were not honored. This

constitutes harassment and invasion of privacy as does the false reporting to the

credit reporting agencies.

470.   At all times pertinent hereto, the conduct of Defendant as well as its agents,

servants and/or employees, was malicious, intentional, willful, reckless,

negligent and in wanton disregard for federal and state law and the rights of the

Plaintiff herein.

471.   As a result of Defendants' conduct, Plaintiff has sustained actual damages,

including, but not limited to injury to Plaintiff's reputation, invasion of privacy,

damage to Plaintiff's credit, out-of-pocket expenses, emotional and mental pain

and anguish, embarrassment, humiliation, damage to reputation and pecuniary

loss and will continue to suffer same for an indefinite time in the future, all to their great detriment and loss.

472.  Defendants have engaged in a pattern and practice of wrongful and unlawful behavior with respect to collection activities and the handling of the account as set forth in this Complaint and as such Defendant is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

473.  Defendants negligently and/or recklessly hired, supervised, trained, or selected its employees and/or debt collectors who dealt with Plaintiff. Defendants knew that its employees and/or agents were incompetent and knew or should have known that its employees and/or agents would violate state and federal law but yet these incompetent debt collectors were used throughout the dealings with Plaintiffs.

474.  The conduct of Defendants has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

475.  Defendants' conduct, including but not limited to continuing to attempt to collect the debt from Plaintiff without providing Plaintiff with verification of

the debt which Plaintiff had requested on multiple occasions, constitutes an invasion of privacy.

476. The conduct of Defendants were a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

## COUNT XI
## VIOLATIONS OF BANKRUPTCY DISCHARGE INJUNCTION
## 11 U.S. Code § 524
## (All defendants)

477. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

478. Plaintiff alleges that Defendants are liable to him for compensatory and punitive damages for sending account statements and other notices to him for alleged debts that were discharged in Chapter 7 Bankruptcy.

479. All Defendants were fully aware of the Plaintiff's' bankruptcy and discharge but still continued sending the collection notices in violation of the Discharge Injunction of the Bankruptcy Code.

480. The conduct of Defendants were a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are

liable to compensate Plaintiff for the full amount of actual, compensatory and

punitive damages, as well as such other relief, permitted under the law.

481.   Plaintiff seeks Civil Contempt sanctions against all Defendants for

compensatory and punitive damages for violation of 11US Code § 524 pursuant

to 11 U.S.C. § 105(a)

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

(a)   Actual damages.

(b)   Statutory damages.

(c)   Punitive damages.

(d)   Costs and reasonable attorneys' fees; and

(e)   Issue an order prohibiting Defendants from all illegal collection activities

against Plaintiff.

Such other and further relief as may be just and proper.

Respectfully Submitted, this 15 th day of June , 2020

Emmanuel Ohai
Plaintiff, pro se
2715 Tradd Court Snellville, GA 30039
(404)2101822

Email: emmanuelohai@hotmail.com

# Appendix E1

## UNITED STATES BANKRUPTCY COURT

### Northern District of Georgia

In Re: Debtor(s)
**Emmanuel O Ohai**
2715 Tradd Court
Snellville, GA 30039

Case No.: **12–65475–wlh**
Chapter: **7**
Judge: **Wendy L. Hagenau**

xxx–xx–8881

**Luminate Ohai**
2715 Tradd Court
Snellville, GA 30039

xxx–xx–8000

## DISCHARGE OF DEBTOR(S) WITH ORDER APPROVING TRUSTEE'S REPORT OF NO DISTRIBUTION, CLOSING ESTATE AND DISCHARGING TRUSTEE

It appearing that the debtor is entitled to a discharge, **IT IS ORDERED:** The debtor is granted a discharge under section 727 of title 11, United States Bankruptcy Code, (the Bankruptcy Code).

It further appears that the trustee in the above styled case has filed a report of no distribution and said Trustee has performed all other and further duties required in the administration of said estate; accordingly, it is hereby

**ORDERED** that the said estate is closed; that the Trustee is discharged from and relieved of said trust.

_Wendy L. Hagenau_
_____
Wendy L. Hagenau
United States Bankruptcy Judge

Dated:  October 5, 2012

Form 182

## SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION REGARDING THE BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

# Appendix E1

## EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

This discharge does not affect any property of the estate as defined by section 541 of the Bankruptcy Code, and the automatic stay of section 362(a) of the Bankruptcy Code continues to apply to any property of the estate unless and until the automatic stay has been terminated by order of the court or expires pursuant to section 362(c) of the Bankruptcy Code. Such property remains subject to administration by the trustee on behalf of the bankruptcy estate.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

    a. Debts for most taxes;
    b. Debts incurred to pay nondischargeable taxes (in a case filed on or after October 17, 2005);
    c. Debts that are domestic support obligations;
    d. Debts for most student loans;
    e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;
    f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;
    g. Some debts which were not properly listed by the debtor;
    h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;
    i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts.
    j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (in a case filed on or after October 17, 2005).

This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.

This Bankruptcy Discharge is an important document that you should retain in the event a copy is needed in the future. If you request a copy from the Clerk's Office at a later date, you will be required to pay a fee.

6/20/12  4:18PM

B6F (Official Form 6F) (12/07) - Cont.

Appendix E2

In re      **Emmanuel O Ohai,**
           **Luminate Ohai**                                                      Case No. _____

_____,
                                    Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **8202026319** <br><br> **RBC Bank** <br> **134 N Church St** <br> **Rocky Mount, NC 27804** | | J | **Opened 4/25/08 Last Active 5/26/11** <br> **Mortgage--Property forclosed in or about 2009** | | | | Unknown |
| Account No. **6035320243309265** <br><br> Thd/Cbna <br> Po Box 6497 <br> Sioux Falls, SD 57117 | | H | Opened 4/27/06 Last Active 2/09/09 <br> ChargeAccount | | | | 947.00 |
| Account No. | | | | | | | |
| Account No. | | | | | | | |
| Account No. | | | | | | | |

Sheet no. __3__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal <br> (Total of this page) | 947.00 |
|---|---|---|
|  | Total <br> (Report on Summary of Schedules) | 38,121.45 |

B6F (Official Form 6F) (12/07) - Cont.                                                                                    6/20/12  4:18PM

Appendix E2

In re    **Emmanuel O Ohai,**                                                    Case No. _____
         **Luminate Ohai**
         _____
                                                    Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM.  IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 8202026319 <br><br> **RBC Bank** <br> **134 N Church St** <br> **Rocky Mount, NC 27804** | | J | **Opened  4/25/08  Last Active  5/26/11** <br> **Mortgage--Property forclosed in or about 2009** | | | | Unknown |
| Account No. 6035320243309265 <br><br> Thd/Cbna <br> Po Box 6497 <br> Sioux Falls, SD 57117 | | H | Opened  4/27/06  Last Active  2/09/09 <br> ChargeAccount | | | | 947.00 |
| Account No. <br><br><br><br> | | | | | | | |
| Account No. <br><br><br><br> | | | | | | | |
| Account No. <br><br><br><br> | | | | | | | |

| | | |
|---|---|---|
| Sheet no. __3__ of __3__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal <br> (Total of this page) | 947.00 |
| | Total <br> (Report on Summary of Schedules) | 38,121.45 |

Emmanuel Ohai
2715 Tradd Court
Snellville, GA 30039

PNC Bank
P.O. Box 8807, Dayton
OH 45401-8807

September 5, 2018

Re: **Account Number 7500843531- Property Address 3012 Stone Mountain St. Lithonia, Ga 30058**
**U.S.P.S Certified Mail No: 7013 1710 0002 1982 5784**

To Whom It May Concern:

I am sending this letter to you in response to your letter dated August 22, 2018 coupled with the negative and derogatory mark you placed on my credit report. Be advised, this is not a refusal to pay, but validation request pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Section 809(b) that your claim is disputed and validation is requested pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Section 809(b) of the Fair Debt Collection Practices Act. I respectfully request that your office provide me with competent evidence that I have any legal obligation to pay you.
Please provide me with the following:

* Provide a statement showing the payment record of my account
* Provide a list of charges that total the amount you are claiming that I owe.
* Identify the original creditor and provide their contact information.
* Copies of any documents that show that I agreed to pay what you say I owe.
* Documentation showing that you have legal right to collect this debt you say I owe.
* I request your offices provide evidence that I have any legal obligation to pay you.


If your offices have reported inaccurate information to any of the three major Credit Bureau's (Equifax, Experian or TransUnion), said action might constitute fraud. Due to this fact, if any negative mark is found on any of my credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you.

I would also like to request, in writing, that no telephone contact be made by your offices to my home or to my place of employment. If your offices attempt telephone communication with me, including but not limited to computer generated calls or correspondence sent to any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter.

Sincerely,

Emmanuel Ohai
Emmanuel Ohai

B6D (Official Form 6D) (12/07)

Appendix E4

In re   **Emmanuel O Ohai,**
        **Luminate Ohai**                                                      Case No. _____

_____,
                            Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J | C | | | | | | |
| Account No. 31300007140406 | | | | | | Opened 4/27/06 Last Active 5/01/12 | | | | | |
| **Delta Community Credit 101 Virginia Ave Atlanta, GA 30320** | | | | J | | Mortgage<br><br>Principle residence<br>Location: 2715 Radd Court, Snellville GA 30039 | | | | | |
| | | | | | | Value $                    81,100.00 | | | | 98,352.00 | 17,252.00 |
| Account No. 1114684340043 | | | | | | Opened 3/06/08 Last Active 1/20/12 | | | | | |
| **Delta Community Credit Po Box 20541 Atlanta, GA 30320** | | | | J | | Mortgage<br><br>Principle residence<br>Location: 2715 Radd Court, Snellville GA 30039 | | | | | |
| | | | | | | Value $                    81,100.00 | | | | 39,615.00 | 39,615.00 |
| Account No. | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | Value $ | | | | | |

____0____  continuation sheets attached

| | Subtotal<br>(Total of this page) | 137,967.00 | 56,867.00 |
|---|---|---|---|
| | Total<br>(Report on Summary of Schedules) | 137,967.00 | 56,867.00 |



Appendix **E5**

## Your accounts that may be considered negative (continued)

**RBC BANK**
131 N CHURCH ST
ROCKY MOUNT NC 27804
**Phone number**
(252) 454 4400
**Partial account number**
820202....
**Address identification number**
0065893865
Sold to: TRANSFERRED TO PNC BANK

**Date opened**
Apr 2008
**First reported**
Apr 2008
**Date of status**
Jun 2012

**Type**
Real Estate
**Terms**
15 Years
**Monthly payment**
Not reported

**Credit limit or original amount**
$24,880
**High balance**
Not reported

**Recent balance**
$0 as of Mar 2012

**Responsibility**
Signer with
LUMINATE OHAI
**Status**
Discharged through Bankruptcy Chapter 7.
**Comment:**
Purchased by another lender.
**Account History**
Debt included in Chapter 7 Bankruptcy on June 20, 2012.

**Payment history**

| | 2012 | | | | | | | | | | | 2011 | | | | | | | | | | | 2010 | | | | | | | | | | | 2009 | | | | | | | | | | | 2008 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR |
| | CLS | CO | CO | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | CO | ND | CO | CO | CO | OK | ND | ND | ND | ND | ND | OK | ND | OK | OK | OK | OK | OK | OK | OK | ND | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

---

**SYNCB/HH GREGG**
C/O P.O. BOX 965036
ORLANDO FL 32896
**Phone number**
(866) 396 8254
**Partial account number**
601917080065....
**Address identification number**
0065893865

**Date opened**
Apr 2006
**First reported**
May 2006
**Date of status**
Oct 2012

**Type**
Charge Card
**Terms**
Not reported
**Monthly payment**
Not reported

**Credit limit or original amount**
Not reported
**High balance**
$4,143

**Recent balance**
$0 as of Oct 2012

**Responsibility**
Joint with
LUMINATE OHAI
**Status**
Discharged through Bankruptcy Chapter 7.
This account is scheduled to continue on record until Jun 2019.
**Comment:**
Account closed at credit grantor's request.
This item was updated from our processing of your dispute in Feb 2017.
**Account History**
Debt included in Chapter 7 Bankruptcy on Oct 05, 2012.

**Payment history**

| 2012 | | | | | 2011 | | | | | | | | | | | | 2010 | | | | | | | | | | | 2009 | | | | | | | | | | | 2008 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC |
| OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | 2007 | | | | | | | | | | | | 2006 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | |
| OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | |

7058-02 0A-0001000-0003-0000046

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| Emmanuel Ohai | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| Delta Community Credit Union | ) |
| Park Tree Investments, LLC, Dean Engle, individually | ) |
| CI Lender Services, Inc., Singer Law Group, Daniel I. Singer, | ) |
| individually, Jauregui, Lindsey, Longshore & Tingle, LLC, | ) |
| Microbilt Corporation and PNC Bank National Association Inc | ) |
| _Defendant(s)_ | ) |

Civil Action No.

## 1:20-CV-2220

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Delta Community Credit Union
3250 Riverwood Parkway
Atlanta, GA 30339

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Emmanuel Ohai
2715 Tradd Court
Snellville, GA 30039

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JAMES N. HATTEN

*CLERK OF COURT*

Date: MAY 26 2020

_Signature of Clerk or Deputy Clerk_

## <u>AFFIDAVIT OF SERVICE</u>

### UNITED STATES DISTRICT COURT
### Northern District of Georgia

Case Number: 1:20-CV-2220

Plaintiff:
**Emmanuel Ohai**

vs.

Defendant:
**Delta Community Credit Union et al.**

For:
Emmanuel Ohai
Pro Se
2715 Tradd Court
Snellville, GA 30039

Received by Ancillary Legal Corporation on the 28th day of May, 2020 at 5:10 pm to be served on **Delta Community Credit Union c/o Bob Manning, Registered Agent, 3250 Riverwood Pkwy, Atlanta, GA 30339.**

I, Michael Rivers, being duly sworn, depose and say that on the **2nd day of June, 2020** at **12:40 pm, I:**

served Delta Community Credit Union c/o Bob Manning, Registered Agent by delivering a true copy of the **Summons, Civil Cover Sheet, Demand for Jury Trial Preliminary Statement, Attached Appendices A1-A7, Attached Appendices B1-B15, Attached Appendices C1-C3, Attached Appendices D1-D8** to: **Bob Manning, as Registered Agent** for Delta Community Credit Union, at the address of: **3250 Riverwood Pkwy, Atlanta, GA 30339,** .

**Additional Information pertaining to this Service:**
6/2/20 @ 12:40 pm
Served Bob Manning
Registered Agent
~55 years old
Male
White
~5'8"
~190 lbs
Gray/Balding/ Hair
No Glasses

## AFFIDAVIT OF SERVICE For 1:20-CV-2220

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true.I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

ROSS BRIAN PHELAN
NOTARY PUBLIC
Walton County
State of Georgia
My Comm. Expires August 23, 2022

Subscribed and Sworn to before me on the __9__
day of __JUNE__, __2020__ by the affiant
who is personally known to me.

_R Brian Phelan_
NOTARY PUBLIC

**Michael Rivers**
Process Server

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: ANC-2020003335

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1k

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| Emmanuel Ohai | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| Delta Community Credit Union | ) |
| Park Tree Investments, LLC, Dean Engle, individually | ) |
| CI Lender Services, Inc., Singer Law Group, Daniel I. Singer, | ) |
| individually, Jauregui, Lindsey, Longshore & Tingle, LLC, | ) |
| Microbilt Corporation and PNC Bank National Association Inc | ) |
| _Defendant(s)_ | ) |

Civil Action No.

# 1:20-CV-2220

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_ Dean Engle
Park Tree Investments, LLC
425 Divisadero Street, Suite 207
San Francisco, CA 94117

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Emmanuel Ohai
2715 Tradd Court
Snellville, GA 30039

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JAMES N. HATTEN
_CLERK OF COURT_

Date: MAY 26 2020

_Signature of Clerk or Deputy Clerk_

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### Northern District of Georgia

Case Number: 1:20-CV-2220

Plaintiff:
**Emmanuel Ohai**

vs.

Defendant:
**Delta Community Credit Union et al.**

For:
Emmanuel Ohai
Pro Se
2715 Tradd Court
Snellville, GA 30039

Received by Ancillary Legal Corporation on the 28th day of May, 2020 at 5:10 pm to be served on **Park Tree Investments, LLC c/o CT Corporation System, Registered Agent, 289 S. Culver Street, Lawrenceville, GA 30046.**

I, Kevin Williams, being duly sworn, depose and say that on the **1st day of June, 2020 at 8:49 am, I:**

served **Park Tree Investments, LLC c/o CT Corporation System, Registered Agent** by delivering a true copy of the **Summons, Civil Cover Sheet, Demand for Jury Trial Preliminary Statement, Attached Appendices A1-A7, Attached Appendices B1-B15, Attached Appendices C1-C3, Attached Appendices D1-D8** to: CT Corporation System as **Registered Agent, BY LEAVING THE SAME WITH** Linda Banks as **process specialist** at the address of: **289 S. Culver Street, Lawrenceville, GA 30046** .

**Additional Information pertaining to this Service:**
6/1/2020  8:49 am  Linda Banks took the document at 289 S. Culver Street, Lawrenceville, GA  30046, age ~80 years old
female
white
~5'0
~125lbs
grey hair
wearing glasses

## AFFIDAVIT OF SERVICE For 1:20-CV-2220

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

ROSS BRIAN PHELAN
NOTARY PUBLIC
Walton County
State of Georgia
My Comm. Expires August 23. 2022

Subscribed and Sworn to before me on the ___5___ day of ___June___, ___2020___ by the affiant who is personally known to me.

_R Bin Phelan_
NOTARY PUBLIC

**Kevin Williams**
Process Server

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: ANC-2020003338

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1k

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| Emmanuel Ohai | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Delta Community Credit Union | ) |
| Park Tree Investments, LLC, Dean Engle, individually | ) |
| CI Lender Services, Inc., Singer Law Group, Daniel I. Singer, | ) |
| individually, Jauregui, Lindsey, Longshore & Tingle, LLC, | ) |
| Microbilt Corporation and PNC Bank National Association Inc | ) |
| *Defendant(s)* | ) |

Civil Action No.

## 1:20-CV-2220

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* PNC Bank National Association (Inc.)
300 Fifth Avenue, Pittsburgh, PA 15222-2401

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Emmanuel Ohai
> 2715 Tradd Court
> Snellville, GA 30039

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JAMES N. HATTEN
*CLERK OF COURT*

Date: MAY 26 2020

_____
*Signature of Clerk or Deputy Clerk*

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
Northern District of Georgia

Case Number: 1:20-CV-2220

Plaintiff:
**Emmanuel Ohai**

vs.

Defendant:
**Delta Community Credit Union et al.**

For:
Emmanuel Ohai
Pro Se
2715 Tradd Court
Snellville, GA 30039

Received by Ancillary Legal Corporation on the 28th day of May, 2020 at 5:10 pm to be served on **PNC Bank National Association c/o Corporation Service Company, Registered Agent, 40 Technology Parkway South, Suite #300, Norcross, GA 30092.**

I, Kevin Williams, being duly sworn, depose and say that on the **1st day of June, 2020 at 9:18 am, I:**

served **PNC Bank National Association c/o Corporation Service Company, Registered Agent** by delivering a true copy of the **Summons, Civil Cover Sheet, Demand for Jury Trial Preliminary Statement, Attached Appendices A1-A7, Attached Appendices B1-B15, Attached Appendices C1-C3, Attached Appendices D1-D8** to: Corporation Service Company as **Registered Agent, BY LEAVING THE SAME WITH** Alisha Smith as **process specialist** at the address of: **40 Technology Parkway South, Suite #300, Norcross, GA 30092** .

**Additional Information pertaining to this Service:**
6/1/2020  9:18 am  Alisha  Smith took the document at 40 Technology Parkway South, Suite #300, Norcross, GA  30092,
age ~45
female
black
~5'7
~145lbs
black hair
no glasses

# AFFIDAVIT OF SERVICE For 1:20-CV-2220

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

ROSS BRIAN PHELAN
NOTARY PUBLIC
Walton County
State of Georgia
My Comm. Expires August 23, 2022

Subscribed and Sworn to before me on the **5** day of ___June___, **2020** by the affiant who is personally known to me.

_R Bian Phelan_
NOTARY PUBLIC

**Kevin Williams**
Process Server

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: ANC-2020003336

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1k

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| Emmanuel Ohai | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Delta Community Credit Union | ) |
| Park Tree Investments, LLC, Dean Engle, individually | ) |
| CI Lender Services, Inc., Singer Law Group, Daniel I. Singer, | ) |
| individually, Jauregui, Lindsey, Longshore & Tingle, LLC, | ) |
| Microbilt Corporation and PNC Bank National Association Inc | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

# 1:20-CV-2220

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Microbilt Corporation
100 Canal Pointe Blvd..,
Suite 208, Princeton, NJ, 08540

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Emmanuel Ohai
2715 Tradd Court
Snellville, GA 30039

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JAMES N. HATTEN

*CLERK OF COURT*

Date: __MAY 26 2020__

_____
*Signature of Clerk or Deputy Clerk*

# AFFIDAVIT OF SERVICE

## UNITED STATES DISTRICT COURT
### Northern District of Georgia

Case Number: 1:20-CV-2220

Plaintiff:
**Emmanuel Ohai**

vs.

Defendant:
**Delta Community Credit Union et al.**

For:
Emmanuel Ohai
Pro Se
2715 Tradd Court
Snellville, GA 30039

Received by Ancillary Legal Corporation on the 28th day of May, 2020 at 5:10 pm to be served on **Microbilt Corporation c/o Corporation Service Company, Registered Agent, 40 Technology Parkway South, Suite #300, Norcross, GA 30092.**

I, Kevin Williams, being duly sworn, depose and say that on the **1st day of June, 2020 at 9:17 am, I:**

served **Microbilt Corporation c/o Corporation Service Company, Registered Agent** by delivering a true copy of the **Summons, Civil Cover Sheet, Demand for Jury Trial Preliminary Statement, Attached Appendices A1-A7, Attached Appendices B1-B15, Attached Appendices C1-C3, Attached Appendices D1-D8** to: Corporation Service Company as **Registered Agent, BY LEAVING THE SAME WITH** Alisha Smith as **process specialist** at the address of: **40 Technology Parkway South, Suite # 300, Norcross, GA 30092** .

**Additional Information pertaining to this Service:**
6/1/2020  9:17 am  Alisha  Smith took the document at 40 Technology Parkway South, Suite #300, Norcross, GA  30092,
age ~45
female
black
~5'7
~145lbs
black hair
no glasses

## AFFIDAVIT OF SERVICE For 1:20-CV-2220

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true.I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

ROSS BRIAN PHELAN
NOTARY PUBLIC
Walton County
State of Georgia
My Comm. Expires August 23, 2022

Subscribed and Sworn to before me on the 5 day of June , 2020 by the affiant who is personally known to me.

R Bian Phela
NOTARY PUBLIC

**Kevin Williams**
Process Server

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: ANC-2020003334

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| Emmanuel Ohai | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Delta Community Credit Union | ) |
| Park Tree Investments, LLC, Dean Engle, individually | ) |
| CI Lender Services, Inc., Singer Law Group, Daniel I. Singer, | ) |
| individually, Jauregui, Lindsey, Longshore & Tingle, LLC, | ) |
| Microbilt Corporation and PNC Bank National Association Inc | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

**1:20-CV-2220**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* FCI Lender Services Inc.
8180 East Kaiser Blvd.,
Anaheim Hills, CA, 92808

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Emmanuel Ohai
2715 Tradd Court
Snellville, GA 30039

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**JAMES N. HATTEN**

*CLERK OF COURT*

Date: **MAY 26 2020**

_____
*Signature of Clerk or Deputy Clerk*

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
Northern District of Georgia

Case Number: 1:20-CV-2220

Plaintiff:
**Emmanuel Ohai**

vs.

Defendant:
**Delta Community Credit Union et al.**

For:
Emmanuel Ohai
Pro Se
2715 Tradd Court
Snellville, GA 30039

Received by Ancillary Legal Corporation on the 28th day of May, 2020 at 5:10 pm to be served on **FCI Lender Services c/o Cogeny Global Inc, Registered Agent, 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076**.

I, Christopher Todd Horton, being duly sworn, depose and say that on the **1st day of June, 2020 at 1:33 pm, I:**

served **FCI Lender Services c/o Cogeny Global Inc, Registered Agent** by delivering a true copy of the **Summons, Civil Cover Sheet, Demand for Jury Trial Preliminary Statement, Attached Appendices A1-A7, Attached Appendices B1-B15, Attached Appendices C1-C3, Attached Appendices D1-D8** to: Cogeny Global Inc as **Registered Agent, BY LEAVING THE SAME WITH** Christy Drabek, as **process specialist** at the address of: **900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076** .

**Additional Information pertaining to this Service:**
6/1/2020 1:33 pm Perfected corporate service at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076, by serving Christy Drabek, process specialist.

White female
Blonde hair
25-30 years old
5'5" 130 lbs
No glasses

## AFFIDAVIT OF SERVICE For 1:20-CV-2220

I am an agent of Ancillary Legal Corporation and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and am authorized to serve process.

ROSS BRIAN PHELAN
NOTARY PUBLIC
Walton County
State of Georgia
My Comm. Expires August 23, 2022

Subscribed and Sworn to before me on the 2
day of _MAY_____, _2020_ by the affiant
who is personally known to me.

_R Brian Phelan_
NOTARY PUBLIC

**Christopher Todd Horton**
Process Server

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: ANC-2020003337

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1k

# THE UNITED STATES DISTRICT COURT OF NORTHERN GEORGIA

## ATLANTA DIVISION

EMMANUEL OHAI

  Plaintiff, pro se,

    V.

Delta Community Credit Union

Park Tree Investments, LLC

Dean Engle, individually

 FCI Lender Services, Inc.

Singer Law Group

Daniel I. Singer, individually

Jauregui, Lindsey, Longshore & Tingle

Microbilt Corporation

PNC Bank National Association (Inc.)

    Defendants

Civil Action No:   1:20-CV-2220

**DEMAND FOR JURY TRIAL**

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury under the laws of Georgia that I have this 15th day of June, 2020 mailed by regular U.S. Mail, postage prepaid a true copy of Plaintiff's amended complaint with Appendices EI, E2, E3, E4 and E5 in this matter to Defendant FCI Lender Services' attorney of record Mr. Larry W. Johnson, Esq. at the following address:

JOHNSON LEGAL SERVICES,L.L.C.
138 Hammond Drive
Suite B
Atlanta, Georgia 30328


Dated this 15th day of June , in 2020


Emmanuel O. Ohai, Plaintiff, pro se