# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

EMMANUAL OHAI,

    **Plaintiff,**

v.

DELTA COMMUNITY CREDIT
UNION, PARK TREE
INVESTMENTS, LLC, DEAN
ENGLE individually, FCI LENDER
SERVICES, INC., SINGER LAW
GROUP, DANIEL I. SINGER
individually, JAREQUI, LINDSEY,
LONGSHORE & TINGLE,
MICROBILT CORP., and PNC
BANK NATIONAL ASSOC. (INC.),

    **Defendants.**

CIVIL ACTION FILE
No. 1:20-cv-02220-SCJ-AJB

## O R D E R

Currently pending before the Court is Plaintiff's Motion for Leave to File a
Second Amended Complaint, [Doc. 108], filed in response to a previous order of
the Court. [*See* Doc. 99]. For the reasons set forth below, the undersigned

**DENIES** the motion.[1]   Therefore, Plaintiff's amended complaint, [Doc. 11],

remains the operative pleading in this matter.

---

[1]    The undersigned can rule on Plaintiff's motion to amend by issuing an order as opposed to submitting a Report and Recommendation to the District Judge. Although there is some dispute among the federal courts as to whether a motion to amend a complaint is a dispositive motion or a nondispositive motion, "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters that may be referred to a magistrate judge and reviewed by the district court under the 'clearly erroneous standard.' " *See E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (Baverman, M.J.).  The Eleventh Circuit has not issued a published opinion on this issue, but in a 2019 unpublished opinion, a panel of the court favorably cited other circuits' conclusions that an order denying a motion to amend is nondispositive for the purposes of Rule 72(a) of the Federal Rules of Civil Procedure. *Moore v. Grady Mem'l Hosp. Corp.*, 778 Fed. Appx. 699, 704 (11th Cir. June 20, 2019) (citing *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998); *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993)).  Consistently, in two 2010 unpublished decisions, the Eleventh Circuit indicated that it views motions to amend as nondispositive motions, which a magistrate judge may rule on through an order instead of a report and recommendation.  *See Reeves v. DSI Sec. Servs., Inc.*, 395 Fed. Appx. 544, 548 (11th Cir. Aug. 31, 2010) ("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 Fed. Appx. 897, 899-900 (11th Cir. June 18, 2010) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.") (citing cases); *cf. Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988) (reversing a magistrate judge's denial of a motion to amend a complaint as an abuse of discretion, but not addressing whether the magistrate judge had the authority to rule upon the motion).  The undersigned therefore resolves Plaintiff's motion for leave to amend by order.

# *I.* *Procedural History*

On May 26, 2020, Plaintiff filed a complaint in two parts totaling over 200 pages against Delta Community Credit Union ("Delta"), Park Tree Investments, LLC ("Park Tree"), Dean Engle, FCI Lender Services, Inc. ("FCI"), Singer Law Group, Daniel I. Singer, Jauregui, Lindsey, Longshore & Tingle ("JLLT"), Microbilt Corporation ("Microbilt"), and PNC Bank National Association (Inc.) ("PNC"). [*See* Docs. 1, 1-1]. The complaint alleged violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, against Delta, [*id.* at 79-80], violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 623(a), against Delta, [*id.* at 80-83], defamation-libel pursuant to state law against Delta, [*id.* at 83-84], violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c against Engle, Park Tree, Singer, Singer Law Group, FCI, and JLLT, [*id.* at 84-88], violations of Section 807 of the FDCPA by PNC, [*id.* at 88-90], invasion of privacy under state law by all Defendants, [*id.* at 90-91], violations of Sections 1681e(b), 1681i(a)(1), and 1681s-2(b) by PNC, [*id.* at 91-93], violations of the FCRA by Microbilt, [*id.* at 93-96], defamation-false light and invasion of privacy under state law by Engle, Park Tree, Singer, Singer Law Group,

FCI, and JLLT, [*id.* at 96-97], and violations of the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 by all Defendants, [*id.* at 97-100].[2]

On June 15, 2020, Plaintiff filed an amended complaint. [*See* Doc. 11]. In his amended complaint, Plaintiff named the same Defendants and, despite the fact that the amended complaint was over 130 pages, asserted that all the attachments included in his original complaint were "incorporated into this Plaintiff's amended complaint." [*See id.* at 1]. In his amended complaint, Plaintiff alleged violations of the ECOA against Delta, [*id.* at 91-92], violations of the FCRA by Delta, [*id.* at 92-94], defamation-libel under state law against Delta, [*id.* at 94-96], violations of the FDCPA by Engle, Park Tree, Singer, Singer Law Group, FCI, and JLLT, [*id.* at 96-100], violations of the FDCPA by PNC, [*id.* at 100-01], invasion of privacy under state law by all Defendants, [*id.* at 101-02], violations of the FCRA by PNC, [*id.* at 102-104], violations of the FCRA by Microbilt, [*id.* at 104-07], defamation-false light and invasion of privacy under state law by Engle, Park Tree, Singer, Singer Law Group, and JLLT, [*id.* at 107-08], violations of the GFBPA by all Defendants, [*id.* at 108-11], and violations of bankruptcy discharge

---

[2] The remainder of the first part of Plaintiff's complaint, [*see* Doc. 1 at 101-05], and the entirety of the second part of his complaint, [*see generally* Doc. 1-1], are emails and other evidentiary material.

injunction by all Defendants, [*id.* at 111-12].   Attached to the amended complaint,

Plaintiff included a number of bankruptcy documents.  [*See id.* at 114-35].

On June 26, 2020, Delta moved to dismiss Plaintiff's amended complaint,

[Doc. 24], and on June 29, 2020, Microbilt moved to dismiss the amended

complaint, [Doc. 27].[3]  On July 8, 2020, PNC moved to dismiss the amended

complaint, and on August 5, 2020, Singer moved to dismiss the same.  [Docs. 37,

50].   Engle moved to dismiss on September 2, 2020.  [Doc. 70].

On August 11, 2020, Plaintiff filed a proposed second amended complaint.

[Doc. 52].  The second amended complaint was not accompanied by a motion and

listed Delta, Park Tree, Engle, FCI, Singer Law Group, Singer, JLLT, Microbilt,

and PNC as Defendants.  [*Id.* at 1].  Plaintiff again asserted that all the appendices

and exhibits submitted with his initial and amended complaint are incorporated into

---

[3]      On June 16, 2020, Park Tree filed a motion to dismiss.  [Doc. 12].  In
an earlier order, the Court denied this motion as moot based on the understanding
that it was directed towards the original complaint.  [*See* Doc. 99 at 16].  Park Tree
has since filed a motion for reconsideration clarifying that, although the motion to
dismiss was filed the day after the amended complaint, it was still directed to that
pleading and states as much.  [*See* Doc. 104 at 2].  Although the docket indicates
that Plaintiff filed an opposition to the motion for reconsideration on February 5,
2021, a review of that filing shows it is actually Plaintiff's response to Delta's
motion to dismiss Plaintiff's amended complaint.  [*See* Doc. 110].  Accordingly,
because the motion for reconsideration is unopposed, the Court **GRANTS** the
motion.  [Doc. 104]; *see* LR 7.1(B), NDGa.

his second amended complaint. [*Id.*]. The second amended complaint included no factual information or background, except a brief preliminary statement, and proceeded immediately to add additional counts, starting from the last count in the first amended complaint. [*Id.* at 2]. On August 14, 2020, Plaintiff filed an addendum to his second amended complaint adding 20 pages of additional exhibits. [*See generally* Doc. 58].

On August 17, 2020, FCI and Park Tree moved to strike the second amended complaint and PNC and Microbilt moved to join the motion to strike shortly thereafter. [Docs. 63-64]. On August 25, 2020, Delta filed a separate motion to strike. [Doc. 65]. On September 14, 2020, Singer moved to join Park Tree's and FCI's motion. [Doc. 84].

On January 11, 2021, the Court granted the motions to strike filed by Delta, Park Tree, and FCI, [Docs. 62, 65]. The Court pointed out that Plaintiff did not receive consent from Defendants for the filing nor seek leave of Court, making the filing facially improper. [Doc. 99 at 12]. Also, the proposed second amended complaint was not filed as an attachment to a motion, as required by the Federal Rules of Civil Procedure. [*Id.*]. Further, Plaintiff provided no explanation as to why the additional claims were necessary or why they could not have been included in the first two complaints. [*Id.*]. As a result of these issues, the Court found the

6

proposed second amended complaint was improper and granted the motions to strike. [*Id.* at 13-14]. In light of Plaintiff's pro se status, the Court granted Plaintiff to file another second amended complaint within 21 days and listed requirements for that filing. [*Id.*].

Plaintiff filed his motion for leave to file a second amended complaint and his proposed second amended complaint on February 1, 2021. [Docs. 108, 108-1]. On February 9, 2021, Microbilt filed an opposition, and Delta and PNC did so shortly thereafter. [Docs. 111, 113-14]. On February 10, 2021, FCI, Park Tree, and JLLT joined Microbilt's filing, and on February 16, 2021, filed an amended joinder, adding Delta and PNC's oppositions. [*See* Docs. 112, 115]. On February 23, 2021, Plaintiff filed a motion to strike and response to the amended joinder. [Doc. 119].

Finally, on April 16, 2021, Plaintiff filed a motion to amend his amended complaint and second amended complaint to dismiss his bankruptcy discharge injunction claim against all Defendants. [Doc. 140].

## II.    *Facts*

In his proposed second amended complaint, Plaintiff again names Delta, Park Tree, Engle, FCI, Singer Law Group, Singer, Microbilt, and PNC Bank.

[Doc. 108-1 at 1]. JLLT, however, has been replaced by Phillip Jauregui and Michael Lindsey, d/b/a Jauregui & Lindsey, LLC ("J&L"). [*Id.*].

The second amended complaint contains a lengthy explanation of "The Enterprise," [*id.* at 2-7], in which Plaintiff compares various Defendants to mob figures including John Gotti and Salvatore Gravano. It also includes a lengthy fact section. [*See id.* at 19-57]. As causes of action, Plaintiff alleges violations of the ECOA, FCRA, fraud, deceit, and intentional misrepresentation, violations of the GFBPA, breaches of fiduciary duty against Delta, [*id.* at 57-64], violations of the FDCPA against Delta, Park Tree, Engle, FCI, Singer Law Group, Singer, and J&L, [*id.* at 64-66], tortious interference with contract relations against Delta, Park Tree, Engle, FCI, Singer, and J&L, [*id.* at 66-67], violations of the FCRA by Park Tree and Engle, [*id.* at 67-68], violations of the FDCPA, FCRA, breach of fiduciary duty and breach of contract, and violations of GFBPA by PNC, [*id.* at 69-73], FCRA violations by Delta, [*id.* at 73-74], violations of the FCRA and issuing a consumer report for an impermissible purpose by Microbilt, [*id.* at 74-77, 78-79], FCRA violations for failing to follow reasonable procedures by against Delta, PNC, Park Tree, and Engle, [*id.* at 77-78], claims against Park Tree and Engle for obtaining a credit report for an impermissible purpose, [*id.* at 79-80], violations of the Georgia Racketeer Influence and Corrupt Enterprises Act ("RICO") against all Defendants,

8

[*id.* at 80-83], claim for wrongful foreclosure against Delta, Park Tree, Engle, FCI, J&L, Singer, and Singer Law Group, [*id.* at 83-85], violations of the GFBPA by Park Tree, Engle, FCI, Singer Law Group, Singer, and J&L, [*id.* at 86-87], a claim for failure to cancel a security deed and fraud against PNC, [*id.* at 87], violations of a bankruptcy injunction by all Defendants, [*id.* at 87-88], violations of TILA by Delta, FCI, PNC, and Park Tree, [*id.* at 88-89], and state law claims for false light and invasion of privacy by against all Defendants, [*id.* at 89-90]. Plaintiff also seeks an injunction against all Defendants. [*Id.* at 90-91].

In addition to the proposed second amended complaint, Plaintiff has attached additional documents, including a note and disclosure statement, [Doc. 108-2 at 2-3], email exchanges between himself and Delta, [*id.* at 5-15], a modification trial period plan, [*id.* at 16-18], and over 150 pages of additional documents.

### III. Motion for Leave to File a Second Amended Complaint

In his motion for leave to file a second amended complaint, Plaintiff requests that the Court grant him leave to amend his complaint because the proposed amendment will clarify the dispute and not cause any prejudice. [Doc. 108 at 1]. Plaintiff contends that it narrows the scope of the issues presented and will prevent time from being wasted. [*Id.* at 1-2]. He asserts that the second amended complaint

will allow him to add viable claims, including wrongful foreclosure and breach of contract claims, and also will permit him to substitute the proper name for one of the defendants. [*Id.* at 2-4]. Plaintiff contends that if Defendants were worried about delay, they should have not avoided service. [*Id.* at 4]. He argues that Defendants will not suffer any undue prejudice and additionally argues that Defendants continue to harass him. [*Id.* at 6-7]. Plaintiff notes that the proposed second amended complaint does not add any new Defendants and is not futile because he has alleged sufficient facts for a claim of relief that is facially plausible. [*Id.* at 7-8]. He argues that Defendants are aware of the relevant facts because they engaged in a scheme to defraud. [*Id.* at 8]. Plaintiff contends that the proposed amendment more clearly describes the matters at issue. [*Id.* at 8-9]. He also has attached an appendix to the motion including a document titled "Foreclosure Prevention Alternatives" from FCI. [*Id.* at 12-16].

Several Defendants filed objections to Plaintiff's motion. Microbilt argues that the motion should be denied because it violated this Court's express preconditions, the new claims were known and could previously have been brought, the new claims are futile, and allowing Plaintiff to file the second amended complaint would unfairly prejudice it. [Doc. 111 at 1-2]. It contends that Plaintiff violated preconditions imposed by this Court because Plaintiff does not explain

10

why he could not have included his Georgia RICO claim in the amended complaint. [*Id.* at 4]. Microbilt also argues that Plaintiff failed to provide a brief factual background, as required by the Court, uses false mob names, and argues that the fact section does not follow a logical order. [*Id.* at 5].

Microbilt further argues that the second amended complaint simply moves around the allegations related to it and appears to be materially similar to the allegations in the first amended complaint. [*Id.* at 5-6]. It contends that the second amended complaint also references all preceding paragraphs in violation of the Court's order. [*Id.* at 6].

Next, Microbilt argues that Plaintiff's RICO claim under Georgia state law fails to provide any specific facts, is not sufficiently pleaded, and is plainly futile. [*Id.*]. It claims that the allegation is plainly futile because it fails to sufficiently allege the conduct of Microbilt that is subject to the claim. [*Id.* at 6-7]. Microbilt argues that Plaintiff has failed to raise a right to relief above the speculative level. [*Id.* at 7]. Microbilt further argues that Plaintiff has failed to explain why he could not have included his Georgia RICO claim in his amended complaint, which is another ground for denying the motion. [*Id.* at 7-8].

Microbilt also argues that Plaintiff's request for an injunction is also futile because no private action for such relief exists under the FCRA. [*Id.* at 8]. It

11

submits that this count incorporates by reference the preceding paragraphs, the facts and claims alleged are incomprehensible, and there is no reason an injunction was not previously sought. [*Id.*].

Finally, Microbilt argues that it has expended significant time responding to the amended complaint and Plaintiff's subsequent motion for judgment, which Plaintiff does not address. [*Id.* at 9]. It also contends that Plaintiff's filing of his motion for judgment weighs against granting the motion for leave. [*Id.*]. Microbilt attached a blacklined version of the amended complaint and the second amended complaint. [*See* Doc. 111-1].

In reply, Plaintiff argues that Defendants' responses in opposition have made his imperfect comprehension of the Court's Order the focus of their filings but have mostly not disputed the viability of some of his new claims. [Doc. 120 at 2]. He claims that he did not include these claims previously because every day he is discovering more damaging evidence. [*Id.*]. He also contends that his investigation has been hindered by his meager resources, asserting that Defendants acting in concert have rendered him impoverished and they should have to deal with the outcome of their conduct. [*Id.* at 2-3]. Plaintiff argues that Defendants all had notice of the general nature of his claim prior to the lawsuit being filed. [*Id.* at 3]. He asserts that he should be allowed to air his grievances unimpeded. [*Id.*].

Plaintiff next argues that notice pleading does not require him to state his legal theories or allege theories of action and he has done much more than put Defendants on notice of his claims. [*Id.* at 4-5]. Plaintiff contends that pro se litigants should not be held to strict compliance with procedural rules. [*Id.* at 5-6]. He submits that all litigants are entitled to the right to certain due process rights, including the right to be heard. [*Id.* at 6-7]. He then argues that due process is flexible, should be applied on a sliding scale, and pro se litigants are entitled to a liberal construction of their pleadings. [*Id.* at 7-8]. Plaintiff contends that due process is denied if he loses a meaningful opportunity to be heard and the refusal to construe pleadings flexibly is tantamount to withdrawal of that opportunity. [*Id.* at 8-9]. He argues that a meaningful opportunity to be heard is a core due process value. [*Id.* at 9-10].

Plaintiff next claims that Microbilt has approached the case arrogantly, as evidenced through statements in its portion of the Joint Preliminary Report and Discovery Plan. [*Id.* at 10-13]. Plaintiff contends that Microbilt's opposition has tried to make the case about his emotional and mental state and Plaintiff's not perfectly comprehending the Court's order. [*Id.* at 13]. Plaintiff argues that Microbilt violated the FCRA by repeatedly accessing his credit report impermissibly. [*Id.* at 13-14]. He claims that Microbilt's conduct violates

§ 1681b(f) and § 1681q because it was willful and knowing and used false pretenses, and so Microbilt is subject to civil and criminal liability. [*Id.* at 14-15]. He argues that malice is shown by Microbilt's refusal to remove disputed information despite his repeated attempts. [*Id.* at 15]. Plaintiff contends that Microbilt's use of false pretenses is demonstrated by the fact that it did not obtain the reports for a permissible purpose, even if it did not use false pretenses. [*Id.*].[4]

On February 10, 2021, Defendants Park Tree, FCI, and JLLT joined Microbilt's opposition. [Doc. 112]. They argue that the proposed second amended complaint violates this Court's preconditions in that it added new claims and identified new parties who could previously have been added, brought new claims that are futile, and that granting the motion for leave would prejudice them. [*Id.* at 1-2].

On February 15, Defendant Delta filed a response in opposition to the motion for leave. [Doc. 113]. Delta claims that the second amended complaint adds seven

---

[4]     Plaintiff's reply brief totals twenty-six pages. [*See generally* Doc. 120]. Under the Local Rules, a reply brief is limited to 15 pages without prior permission from the Court. *See* LR 7.1(D), NDGa ("If the movant files a reply, the reply brief may not exceed fifteen (15) pages"). Because Plaintiff did not seek the Court's permission beforehand to include additional pages, the Court could ignore any argument on those additional pages here. Nevertheless, because Plaintiff is proceeding pro se, the Court has reviewed the additional argument and notes that it would not alter the outcome reached in the text.

additional claims against it but no new facts or newly discovered facts. [*Id.* at 2]. It argues that the motion for leave should be denied because it did not follow the Court's instructions and, in particular, did not articulate why Plaintiff could not have included the additional claims in his amended complaint, did not explain how the second amended complaint would not prejudice Defendants, failed to provide relevant facts for each claim, and reaffirmed all factual allegations from preceding counts. [*Id.*]. Delta further argues that the motion should be denied as futile because Plaintiff's FCRA, fraud, breach of fiduciary duty, tortious interference, RICO, wrongful attempted foreclosure, and TILA, as well as Plaintiff's request for an injunction, are all meritless. [*Id.* at 3-4].

Specifically, Delta argues that Plaintiff failed to comply with the Court's prior order in that he failed to provide any plausible reason why he would be entitled to another amendment and why he could not have included the additional claims in his earlier complaints. [*Id.* at 6]. It contends that Plaintiff has given no explanation for adding new claims against it, does not contend that he was hindered in any way, and does not argue that he did not have all the facts he needed. [*Id.*]. Delta argues that the only explanation Plaintiff provides is that he was delayed in discovering the legal identities of the law firm Defendants. [*Id.* at 6-7]. Delta also argues that Plaintiff insufficiently explained how it would not be prejudiced by the

second amended complaint and his assertion that Defendants had first-hand knowledge of the roles they played does not alter the prejudice they will suffer if he is permitted to expand the litigation. [*Id.* at 7].

Delta argues that by adding 16 causes of action, the proposed amendment does much more than clearly describe the matters at issue and would cause Defendants undue prejudice. [*Id.* at 7-8]. It also contends that Plaintiff failed to allege each claim independently and to specify facts supporting the claims against Delta, as required by the Court's order. [*Id.* at 8]. Delta further contends that Plaintiff incorporated by reference all preceding paragraphs in each count, in contravention of the order. [*Id.* at 8-9].

Second, Delta argues that the motion for leave should be denied because the additional claims against it are futile. [*Id.* at 9]. Specifically, Delta argues that Plaintiff's FCRA claim against it is futile because its obligations arise only after a credit reporting agency ("CRA") notified it of a dispute, but Plaintiff has made no allegation that it received such notice. [*Id.* at 9-10]. Delta contends that Plaintiff's claim for fraud against it is futile because, if it is based on alleged misrepresentations in the assignment, it is barred by the statute of limitations and, to the extent it is based on Delta informing Equifax that Plaintiff was the sole account holder, it fails to allege justifiable reliance. [*Id.* at 10-11]. Delta argues

that Plaintiff's claim for breach of fiduciary duty is futile because there is no confidential relationship between a bank and its customers or a borrower and mortgagor. [*Id.* at 11-12].

Next, Delta argues that Plaintiff's claim for tortious interference is meritless because the only contractual relationship Plaintiff has identified is the one he alleges was tortiously interfered with; however, Delta cannot interfere with its own contractual relationship with Plaintiff. [*Id.* at 12-13]. Delta contends that Plaintiff's claims for violation of 12 C.F.R. § 1022.42 are futile because that provision does not provide a private right of action. [*Id.* at 13]. It also contends that Plaintiff's RICO claim fails because he cannot establish the alleged underlying wrongdoing upon which a RICO claim is predicated. [*Id.* at 14-15]. It further argues that Georgia's RICO act requires two predicate acts and Plaintiff has failed to allege any specific actions that would constitute any predicate acts. [*Id.* at 15-16]. Delta contends that Plaintiff's claim for wrongful attempted foreclosure is futile because Plaintiff has not alleged that it was involved in any foreclosure with respect to Plaintiff that was completed or that it made a knowing and intentional publication of untrue and derogatory information concerning his financial condition. [*Id.* at 16]. It claims that the basis for Plaintiff's TILA claim against it

is unclear. [*Id.* at 17]. Finally, it contends that Plaintiff is not entitled to an injunction because, among other reasons, his claims are meritless. [*Id.* at 17-19].

In reply, Plaintiff argues that Delta has mistakenly made a substantial part of its argument about his mental and emotional state and imperfect comprehension of the Court's order. [Doc. 118 at 1-2]. Plaintiff repeats the argument made in his earlier reply to Microbilt's opposition regarding the requirements of notice pleading, procedural treatment of pro se litigants, procedural due process rights of pro se civil litigants, and the pro se civil litigant's interest. [*Id.* at 2-8].

With regard to Delta, Plaintiff argues that the FCRA creates a private cause of action to enforce § 1681s-2(b). [*Id.* at 8]. He also claims that he informed Equifax and Delta that he had disputed an inaccurate entry on his credit file and did, in fact, dispute inaccurate information on his credit report by Delta with a credit reporting agency. [*Id.*]. He also argues that Delta never sent him notice that it went back to the CRA to fix the inaccurate information. [*Id.*].

Plaintiff next concedes that 12 C.F.R. § 1022.43 of the FCRA does not permit private causes of action but argues that that does not excuse Delta's violations of the FCRA. [*Id.* at 9]. Plaintiff requests that he be allowed to amend

his complaint to include claims under §§ 1681s-2(b) and 1681h(e).[5]  [*Id.*].    He

contends that Delta's conduct satisfies those sections because the definition of

willful in § 1681n(a) relating to a failure to notify consumers gives "willful" a

broader meaning than merely knowing and the definition of willful is only relevant

in interpretations of the statute that allow claims under § 1681h(e).  [*Id.*].

Next, Plaintiff argues that he has a fiduciary relationship with Delta.

[*Id.* at 9].  Plaintiff notes that he opened an account with Delta in 2003 when only

employees of Delta and their families could open such accounts.  [*Id.*].  He argues

that Delta offered him advice on financial issues and his wages were automatically

deposited into his account.  [*Id.* at 10].  He claims that he has alleged sufficient

facts to state a claim for fraudulent and material misrepresentation and breach of

fiduciary duty by Delta's staff.  [*Id.*].  Plaintiff argues that he and one of Delta's

employees were more or less co-workers.  [*Id.*].  Plaintiff also argues the alleged

fiduciary relationship is also shown by derogatory and inaccurate information sent

by an employee of Delta to Equifax.  [*Id.* at 11].  Plaintiff contends that the

---

[5]      Plaintiff's request to further amend his complaint is **DENIED**.
Amendments to pleading may only be made through a motion and cannot be
completed through reply briefing.  *See, e.g.*, *Gilmour v. Gates, McDonald & Co.*,
382 F.3d 1312, 1315 (11th Cir. 2004) (noting that a "plaintiff may not amend [his]
complaint through argument in a brief . . . .).

employee was trying to conceal the fraud and FCRA violation and sent inaccurate information to a CRA but acted as though he was trying to help Plaintiff. [*Id.* at 11-12].

Plaintiff next contends that the fiduciary duty that Delta owed Plaintiff was breached. [*Id.* at 12]. He argues that Delta breached the loan modification agreement and that it should have known that doing so could harm him. [*Id.* at 12-13]. Plaintiff asserts upon information and belief that Delta was supposed to purchase his primary residence at the foreclosure sale and steal the equity that he had accumulated in the property. [*Id.* at 13].

He next argues that the reasonableness of a furnisher's procedures under the FCRA is a jury question. [*Id.* at 13-14]. Plaintiff contends that Delta has not shown any evidence or argument for the reasonableness of its procedures. [*Id.* at 14-15]. He also contends that Delta violated Georgia's RICO law. [*Id.* at 15].[6]

Defendant PNC filed an opposition to Plaintiff's motion for leave on February 16, 2021. [Doc. 114]. PNC argues that the motion is due to be denied

---

[6]     As was the case with Plaintiff's reply to Microbilt's opposition, the brief filed exceeds the number of pages allowed by the Local Rules. *See* LR 7.1(D) NDGa. As was the case above, the Court could ignore any argument on those additional pages here but, because Plaintiff is proceeding pro se, the Court has reviewed the additional argument and notes that it would not alter the outcome reached in the text.

because the second amended complaint does not comply with this Court's previous order and the proposed amendment is futile. [*Id.* at 1-2]. With regard to the Court's order, PNC argues that Plaintiff failed to provide a brief factual background relevant to all claims, logically ordered, and numbered, and that he also ignored the requirement to identify specific factual allegations to support each claim. [*Id.* at 8-9]. With regard to futility, PNC argues that Plaintiff's FDCPA claims fail because, among other reasons, PNC is not a debt collector for the purposes of the FDCPA following it becoming a successor by merger to RBC, who is the originating lender. [*Id.* at 10-13]. In any event, PNC argues that it was not attempting to collect a debt from Plaintiff and the statement it sent to Plaintiff was only sent for informational and compliance purposes. [*Id.* at 13-14]. PNC contends that the debt at issue is not covered by the FDCPA because it involves an investment property. [*Id.* at 14-15].

PNC next argues that Plaintiff's false light/invasion of privacy claim fails as a matter of law because it is preempted by the FCRA, and his FCRA claim is futile because there is no private right of action for FCRA claims arising from a direct dispute between a consumer and creditor. [*Id.* at 15-16]. PNC contends that Plaintiff's claims for violations of Regulation V fail because there is no private right of action for a furnisher's failure to comply with 12 C.F.R. § 1022.42.

21

[*Id.* at 17]. Further, PNC argues that Plaintiff's GFBPA claims fail because they are derivative of Plaintiff's other flawed claims, involve only an investment property, and so are not related to any consumer transaction. [*Id.* at 17-18]. PNC contends that Plaintiff's breach of fiduciary duty and breach of contract claims fail because it does not owe a fiduciary duty to him, there is no fiduciary duty between a borrower and a lender or its agent, and it was not attempting to collect a debt. [*Id.* at 18-19].

Next, PNC contends that Plaintiff's RICO and mail fraud claims fail as a matter of law. [*Id.* at 19]. PNC argues that the RICO claim fails because it is based on Plaintiff's meritless allegation that it was attempting to collect a debt and because Plaintiff failed to plead all the elements of the claim. [*Id.* at 19-20]. PNC also argues that Plaintiff's claim lacks the required particularity and Plaintiff has failed to include any facts related to what PNC gained by the alleged mail fraud. [*Id.* at 20]. PNC contends that Plaintiff's combined claim for a violation of O.C.G.A. § 44-14-3 and fraud fails as a matter of law because, first, none of the elements of fraud are pled with specificity. [*Id.* at 21-22]. PNC contends that Plaintiff's § 44-14-3 claim for failure to cancel the security deed also fails because the foreclosure deed canceled the security deed by operation of law, so no further cancellation was necessary. [*Id.* at 22].

PNC further contends that Plaintiff's claim for violation of the bankruptcy discharge injunction fails because such relief must be sought from the court that entered the discharge and so this court lacks jurisdiction. [*Id.* at 23]. PNC further argues that it was also not attempting to collect a debt from Plaintiff and so could not violate the discharge injunction. [*Id.* at 24]. PNC argues that Plaintiff's TILA claims, which allege it failed to make a required disclosure, fail because that provision applies to credit cards and does not apply to closed-end mortgages such as the loan at issue. [*Id.* at 24-25]. Finally, PNC argues that Plaintiff's request for an injunction fails because his underlying claims all fail. [*Id.* at 25].

In reply, Plaintiff repeats his argument from his earlier briefs regarding notice pleading, the procedural treatment of pro se litigants, procedural due process rights of pro se civil litigants, and the pro se civil litigant's interest. [Doc. 117 at 1-7]. Plaintiff next argues that PNC is a debt collector and that the property in question was his primary residence and was not an investment property. [*Id.* at 7-8]. Plaintiff argues that he had never rented the home and was fixing it up prior to the foreclosure. [*Id.* at 8]. Plaintiff argues that RNC cannot provide evidence that his intent in buying the house was for other than personal, family, or household purposes. [*Id.*]. Plaintiff notes that no one lived in the home in the time between the purchase and foreclosure. [*Id.* at 9]. Plaintiff argues that he and his

23

wife later applied for a commercial mortgage loan but PNC is deliberately conflating these issues to confuse the Court. [*Id.*]. Plaintiff contends that his debt was for a homeowner's line of credit, as shown in the security deed, and not for a mortgage and closed-end consumer credit plan, as PNC argues. [*Id.* at 10].

Plaintiff argues that PNC is trying to mislead the Court by claiming that Plaintiff's mortgage was transferred to PNC after it was in default when it actually breached its fiduciary and good faith duty when it made material representations about the status of the loan, among other things. [*Id.* at 11]. Plaintiff argues that PNC is not exempted by being a successor in interest to RBC because when RBC foreclosed on the property the security deed became extinguished, PNC had not purchased RBC by that point and, therefore, the issue of the mortgage loan does not arise. [*Id.* at 12]. Plaintiff argues that PNC is a debt collector and not a creditor because it did not offer credit that created a debt. [*Id.*]. Plaintiff contends that PNC began its collection activities about nine years after default. [*Id.* at 12-13].

Plaintiff also argues that PNC illegally refused to release him from the lien at issue and reported harmful information to CRAs. [*Id.* at 13]. Plaintiff claims that a large part of PNC's business is collecting debts and it is currently being sued in a class action suit for placing harassing phone calls to consumers. [*Id.*]. Plaintiff argues that a fiduciary relationship existed between Plaintiff and PNC's

24

predecessor-in-interest, RBC Bank. [*Id.* at 14]. Plaintiff contends that courts have only found a mortgage lender to owe a fiduciary duty where the relationship was such that the mortgagee could reasonably expect the lender to act in his or her best interest. [*Id.* at 15]. Plaintiff notes that the relationship must have existed prior to the suit. [*Id.*].[7]

Plaintiff has attached numerous exhibits to his reply brief, consisting mostly of email exchanges between himself and employees of RBC Bank. [*See* Doc. 117 at 31-35, 39-48]. He has also attached an email exchange and attachments sent between Plaintiff and an attorney, [*id.* at 36-38]

On February 16, 2021, Defendants Park Tree, FCI, and JLLT, filed an amended joinder to Microbilt's opposition to Plaintiff's Motion for Leave and Joinder to Defendant Delta and PNC's Oppositions to Plaintiff's Motion for Leave. [Doc. 115 at 1-2]. Park Tree, FCI, and JLLT argue that the motion for leave violates this Court's explicit preconditions, the new claims could have been

_____

[7]     As was the case with Plaintiff's reply to Microbilt's opposition, the brief filed exceeds the number of pages allowed by the Local Rules. *See* LR 7.1(D) NDGa. As was the case above, the Court could ignore any argument on those additional pages here but, because Plaintiff is proceeding pro se, the Court has reviewed the additional argument and notes that it would not alter the outcome reached below.

brought and parties added previously, and that granting the motion for leave would prejudice them. [*Id.* at 2].

Plaintiff filed a response and a Motion to Strike the Joinder, arguing that it should be denied because it fails to specify how Microbilt's arguments applied to their case and to ensure that the Court had all the facts necessary to apply the adopted argument to the clients in question. [Doc. 119 at 3]. Plaintiff argues that JLLT sent him dunning collection notices on stationary with a fake name and Johnson attended the 26(f) conference and did not mention the fake name being used on the docket or suggest that another party needed to be added. [*Id.* at 4]. Plaintiff further argues that Park Tree, JLLT, and FCI are abusing the court process and that the motion for joinder lacks specificity and relevance to the circumstances of the other co-defendants. [*Id.* at 5]. Plaintiff argues that Defendants see only the fact that he is pro se and refuse to see how their conduct affects others. [*Id.*]. Plaintiff argues that Defendants have attempted to illegally seize properties all over Georgia. [*Id.* at 6].

In reply to Plaintiff's filing, Park Tree, FCI, and JLLT argue that Plaintiff has not identified any redundant, immaterial, impertinent or scandalous matter, and so the motion is due to be denied. [Doc. 121 at 2]. With regard to Plaintiff's opposition to their motion for joinder, Park Tree, FCI, and JLLT argue that Plaintiff

is seeking to expand the litigation by adding 16 additional claims but has not asserted any new factual allegations or newly discovered facts. [*Id.*]. They further argue that Plaintiff's motion for leave should be denied because it fails to comply with this Court's previous order. [*Id.* at 3]. They contend that Plaintiff has not explained why he could not have included the additional claims earlier, why Defendants would not be prejudiced by adding them now, has failed to provide relevant facts for each claim, and has reaffirmed and realleged all the factual allegations in each count of the second amended complaint. [*Id.*]. They further argue that the motion should be denied because the additional claims against them are futile. [*Id.* at 3-6]. They also argue that the motion for leave should be denied because Plaintiff failed to comply with this Court's order, [*id.* at 6-11], and because

the additional claims are futile, [*id.* 11-15].[8, 9]

**A.    Applicable Law**

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings prior to trial.  The rule provides, in relevant part, as follows:

(1)    Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
   (A)    21 days after serving it, or
   (B)    if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  In all other cases, a party must obtain the opposing party's written consent or leave of the court before filing an amended pleading.

---

[8]    As noted above, reply briefs are limited to 15 pages by the Local Rules. LR 7.1(D), NDGa.  The Court acknowledges that the filing is labeled as a response to Plaintiff's motion to strike and a reply to Plaintiff's response to the amended joinder, [*see* Doc. 121 at 1], but notes that less than one page of the brief is spent addressing the merits of Plaintiff's motion to strike, [*see id.* at 2].  The Court therefore finds that enforcing the 15-page limit for reply briefs is appropriate.  In any event, the Court notes that the brief is primarily addressed to the merits of Plaintiff's motion for leave, and not to replying to his opposition to their motion for joinder.  [*See* Doc. 121 at 2-32].   Even if construed to be a response, the Court notes that Park Tree, FCI, and JLLT's filing is significantly overlong.  *See* LR 7.1(D), NDGA (limiting responsive briefing to 25 pages).

[9]    Plaintiff's motion to strike is **DENIED**.  [Doc. 119].  Although it is labeled as a motion to strike, the Court notes that Plaintiff's filing does not mention the legal standard for striking a filing or explain why the filing should be stricken as opposed to denied.  [*See generally id.*].

28

Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) requires that the Court freely give leave to amend when justice so requires. *Id.* However, Rule 15(a) gives a district court "extensive discretion" to decide whether or not to allow a party to amend a complaint. *Hargett v. Valley Federal Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995).

A court may choose to deny a motion to amend a complaint "when the amendment would prejudice the defendant, follows undue delays, or is futile." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999); *see also Powe v. U.S. Dep't of Edu.*, No. 05-0296, 2005 WL 2045781, at * 1 (S.D. Ala. Aug. 25, 2005) (stating that a court properly denies a motion to amend when the amendment would be futile).

A pro se complaint is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court may not serve as "de facto counsel or rewrite an otherwise deficient pleading to preserve an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation omitted). Pro se litigants also are required to conform to the procedural rules of the Court, including both the Federal Rules of Civil Procedural and the Court's Local Rules. *See, e.g.*, *Green v. First Am. Home Warranty Corp.*, No. 8:18-CV-1043-T-36AEP, 2018 WL 8193521, at *1 (M.D. Fla. July 6, 2018) (collecting cases); *see also Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).

**B.    Analysis**

The motion for leave is **DENIED**. [Doc. 108]. In its previous order, the Court laid out several requirements for any second amended complaint. First, the Court ordered that Plaintiff needed to state with particularity why he was entitled to file a second amended complaint and, specifically, needed to articulate why he could not have included the proposed claims and/or defendants earlier and why Defendants would not be prejudice by the filing of the second amended complaint. [Doc. 99 at 14]. The Court finds that Plaintiff has failed to meet these requirements. In his motion, Plaintiff argues that Defendants will not suffer any undue prejudice and notes that Defendants have continued to harass him. [Doc. 108 at 6-7]. In reply to several of the oppositions to the motion for leave, Plaintiff argues that he imperfectly comprehended the Court's order. [*See, e.g.*, Doc. 120 at 2]. He further argues that he is continuing to discover new wrongdoing every day and that Defendants should have to deal with the outcome of their conduct. [*Id.* at 2-3]. Plaintiff argues that Defendants all had notice of the general nature of his claims prior to the lawsuit being filed. [*Id.* at 3].

These arguments are insufficient. First, Plaintiff provides no explanation as to how the Court's instructions were confusing. Plaintiff contends that he continues to find new alleged violations committed by Defendants, but the relevant issue is

30

whether he could have found them before and included them his in prior pleadings. Beyond the sheer number of alleged violations, Plaintiff has not identified any obstacle to his discovering and including them earlier. Plaintiff argues that he has been impeded by a lack of resources, which he claims is a result of Defendants' actions, [*see, e.g.*, Doc. 120 at 3], but of course that argument assumes Defendants' responsibility, which is the issue in question, and is wholly without factual support. The Court further notes that Plaintiff is seeking to more than double the number of claims in the case. [*Compare* Doc. 11, *with* Doc. 108-1].

With regard to the prejudice caused to Defendants, Plaintiff only argues that they were on notice of his claims prior to the filing of the suit. Plaintiff does not deny that six of them have expended significant resources in responding to his amended complaint. [*See* Docs. 24, 27, 37, 50, 67, 70]. Plaintiff argues that the second amended complaint narrows the scope of the issues presented, will prevent time from being wasted, and more clearly describes the matters at issue. [Doc. 108 at 1-2, 8-9]. In this regard, the Court observes that the proposed second amended complaint, in contrast to Plaintiff's previous filing, does not simply add counts beginning from the end of the amended complaint. [*Compare* Doc. 52, *with* Doc. 108-1]. The proposed second amended complaint also does not seek to incorporate all of the appendices and exhibits attached to both the original

complaint and the amended complaint, although many of the documents appear to have been simply reattached to the proposed amendment. [*See* Doc. 108-2].

Nevertheless, the second amended complaint does not clarify the issues at hand. First, it seeks to add 16 counts to the amended complaint and thus does not narrow the issues before the Court. [*Compare* Doc. 11, *with* Doc. 108-1]. Moreover, Defendant Microbilt's side-by-side comparison shows that various parts of the amended complaint have been moved, [*see* Doc. 111-1], but it is not clear to the Court that the matters at issue are more clearly described as a result.

In addition, the Court's prior order required Plaintiff to provide a brief factual background presented in a logical order. [Doc. 99 at 14]. The second amended complaint includes a factual background stretching roughly forty pages and identifies facts specific to some Defendants' alleged breaches of the law, such as Microbilt and PNC, but not with regard to the remaining Defendants. [*See* Doc. 108-1 at 19-57]. It also contains a section on the alleged "Enterprise," which compares Defendants to various gangsters. [*Id.* at 2-7]. This portion is neither brief nor illuminating. The Court also explicitly prohibited Plaintiff from reaffirming and realleging the factual allegations from the preceding counts. [Doc. 99 at 15]. Nevertheless, the first paragraph in each count of the second amended complaint "incorporates by reference all preceding paragraphs in the

complaint as though fully stated herein." [*See, e.g.*, Doc. 108-1 at 74, 75, 76]. While this pleading technique is sometimes helpful in a short complaint involving one or two claims and a small number of defendants (one or two), where a plaintiff attempts to plead a large number of claims against a large number of defendants, this technique makes it difficult if not impossible to identify the alleged facts and claims against which an individual defendant must defend and the Court must evaluate.

As a result, the Court concludes that Plaintiff has failed to comply with its previous order, both in failing to provide the information needed and failing to organize the second amended complaint as required. [Doc. 99]. These defects alone are sufficient grounds for denying the motion. [Doc. 108].

In any event, although courts have a duty to freely grant leave to amend, Fed. R. Civ. P. 15(a)(2); *see also Hargett*, 60 F.3d at 761, a motion to amend is properly denied "when the amendment would prejudice the defendant, follows undue delays, or is futile." *Campbell*, 166 F.3d at 1162; *Powe*, 2005 WL 2045781, at * 1. The Court has already found that the amendment would prejudice Defendants. In addition, the Court finds that allowing the second amended complaint to be filed would largely be futile. " 'An amendment is considered futile when the claim, as amended, would still be subject to dismissal.' " *Dixon v. Green*

33

*Tree Servicing, LLC*, No. 20-11317, 2021 WL 2182037, at *2 (11th Cir. May 28, 2021) (quoting *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017)). For example, Plaintiff admits that his claim under Regulation V of the FCRA against Delta, PNC, Park Tree, and Engle is futile as it does not permit private causes of action. [*See* Doc. 108-1 at 77-78; Doc. 118 at 9].

Further, Microbilt convincingly argues that permitting Plaintiff to amend his complaint to add a Georgia RICO claim against it would be futile. In the facts section of the second amended complaint, Plaintiff alleges that Microbilt accessed his consumer credit file without a permissible purpose more than once and failed to investigate a dispute that he filed. [Doc. 108-1 at 33-34]. Plaintiff alleges that he never received resolution from Microbilt with regard to his multiple dispute attempts. [*Id.* at 34]. In his proposed Georgia RICO claim, Plaintiff alleges that all Defendants attempted to acquire an interest in his personal property and committed at least two predicate acts including unlawfully accessing his consumer credit file with the intention of depriving him of money or property. [*Id.* at 80-81]. Plaintiff alleges that (1) Defendants created an impression that members of the enterprise were lenders whom he owed money and used high-pressure tactics to attempt to coerce him into making payments for a discharged debt, [*id.* at 81]; (2) even immediately prior to this lawsuit one of the key members of the enterprise

was trying to conceal misconduct, [*id.*]; (3) Defendants' racketeering activity had the intent to deprive him of the full use of his property and sought to illegally fleece him of his money, [*id.* at 82]; and (4) the racketeering activity involved mail fraud, wire fraud, and theft of consumer credit file access and that they were not isolated incidents and had the same or similar modes of commission. [*Id.*].

Microbilt argues that Plaintiff has failed to sufficiently identify the conduct making it subject to the RICO claim and has failed to raise the right to relief above a speculative level. [Doc. 111 at 6-7]. In his reply, Plaintiff argues that Microbilt violated Georgia's RICO law based on unlawful debt collection, impermissible access to his credit file, misrepresentation, agency, and respondeat superior. [Doc. 120 at 23]. Plaintiff claims that he has alleged a conspiracy between Microbilt and Park Tree to grant access to Plaintiff for a fee. [*Id.* at 24]. He contends that Microbilt aided and abetted racketeering activities and that is the legal equivalent of actually committing the act. [*Id.* at 24-25]. He argues that he contacted an employee of Microbilt and notified her of a dispute about impermissible access to his consumer credit file but nothing was done in furtherance of the illegal debt collection activities. [*Id.* at 25]. Plaintiff again alleges that impermissible access to his consumer file occurred and there was a failure to reinvestigate. [*Id.* at 25-26].

35

The Georgia RICO statute does not require proof of an 'enterprise' for all claims. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1293 (11th Cir. 2006) (citing *Cobb Cnty. v. Jones Group, P.L.C.*, 218 Ga. App. 149, 152-53, 460 S.E.2d 516, 520-21 (1995)), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714-15 (11th Cir. 2014). "Rather, under Georgia RICO, the plaintiffs need only establish racketeering activity; that is, 'a plaintiff must show that the defendant committed predicate offenses (set forth in O.C.G.A. § 16-14-3(9)) at least twice.' " *Williams*, 465 F.3d at 1293 (quoting *Jones Group, P.L.C.,* 218 Ga. App. at 154, 460 S.E.2d at 521). Thus, in order to state a claim under the Georgia RICO statute, a plaintiff must allege "a pattern of racketeering activity." *See Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1362 (N.D. Ga. 2000) (Thrash, J.). "Under the Georgia RICO statute, a 'pattern of racketeering activity' consists of the commission of two or more interrelated predicate acts indictable under certain categories of state and federal laws." *Rosen v. Protective Life Ins. Co.*, No. 1:09-cv-03620 WSD, 2010 WL 2014657, at *6 (N.D. Ga. May 20, 2010) (citing *Tom's Amusement Co., Inc. v. Total Vending Servs.*, 243 Ga. App. 294, 299, 533 S.E.2d 413, 419 (2000)).

36

Plaintiff's RICO claim does not identify any specific actions taken by Microbilt and, in fact, Microbilt is not specifically identified within it. [*See* Doc. 108-1 at 80-83]. Plaintiff does mention mail and wire fraud in the count involving RICO. [*Id.*]. To the extent those acts are being asserted against Microbilt, the Court notes that Plaintiff must meet an even higher pleading standard. *Fortson v. Best Rate Funding, Corp.*, 602 Fed. Appx. 479, 482 (11th Cir. Feb. 27, 2015) ("When alleging fraud, a plaintiff 'must state with particularity the circumstances constituting fraud or mistake.' " (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)). Under Federal Rule of Civil Procedure 9(b), a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n*, 605 F.3d at 1291 (citing Fed. R. Civ. P 9(b)). In the factual allegations portion of the proposed second amended complaint, Plaintiff alleges that Microbilt impermissibly accessed his credit file, but this conclusory statement provides no support for the position that such actions, which might constitute violations of the FCRA, also constitute predicate acts for the Georgia RICO statute. Although " 'Georgia RICO is generally broader in scope than federal RICO, ' " *Wade Park*

*Land Holdings, LLC v. Kalikow*, No. 3:20-CV-176-TCB, 2021 WL 728185, at *8

(N.D. Ga. Feb. 24, 2021) (quoting *Marshall v. City of Atlanta*, 195 B.R. 156, 171

(N.D. Ga. 1996) (internal citations omitted)),[10] predicate acts under Georgia law

include those that constitute a federal RICO violation. *Id.* (citation omitted).

Violations of the FCRA do not constitute a predicate for a Georgia RICO violation.

O.C.G.A. § 16-14-3(5); *see also Banks v. ACS Educ.*, 638 Fed. Appx. 587, 589

(9th Cir. Jan. 4, 2016) (violations of the FDCPA and FCRA are not within the

enumerated predicate acts that may amount to a "pattern of racketeering activity"

under federal RICO); *Balderos v. City Chevrolet*, 214 F.3d 849, 854 (7th Cir. 2000)

(noting that mere TILA and RESPA violations do not necessarily qualify as RICO

predicates). Plaintiff identifies alleged predicate acts within his reply brief,

[Doc. 120 at 23-26], but those allegations are not included in the relevant portion

of the second amended complaint. *See Miccosukee Tribe of Indians of Fla.

v. United States*, 716 F.3d 535, 559 (11th Cir. 2013); *Huls v. Llabona*,

437 Fed. Appx. 830, 832 & n.5 (11th Cir. Aug. 15, 2011) (plaintiff may not raise

new claims in response to motion to dismiss without seeking leave to amend

---

[10] The Georgia RICO statute does not require proof of an enterprise, nor does it require that the pattern of racketeering activity be continuing. *Wade Park Land Holdings, LLC*, 2021 WL 728185, at *8 (citation omitted).

complaint).  In any event, these improperly-raised predicate acts are included in pages beyond those permitted by the Local Rules.  *See Wiley v. Dep't of Veterans Affs.*, No. 20-14718, 2021 WL 2134855, at *1 (11th Cir. May 26, 2021) ("While we construe the pleadings of pro se litigants liberally, we still require them to conform to procedural rules.") (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)); *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985) ("[The pro se litigant] must, for example, abide by local rules governing the proper form of pleadings.").

As a result, the Court agrees with Microbilt that Plaintiff's Georgia RICO claim against it fails and permitting it would be futile.  Further, the Court notes that Plaintiff has failed to adequately explain how his alleged injuries were proximately caused by the alleged actions taken by Microbilt.  *See Cox v. Mayan Lagoon Ests., Ltd.*, 319 Ga. App. 101, 109, 734 S.E.2d 883, 891 (2012) (noting that in a civil RICO claim a plaintiff must show that the RICO violation was the proximate cause of the alleged injury).

Next, the Court agrees with Delta and PNC, who convincingly argue that Plaintiff's breach of fiduciary duty claims are subject to dismissal and therefore futile.  In the fifth count of the second amended complaint, Plaintiff alleges that Delta owed him a fiduciary duty but wrongfully breached those duties over the

years and attempted to prevent him from filing this lawsuit, [Doc. 108-1 at 63-64]; and that Delta acted in bad faith and caused him unnecessary trouble and expense. [*Id.* at 64]. In Count 11, Plaintiff alleges a breach of fiduciary duty and contact by PNC and asserts that PNC owed Plaintiff a fiduciary duty but used deception and high-pressure tactics to attempt to see from him. [*Id.* at 71]. Plaintiff argues that PNC acted in back faith and caused him unnecessary trouble and expense. [*Id.*].

As a matter of law, absent special circumstances, there is no confidential relationship between a mortgagor and mortgagee, " 'for they are creditor and debtor with clearly opposite interests.' " *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 125-26, 483 S.E.2d 135, 139 (1997) (quoting *Pardue v. Bankers First Fed. Sav. Assn.*, 175 Ga. App. 814, 815, 334 S.E.2d 926, 927 (1985)). The same result obtains even when a mortgagor advises a customer on his business and misleads him, because the customer is under a duty to conduct his own inquiries. *Moore*, 225 Ga. App. at 126, 483 S.E.2d at 139. Moreover, that a plaintiff puts trust and confidence in a mortgagor is insufficient, as such is the case in the majority of business dealings. *Id.*

Similarly, there is no fiduciary relationship between a bank and its borrowers. *See, e.g.*, *May v. Citizens & Southern Nat'l Bank*, 202 Ga. App. 217, 218, 413 S.E.2d 780, 782 (1991) (explaining that a bank did not owe a fiduciary duty to

a borrower); *Pardue*, 175 Ga .App. at 814, 334 S.E.2d 926-27 (holding that there was no fiduciary relationship between borrower and savings and loan association even if a customer was advised, relied upon, and trusted it in the past); *Phillips v. Atl. Bank & Trust Co.*, 168 Ga. App. 590, 591, 309 S.E.2d 813, 814-15 (1983) ("Even if a party places special trust and confidence in a bank or its officers, this does not create a confidential or fiduciary relationship . . . .").

Plaintiff has failed to allege facts showing a "special circumstances" that would give rise to a confidential fiduciary relationship between any Defendant and himself. In his reply brief, Plaintiff argues that he had a fiduciary relationship with Delta because he opened an account with it in 2003 when only employees of Delta Airlines and their families could do so, they offered him advice of financial issues, and his wages were automatically deposited into his account. [Doc. 118 at 9-10]. Even if these facts had been alleged with the relevant counts in the second amended complaint, they do not appear to indicate behavior beyond customary customer service. Neither Plaintiff's employer/employee relationship with Delta Airlines or his financial relationship with Defendant Delta as a credit union establishes a confidential relationship. Where the " 'fiduciary or confidential relationship is not created by law or contract, [a court] must examine the facts of a particular case to determine if such a relationship exists.' " *AgSouth Farm Credit, ACA v. West*,

352 Ga. App. 751, 757, 835 S.E.2d 730, 736 (2019) (quoting *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 773, 572 S.E.2d 334, 337 (2002)).  Moreover, "[w]here the facts are patent, unambiguous, and undisputed, the trial court may decide the issue of a confidential relationship as a matter of law, '[a]lthough the existence of a confidential relationship depends upon the circumstances and therefore is generally a jury issue.' " *Middleton*, 257 Ga. App. at 773, 572 S.E.2d at 337 (quoting *Williams v. Dresser Indus.*, 120 F.3d 1163, 1168 (11th Cir. 1997)).

Delta Airlines is not a party to this litigation and Plaintiff has not shown, much less alleged, that Defendant Delta was his employer, even assuming that a confidential relationship could be found between an employer and an employee. "An employer-employee relationship is usually one 'of arms-length bargaining,' but a confidential relationship between employer and employees may sometimes arise." *See Irons v. CSX Transp., Inc.*, 224 Ga. App. 586, 587, 481 S.E.2d 575, 576 (1997) (citing *Cochran v. Murrah*, 235 Ga. 304, 307, 219 S.E.2d 421, 424 (1975)); *see also Harris v. Fulton-DeKalb Hosp. Authority*, 255 F. Supp. 2d 1347, 1375-76 (N.D. Ga. 2002) (Baverman, M.J., *adopted by* Thrash, J.) ("In the cases where the Georgia appellate courts have found that an employer violated a fiduciary duty to an at-will employee, it has generally been shown that the employee trusted and relied upon the employer to his detriment. . . ."). Thus, in *Cochran*, summary

judgment for the employer was denied where the plaintiff was a farm laborer who had worked for his employer for eight years, lived rent free in a house provided by the employer on the employer's property, and relied upon the employer to give him whatever wages the employer deemed appropriate. When the plaintiff became ill and bedridden, he relied on the employer's misrepresentations and signed—without reading—a release that limited his ability to recover damages. *Cochran*, 235 Ga. at 307, 219 S.E.2d at 424.

Similarly, in *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635, 640, 344 S.E.2d 430, 434 (1986), the court affirmed denial of the employer's motion for summary judgment because a possible confidential relationship existed where the employer, knowing that plaintiff suffered from chronic disease, induced him to work for the employer by telling the plaintiff that his illness would be covered by insurance and then failing to cover the plaintiff's medical claims. On the other hand, in *Irons v. CSX Transp., Inc.*, 224 Ga. App. 586, 481 S.E.2d 575 (1997), the plaintiff was in an accident while employed with CSX in which the other party died. A CSX claims adjuster contacted the plaintiff about that accident and at the same time discussed and ultimately settled a claim arising out of another incident involving the plaintiff. *Id.*, 224 Ga. App. at 586, 481 S.E.2d at 576. The Georgia Court of Appeals concluded that no confidential relationship was created by the

adjuster stating to the plaintiff as to the first incident that he would take care of everything. Comparing the *Irons* plaintiff's case to those in *Cochran* and *Capriulo*, the *Irons* court concluded the facts did not demonstrate that the adjuster "exercised a controlling influence over Irons, and they do not show that the two men interacted from positions of mutual confidence so that Irons should have believed anything other than that their relationship was an arms-length—and even adversarial—one." *Irons*, 224 Ga. App. at 588, 481 S.E.2d at 577. The court continued that the plaintiff was capable of making his own decisions, and unlike *Cochran*, was not illiterate or uneducated; the plaintiff, in fact, rejected several settlement offers brought to him by the adjuster. Thus, the court concluded that since no evidence was presented that the relationship was anything other than one of arms-length bargaining between parties with adverse interests, the relationship was not confidential. *Id.*

While these three cases are factually distinct from Plaintiff's, they illustrate the requirements for alleging the existence of a confidential relationship. By comparison, Plaintiff has not pleaded sufficient facts to demonstrate that a confidential relationship existed between him and Defendant Delta. Therefore, the Court finds that the breach-of-fiduciary-duty claim against Delta is futile. *Moore*, 225 Ga. App. at 125-26, 483 S.E.2d at 139.

With regard to PNC, Plaintiff argues in his reply brief that a fiduciary relationship existed between himself and not PNC but its predecessor-in-interest, RBC. [Doc. 117 at 14]. Plaintiff argues, in particular, that he had a special relationship with a particular employee, KW, with whom he had a personal relationship and occasionally went out to dinner. [Doc. 117 at 17]. However, as explained above, under Georgia law there is no fiduciary relationship between a bank and its borrowers even if the customer was advised by and placed special trust in it. *May*, 202 Ga. App. at 218, 413 S.E.2d at 781; *Pardue*, 175 Ga. App. at 814, 334 S.E.2d at 926; *Phillips*, 168 Ga. App. at 591, 309 S.E.2d at 814-15. The Court finds that the motion for leave is due to be denied on these additional grounds since the proposed second amended complaint would be futile.

However, the Court **GRANTS** Plaintiff's motion to the extent that Plaintiff seeks to dismiss his claim for a bankruptcy discharge injunction. Because the motion does not indicate that Plaintiff has obtained the consent of the parties, [*see* Doc. 140], an amendment may only take place by court order. *See* Fed. R. Civ. P. 15(a)(2). The motion lays out the substance of the attached amendment. *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (citing Fed. R. Civ. P. 15(a)). Furthermore, while they have not consented, Defendants did not respond to the motion on this ground, which indicates it is unopposed. *See*

45

LR 7.1(B), NDGa.  Accordingly, the Court **GRANTS** the motion to the extent that Plaintiff is no longer seeking a bankruptcy discharge injunction.  [Doc. 140].  As the first amended complaint is the operative complaint in this matter, as described above, it is amended to remove Count XI.  [Doc. 11 at 111-12].

## IV.   *Conclusion*

For the reasons stated above, the Court **DENIES** Plaintiff's motion for leave. [Doc. 108].  Plaintiff's amended complaint, minus Count XI, remains the operative pleading in this matter.  [Doc. 11].  As stated in its earlier order, the Court will address the motions to dismiss the amended complaints without requiring that Defendants resubmit them.  [Doc. 109 at 2].

The Court further **GRANTS** Park Tree's First Motion for Reconsideration. [Doc. 104].  Plaintiff's Motion to Strike Defendants Park Tree, FCI, and JLLT's Amended Joinder to Microbilt's Opposition is **DENIED**. [Doc. 119].  Plaintiff's Motion for Leave to Amend Complaint is **GRANTED**.  [Doc. 140].

**IT IS SO ORDERED and DIRECTED**, this 7th day of June, 2021.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE