**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **EMMANUAL OHAI,**<br><br>  Plaintiff,<br>v.<br><br>**DELTA COMMUNITY CREDIT UNION; JAUREGUI, LINDSEY, LONGSHORE & TINGLE; and MICROBILT CORPORATION,**<br><br>  Defendants. | **CIVIL ACTION FILE NO. 1:20-CV-02220-SCJ-JEM** |

**ORDER**

On January 11, 2023, the District Judge assigned to this case, the Honorable Steve C. Jones, entered a final order that resolved all of the pending motions to dismiss the operative complaint, (Doc. 11), that had been filed by the eight Defendants named in that complaint. (Doc. 236). As a result, only three Defendants and three counts now remain, as follows:

- Count 1: violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691, *et seq*. against DELTA COMMUNITY CREDIT UNION, (Docs. 11 at 91-92; 209; 235; 236);

- Count 4: violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, *et seq*. against JAUREGUI, LINDSEY, LONGSHORE & TINGLE (JLLT), (Docs. 11 at 96-100; 209; 235; 236);[1] and

---

[1] In its motion to dismiss, JLLT asserted that it was an improper party, and that the complaint should be dismissed on that ground. (Doc. 67). The Court denied

- Count 8: violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq. against MICROBILT CORPORATION, (Docs. 11 at 104-107; 209; 235; 236).

In the final order, Judge Jones also RECOMMITTED two matters to this Court. (Doc. 236 at 11-12, 18). First, he directed the Court to consider whether or not Plaintiff should be allowed to file a motion to supplement the complaint to add additional claims against PNC Bank National Association (PNC), as he sought to do in two filings that this Court previously denied, (Docs. 188; 196), in light of the "2022 tax notice occurrence/event," that is alleged to have happened after the date that Plaintiff filed the operative complaint. (Doc. 236 at 11, 15). Second, Judge Jones directed the Court to consider whether or not any of the parties to this action should be severed into separate civil actions under Federal Rule of Civil Procedure 21 for purposes of judicial economy and efficiency so that claims that are ready to proceed to discovery may move forward. (Doc. 236 at 18). The Court addresses both matters in turn.

### A. Supplement to the complaint

#### (i) Plaintiff's dismissed claims against PNC

In the operative complaint, filed on June 15, 2020, Plaintiff alleged four counts against PNC, as follows: Count 5—violation of the FDCPA; Count 6—invasion of privacy; Count 7—violation of the FCRA; and Count 10—violation

---

JLLT's motion on that ground, and granted Plaintiff an opportunity to substitute in the correct party for JLLT by filing a motion under Federal Rule of Civil Procedure 17(a)(3) within twenty days of the Court's order. (Doc. 236 at 17).

2

of the Georgia Fair Business Practices Act (GFBPA), O.C.G.A. §10-1-390, *et seq*. (Doc. 11 at 100-104, 108-111). All four counts against PNC were dismissed on January 11, 2023, as a result of Judge Jones's final order that resolved PNC's motion to dismiss. (Docs. 209; 236).

The facts relevant to PNC alleged by Plaintiff in the complaint included that PNC, formerly RBC Bank U.S.A., was the holder of Plaintiff's mortgage for an investment property located at: 3012 Stone Mountain Street, Lithonia, Georgia—account #6319. (Doc. 11 at 66). Plaintiff obtained the $25,000.00 mortgage on or about April 25, 2008, but in 2010, he defaulted on the mortgage, and PNC conducted a non-judicial foreclosure sale on the property, at which PNC was the highest bidder for $23,520.00. (*Id.* at 66-67, 71). In 2011, PNC filed a civil action against Plaintiff in Dekalb County Superior Court, in which it alleged that subsequent to the foreclosure, it discovered that Plaintiff's inadequate maintenance and neglect of the property rendered it valueless. (*Id.* at 67). PNC asserted that it would not have foreclosed had it known the condition of the property, and it sought a decree rescinding and canceling the foreclosure. (*Id.* at 67-68). But on May 11, 2011, after Plaintiff hired an attorney and filed an answer to PNC's complaint, PNC dismissed the case without prejudice. (*Id.* at 68).

In October 2016, Plaintiff hired Continental Credit Repair Company to help Plaintiff improve his credit score, and in November 2016, Continental initiated a dispute with the three consumer reporting agencies regarding the multiple items on his credit report associated with PNC. (*Id.* at 30, 73, 80, 102).

Then, on or about May 25, 2018, Plaintiff started receiving installment loan statements from PNC for payment of $22,087.61—account #3531. (*Id.* at 68-69, 84-85). On August 22, 2018, he received a letter from PNC stating that Plaintiff owed payment for account #3531, and threatening foreclosure and a lawsuit. (*Id.* at 76). Plaintiff sent a "cease and desist" letter to PNC on September 5, 2018, demanding debt validation for the #3531 account. (*Id.* at 69, 76, 85). PNC's first response on September 10, 2018, stated that they were reviewing Plaintiff's inquiry, valued the opportunity to investigate the matter, and would respond in a timely fashion. (*Id.* at 69, 76). PNC's second response on September 19, 2018, stated that Plaintiff's dispute did not provide sufficient information for an investigation, and also, Plaintiff's debt validation request was untimely because PNC "charged off your loan as of November 29, 2010," and PNC's "lien against your Property will remain and you remain obligated to pay PNC Bank the full outstanding balance of your account." (*Id.* at 69-71, 76). Despite Plaintiff's "cease and desist" letter on September 5, 2018, PNC continued to send Plaintiff monthly collection letters and notices, seeking payment. (*Id.* at 70-74, 77-81, 100-101).

    **(ii) Plaintiff's supplemental claims against PNC**

Federal Rule of Civil Procedure 15(d) provides that: ". . . the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The standard applied to supplementing pleadings under Rule 15(d) is the same as the standard applied

4

to amending pleadings under Rule 15(a), including that amendment is properly denied if it is futile. *See Harris v. Garner*, 216 F.3d 970, 988 n.6 (11th Cir. 2000)(noting that the standard applied to supplementing pleadings under Rule 15(d) is the same as the standard applied to amending pleadings under Rule 15(a)); *Nance v. Ricoh Elecs., Inc.*, 381 F. App'x 919, 923 (11th Cir. 2010)(recognizing futility as a standard in consideration of a motion to supplement). Here, Plaintiff's "supplemental" claims do not post-date the filing of the operative complaint, which alone is reason to deny allowing a supplement under Rule 15(d). The claims are also futile.

On November 23, 2021, Plaintiff filed a "motion for leave to amend and supplement complaint (Doc. No 11) to add additional claims against PNC," (Doc. 188), and on January 25, 2022, Plaintiff filed a "request for judicial notice in support of Plaintiff's motion for leave to amend and supplement Doc. No. 11 against Defendant PNC (Doc. No. 188)." (Doc. 196). In the motion for leave to amend and supplement, which includes an attached "proposed supplemental pleading" (Doc. 188-1), the only date referenced in either document that post-dates the operative complaint, filed on June 15, 2020, comes from Plaintiff's allegations that, "as recently as January 2021," inaccurate information reported by PNC was still on his credit report—namely, that Plaintiff owed PNC a "Past Unpaid Amount of $22,087.61." (Doc. 188 at 1-9). Plaintiff's proposed supplement does not cure any of the deficiencies that caused his claims against PNC for this reason to be dismissed—specifically that, the FDCPA does not apply to investment properties, and his claim against PNC under the FCRA is

5

time-barred. (Docs. 188; 209; 236). (Docs. 188; 209; 236).

In Plaintiff's request for judicial notice in support of his motion to amend and supplement, which he filed on January 25, 2022, Plaintiff attached four exhibits. (Doc. 196 at 6-26). The only exhibit that post-dates the filing of the operative complaint on June 15, 2020, is Exhibit A, which is a 2021 1099-C "cancellation of debt" form. (Doc. 196 at 7). The form states that the amount of debt discharged on February 26, 2021, was $19,880.10, and the debt description is "3012 Stone Mountain Lithonia GA 30058." (Doc. 196 at 7). The named creditor is PNC Bank, and the named debtor is "Luminate Ohai." (Doc. 196 at 7). Although Plaintiff's request for judicial notice contained only a copy of the form naming Luminate Ohai as the debtor, in his objections to the R&R, Plaintiff stated that both he and his ex-wife received the same 2021 1099-C "cancellation of debt" form, and in his objections, he included a picture of the form that named him as the debtor. (Doc. 212 at 9-12). But Plaintiff provides only a description of the exhibit, and does not indicate how it supports any new claim against PNC. (Doc. 196). Again, Plaintiff's filing does not cure any of the deficiencies that caused his claims against PNC to be dismissed—namely, that the FDCPA does not apply to investment properties, and that his claim against PNC under the FCRA is time-barred. (Docs. 188; 209; 236). Indeed, the "cancellation of debt" 1099-C Plaintiff received appears to resolve his claims against PNC.

To the extent that Plaintiff seeks to add a "defamation-false light" claim and a racketeering claim against PNC, Plaintiff's allegations for those claims do

6

not post-date the filing of the operative complaint. (Docs. 188-1 at 6-10). The claims are also futile. Indeed, Plaintiff asserted a similar "defamation-false light" claim against four other Defendants in the operative complaint, and it fails against PNC for the same reasons it was dismissed against the other Defendants. (Docs. 209; 236); *Harris*, 216 F.3d at 988 n.6; *Nance*, 381 F. App'x at 923.

### B. Severance of parties/claims

Federal Rule of Civil Procedure 21 provides that: ". . . On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *See* Fed. R. Civ. P. 21. Here, as discussed above, Judge Jones's resolution of the multiple Defendants' motions to dismiss has resulted in only three Defendants and three counts remaining in this case. (Docs. 209; 235; 236). And all three of the Defendants are now at the exact same stage of the proceedings. Each Defendant needs to file an answer, and begin discovery. The Court, therefore, finds that severance at this time of any of the remaining three parties or counts would not expedite the proceedings for purposes of judicial economy.

### C. Conclusion

For the reasons discussed above, the Court **DENIES** leave for Plaintiff to file a motion to supplement the operative complaint,[2] and **FINDS** that

---

[2] A Magistrate Judge can rule on a motion to amend/supplement the complaint by issuing an Order, as opposed to submitting a Report and Recommendation (R&R) to the District Judge, because an order denying a motion to amend is

7

severance at this time is not warranted.

**SO ORDERED** this 18th day of January, 2023.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE

---

non-dispositive for the purposes of Rule 72(a). *Moore v. Grady Mem'l Hosp. Corp.*, 778 F. App'x 699, 704 (11th Cir. 2019); *see also Palmore v. Hicks*, 383 F. App'x 897, 899–900 (11th Cir. 2010)("An order disposing of a motion to amend is a non-dispositive pretrial ruling"); *Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 548 (11th Cir. 2010)("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint").